## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA RECEIVED
## NORTHERN DIVISION

2021 JAN 13 P 4: 34

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| ROSELYN BRASWELL, | |
| **Plaintiff,** | Civil Action Number: <br> **2:21–cv–25–ECM-KFP** |
| **v.** | |
| BOW PLUMBING GROUP, INC., a Canadian Corporation; | **CLASS ACTION** <br> **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

**COMES NOW** Plaintiff Roselyn Braswell (hereinafter "Plaintiff") on behalf

of herself and all persons similarly situated (hereinafter "the Class"), by and through

the undersigned counsel and allege as follows:

### NATURE OF THE ACTION

1.    This is a class-action Complaint on behalf of Plaintiff, Roselyn

Braswell, and a class of people similarly situated who are owners of property,

residents, and holders of property interests constructed with cross-linked

polyethylene plumbing tubes.

2.    This case concerns cross-linked polyethylene plumbing tubes

(hereinafter "PEX Tubing"). The PEX Tubing at issue is manufactured and/or

distributed by Defendant BOW Plumbing Group, Inc. (hereinafter "BPG") and is

1

defective in design and manufacture causing premature failure, leakage, and damage to the Plaintiff's and the Class' homes.

3.      Specifically, the PEX Tubing suffers from a design and/or manufacturing defect because it is prone to, *inter alia*, premature oxidative failure causing pinhole and creep rupture.

4.      When the PEX Tubing fails water leaks occur, which causes significant damage to surrounding property and/or prevents the plumbing system from functioning as intended.

5.      BPG has repeatedly represented that consumers should trust BPG to provide the highest quality PEX Tubing because the company has over sixty (60) years of industry experience and is an industry leader in the manufacture of PEX Tubing[1]. In its sales brochure circulated in the United States, BPG touts that, *inter alia*, its PEX Tubing was the highest quality PEX Tubing available, and that its cross-chemical bonding process gives its tubing "superior characteristics." BPG guarantees that its PEX Tubing will be free of defects resulting from faulty manufacturing for twenty-five (25) years from the initial date of the sale by BPG, provided that the product is installed in accordance with "good plumbing and heating

---

[1] *See* "Bow Corporate Brochure" July 2018. Attached hereto as "Exhibit A".

practices, applicable code requirements and BOW's published installation instructions" and that the product is not misused.[2]

6.     Contrary to these affirmative statements, BPG's PEX Tubing is not comprised of "superior characteristics".

7.     BPG has systematically breached its warranty by failing to fully or adequately compensate property owners who have been injured as a result of failures in its PEX Tubing. BPG also failed to disclose this material information to Plaintiff and the Class.

8.     Before manufacturing, warranting, advertising and/or selling the PEX Tubing, BPG failed to take appropriate steps to ensure that its products were safe for their intended use. BPG knew or should have known that its PEX Tubing was not suitable for use within potable plumbing systems and suffered from the aforementioned defects.

9.     The PEX Tubing defects have caused plumbing systems to fail by leaking and releasing water, which, in turn, has caused and will continue to cause Plaintiff and the Class to incur damages through no fault of their own.

10.     Plaintiff seeks relief for damages sustained by her and the Class that were proximately caused by BPG's defective PEX Tubing used and installed in Plaintiff's and the Class' homes and/or other structures. Plaintiff and the Class seek

---

[2] *See* BPG warranty, attached hereto as "Exhibit B".

3

relief to remedy BPG's breach of express warranty, breach of implied warranty, violations of various states' consumer protection statutes, negligence, strict liability, and, alternatively, unjust enrichment. Plaintiff and the Class also seek declaratory and injunctive relief, as described below.

## PARTIES

11.    Plaintiff, Roselyn Braswell, is over the age of nineteen (19) years and a resident citizen of Montgomery County in the State of Alabama.

12.    BPG is a foreign corporation whose headquarters and principal place of business is located in Montreal, Quebec, Canada.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this class action pursuant to 28 USC §1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than BPG. *See* 28 USC §1332(d)(2)(A).

14.    This Court has personal jurisdiction over BPG as BPG conducts substantial business in the United States and the State of Alabama. BPG has sufficient minimum contacts with the State of Alabama and intentionally avails itself of the consumers and markets within the State of Alabama through the promotion and sales of its products, including its PEX Tubing. Specifically, BPG intentionally

4

injected its PEX Tubing into the stream of commerce for ultimate sale and installation in the United States, including but not limited to, the State of Alabama. BPG intentionally marketed, advertised, distributed, sold, and otherwise transacted business in the United States. Upon information and belief, BPG manufactured and advertised its PEX Tubing for use in plumbing systems throughout the United States. BPG's contacts with the United States are so pervasive that it provides for a Vice President of Sales for the United States and Latin America within its corporate structure and provides a customer service phone number for the United States on its website. Its corporate brochure featured on its website[3] provides that BPG serves several countries in North America, including the United States. Within BPG's materials regarding its technical specifications[4], BPG advertises compliance with the American Society for Testing and Materials ("ASTM") specifications for product design and manufacture, presumably to target a United States market. Additionally, BPG maintains a principal place of business in Memphis Tennessee for its United States business. Through its activities and contacts within the United States, BPG has purposefully availed itself of the benefits and privileges of conducting business within the United States, including the benefits and privileges of United States laws.

---

[3] *See* Ex. B.

[4] BPG's Website Technical Specifications: https://www.bow-group.com/technical-specs

The Plaintiff's and the Class' alleged injuries arise out of BPG's contacts with the United States.

15.    Venue properly lies in this district pursuant to 28 USC §1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district, and because BPG conducts substantial business in this judicial district.

## FACTUAL ALLEGATIONS

### A.    The Defective BPG PEX Tubing

16.    BPG sells various plumbing products including PEX Tubing, PEX Fittings, PEX Clamps and other plumbing accessories.

17.    PEX is an acronym for cross-linked polyethylene. Polyethylene ( "PE") is the raw material that is chemically bonded through the process of cross-linking across its molecular chains ("X").

18.    BPG has been in business since 1939 and has manufactured plumbing systems and parts for nearly as long.

19.    BPG states in a corporate brochure that it has "ensured that every pipe and fitting [it] produce[s] is of the highest quality and performs consistently" for over eighty (80) years. BPG states that it is able to ensure "quality" and "consistency" in each of its products due to its "modern, top-of-the-line manufacturing facilities".[5]

---

[5] See Ex. A.

20.    Despite BPG's attestations to the quality and superiority of its PEX Tubing, consumers across the State of Alabama and country have experienced water damage and catastrophic PEX Tubing failures caused by pin hole leaks and slow growth cracking mechanisms consistent with oxidative failure and/or creep rupture.

21.    BPG's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the tubing for twenty-five (25) years. BPG will make a full cost allowance for the replacement of the defective product. Further, it warrants the PEX Tubing should any defect or poor performance occur.[6]

22.    Plaintiff and the Class have substantially complied with their obligations under the BPG PEX warranty. BPG, however, has failed to fulfill its obligation to replace the defective PEX Tubing and compensate Plaintiff and the Class for the property damage it caused.

## FACTUAL ALLEGATIONS OF PLAINTIFF ROSELYN BRASWELL

23.    Plaintiff, Roselyn Braswell, is a resident of Montgomery County, Alabama and resides at and owns property located at 10516 Duncannon Trail in Montgomery, Alabama.

24.    Construction of Plaintiff's home in Montgomery, Alabama was completed around May 2013.

---

[6] *See* "Exhibit B".

7

25.    A water line was installed as a part of the residential plumbing system. Water was supplied to Plaintiff's home from a local, municipally treated water source.

26.    Plaintiff hired a licensed professional plumber to install the plumbing system.

27.    Plaintiff's residential plumbing system was professionally and properly installed using BPG's PEX Tubing.

28.    After construction was completed in or about 2013, Plaintiff moved into the home and began using it as her primary residence.

29.    In June 2013, Plaintiff experienced a water leak as the result of a failure in the PEX Tubing manufactured by BPG. The leak occurred near a light fixture in her master closet. She retained a licensed plumber to find and repair the leaking pipe.

30.    In April 2018, Plaintiff experienced another leak. The leak was located in the guest bedroom wall. She again retained a licensed plumber to find and repair the leaking pipe.

31.    In May 2020, Plaintiff observed another leak and retained a licensed plumber to find and repair the leaking pipe. Upon further investigation, the plumber discovered the leak developed from a pinhole crack in the PEX Tubing. The same or substantially similar PEX Tubing was used throughout the home.

8

32.    Plumbers who have installed the tubing have contacted BPG about the problem.

33.    Plaintiff's home is at risk of developing further leaks.

34.    At no time did BPG or any of its agents, dealers or other representatives inform Plaintiff of its omission and/or misrepresentations related to the PEX Tubing defects. As a result of BPG's conduct as alleged herein, Plaintiff has been injured.

35.    Plaintiff has suffered an ascertainable loss as a result of the BPG's omissions and/or misrepresentations associated with the PEX Tubing, including but not limited to, out-of-pocket costs associated with the catastrophic plumbing failures and attempted repairs of such within her home, including but not limited to the replacement of her carpet in both the master and guest bedrooms and the replacement of the walls where leaks occurred.

## CLASS ALLEGATIONS

36.    This action is brought on behalf of Plaintiff, individually and as a class action pursuant to FED. R. CIV. P. 23 (a), 23(b)(2) and/or 23(b)(3), on behalf of a nationwide class of consumers who purchased BPG's PEX Tubing (hereinafter the "Nationwide Class"). Specifically, the Nationwide Class consists of:

> **"All persons or entities who sustained damages proximately caused by defects in BPG's PEX Tubing used in the water plumbing systems of Plaintiff's and Class members' homes and other structures, or which otherwise were installed in the homes and structures of Plaintiff's and the Class and require remediation."**

37.     Plaintiff reserves the right to re-define the Class(es) prior to class certification.

38.     Excluded from the Class are:

a.     BPG and any entities in which BPG has a controlling interest;

b.     Any of the legal representatives, heirs, successors, or assigns of the BPG;

c.     The Judge to whom this case is assigned any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.     All persons or entities that properly execute and timely file a request for exclusion from the class; and

e.     Any attorneys representing the Plaintiff or the Class.

39.     The rights of each member of the Class were violated in a similar fashion based on BPG's uniform actions.

40.     This action has been brought and may be properly maintained as a class action for the following reasons:

a.     Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds of individuals or entities that own properties with BPG's defective PEX Tubing. The Class is therefore

sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiff.

b.    Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

i.    Whether BPG's PEX Tubing was defectively designed and/or manufactured for its intended purpose;

ii.    Whether BPG's PEX Tubing was fit for its intended purpose;

iii.    Whether BPG's PEX Tubing was merchantable;

iv.    Whether BPG failed to warn consumers that its PEX Tubing was not properly tested during the design and development process;

v.    Whether BPG made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of its PEX Tubing in its product literature, including those relating to standards and reliability;

vi.    Whether BPG omitted material information when it sold its PEX Tubing;

vii.   Whether BPG exercised reasonable care in the design, manufacture and testing of its PEX Tubing;

viii.   Whether BPG owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of its PEX Tubing;

ix.   Whether BPG breached its duty to Plaintiff and the Class by designing, manufacturing, advertising, and selling to Plaintiff and the Class defective PEX Tubing;

x.   Whether BPG's PEX Tubing is progressively deteriorating at an accelerated rate;

xi.   Whether BPG's PEX Tubing fails prematurely;

xii.   Whether BPG knowingly sold or allowed its PEX Tubing to be distributed after it knew the PEX Tubing was failing at an increased rate;

xiii.   Whether BPG knew or should have known of the defective nature of its PEX Tubing;

xiv.   Whether Plaintiff and the Class are entitled to relief under BPG's express warranties;

xv.   Whether BPG breached its contracts with Plaintiff and the Class;

xvi.   Whether BPG breached the terms of its express warranty;

12

xvii.  Whether BPG's actions constituted an unjust enrichment;

xviii. The appropriate nature of class-wide equitable relief;

xix.   The appropriate measurement of restitution and/or measure of damages to award to Plaintiff and members of the Class;

xx.    Whether the BPG should be required to notify all Class members about its defective PEX Tubing.

These and other questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the Class.

c.    Typicality: Plaintiff's claims are typical of the claims of the Class since Plaintiff and all members of the Class own BPG's defective PEX Tubing. Furthermore, Plaintiff and the Class have sustained monetary and economic injuries arising out of BPG's wrongful conduct by, *inter alia*, paying more for the PEX Tubing than they otherwise would have had they been aware of its defects. Had this material information been disclosed to Plaintiff and putative class members, they would not have purchased the PEX Tubing (or, at a minimum, would have paid substantially less for them). Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class Members.

d.    Adequacy: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that they seek to represent; she has retained counsel who is competent and highly experienced in complex class

action litigation and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

   e. <u>Superiority:</u> A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by BPG's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

   f. <u>Ascertainability:</u> Class members are readily ascertainable and can be identified by BPG's records.

   g. BPG has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

h.    In the absence of a class action, BPG would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

## TOLLING OF THE STATUTE OF LIMITATIONS

41.    Any applicable statute of limitations has been tolled by BPG's knowing and active concealment and denial of facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the defective PEX Tubing until shortly before this class action litigation was commenced.

42.    BPG was and remains under a continuing duty to disclose to Plaintiff and the Class the true character, quality and nature of its defective PEX Tubing, and such defects will result in leakage and damage to the home and other property. As a result of the active concealment by BPG, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY

43.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

44.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Class against BPG.

45.     BPG's PEX Tubing is defined as a "good" and thus the Plaintiff's and the Class' breach of express warranty claim is governed by the Uniform Commercial Code.

46.     BPG's PEX Tubing contains an express warranty with every purchase. *See* Ex. B. BPG guarantees that its PEX Tubing will be free from defects in materials and workmanship and such warranty became part of the basis of the transaction between Plaintiff and the Class and BPG. Plaintiff and the Class relied on BPG's representations and warranties.

47.     Specifically, BPG's express warranty states its PEX Tubing will be free from defects in the materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor and when installed along with BPG's PEX fittings, BPG's valves and installation accessories.

48.     BPG expressly warrants that if a consumer's PEX Tubing is defective, BPG will replace them free of charge.

49.     Plaintiff and the Class complied with the terms of BPG's express warranty, including any and all conditions precedent and all obligations owed to BPGs related to installation of the PEX Tubing.

16

50.     Contrary to the terms of the express warranty, BPG has failed to replace the defective PEX Tubing purchased by Plaintiff and the Class.  Plaintiff and the Class have notified licensed plumbers who installed the BPG PEX Tubing and the licensed plumbers have placed BPG on notice of the defects with its products.

51.     As BPG took no action to cure said breaches of warranties, Plaintiff and the Class took corrective action at their own cost and expense so as to mitigate any further damage related to the failure of the PEX Tubing.

52.     As a result of BPG's conduct, Plaintiff and the Class have suffered ascertainable damages in the form of direct monetary losses because BPG has forced Plaintiff and the Class to pay for repairs and/or the replacement of the defective PEX Tubing.

53.     Plaintiff and the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of BPG's conduct described herein. BPG was properly placed on notice by the licensed plumbers of Plaintiff and the Class. In addition, BPG was put on notice of the defect because it had knowledge of the existence of the PEX Tubing defects at all relevant times.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

54.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

55.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Class against BPG.

56.    At all times mentioned herein, BPG manufactured and/or supplied the PEX Tubing, and prior to the time the PEX Tubing was purchased by Plaintiff and the Class, BPG impliedly warranted to Plaintiff, and to Plaintiff's agents, that the PEX Tubing was of merchantable quality and fit for the use for which they were intended.

57.    Plaintiff and Plaintiff's agents relied on the skill and judgment of BPG in selecting, purchasing and installing the PEX Tubing.

58.    The PEX Tubing was unfit for its intended use and was not of merchantable quality, as warranted by BPG, but instead contained defects. Specifically, and as a result of such defects, the PEX Tubing is predisposed to premature oxidative failure, pin hole leaks, and creep rupture. These defects cause the PEX Tubing to fail to perform when put to its intended use.

59.    BPG breached the implied warranty of merchantability, as the PEX Tubing was not of a merchantable quality due to the aforementioned defects.

60.    As a direct and proximate result of the breach of said warranties, Plaintiff and the Class suffered and will continue to suffer losses and damages as alleged herein in an amount to be determined at trial.

61.     Plaintiff and the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of BPG's conduct described herein.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

62.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

63.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Class.

64.     At the time of contracting, BPG had reason to know of Plaintiff's and the Class members' particular purpose for purchasing BPG'S PEX Tubing.

65.     Plaintiff and Class members relied on BPG's skill or judgment to select or furnish suitable goods, thereby creating an implied warranty that the goods would be fit for such purpose.

66.     The defective BPG PEX Tubing was not fit for these purposes, thereby causing injuries and damages to Plaintiff and the Class members as alleged herein in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT

67.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

68.    This claim is pled in the alternative to Plaintiff's contract claims, pursuant to Fed. R. Civ. P. 8.

69.    Plaintiff and the Class conferred a tangible economic benefit upon BPG by purchasing its PEX Tubing. Plaintiff and Class members would not have purchased BPG's PEX Tubing had they known that the PEX Tubing was defective and that BPG would not honor the terms of its express warranty.

70.    Failing to require BPG to provide remuneration under these circumstances would result in BPG being unjustly enriched at the expense of Plaintiff and the Class.

71.    BPG's retention of the benefit conferred upon them by Plaintiff and the Class would be unjust and inequitable.

## COUNT V
## NEGLIGENCE/WANTONNESS: FAILURE TO WARN

72.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

73.    Plaintiff brings this cause of action on behalf of herself and on behalf of the members of the Class.

74.    BPG had a duty to notify Plaintiff and the Class of the defects in its products installed in Plaintiff's and the Class' homes. BPG had actual or constructive knowledge regarding the defects with the PEX Tubing prior to Plaintiff's and the

20

Class' home purchases. It was foreseeable to BPG and intended that the newly constructed homes would be purchased by Plaintiff and the Class.

75.    BPG breached its duty. After becoming aware of the defects with the PEX Tubing themselves, BPG took no action to cure its breaches of duty to exercise ordinary care or warn Plaintiff or the Class, thus requiring Plaintiff and the Class to take corrective action at their own expense to avoid continued failure of the PEX Tubing as well as further damage to their homes and personal property. Plaintiff and the Class would have read and heeded an adequate warning.

76.    BPG's breach of duty was negligent or reckless or wanton.

77.    BPG's breach of duty was negligent or wanton, Plaintiff and the Class have suffered damages, including but not limited to the following:

a.    The difference between the market value of the home had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

b.    Incidental and consequential damages for the cost of repairs to the home and structure of the home;

c.    Costs to replace the PEX Tubing;

d.    Exposure to hazardous mold which will require inspection, remediation, and replacement costs and may lead or has led to personal injury.

21

## COUNT VI
## NEGLIGENCE/WANTONNESS: DEFECTIVE DESIGN AND MANUFACTURE

78.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

79.    Plaintiff brings this cause of action on behalf of herself and on behalf the Class against BPG.

80.    BPG had a duty to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the PEX Tubing in a manner that was free of defects such that the PEX Tubing would perform as advertised and warranted when put to their intended, reasonable and foreseeable use.

81.    BPG breached its duty. The failure of the PEX Tubing was caused by defective design, poor and improper workmanship and manufacture, negligence, and lack of reasonable and ordinary care by BPG, acting through its duly authorized agents, servants and employees. BPG failed to properly test and/or evaluate the PEX Tubing to ensure that the PEX Tubing was not defective and would not fail when they were used for its intended, reasonable and foreseeable purposes.

82.    After being notified of the foregoing breaches, BPG took no action to cure its breaches of duty to exercise ordinary care, thus requiring Plaintiff and the Class to take corrective action at their own cost and expense to avoid continued

failure of the PEX Tubing, as well as further damage to their homes and personal property.

83.    As a direct and proximate result of BPG's negligence or wantonness, Plaintiff and the Class have suffered damages, including, but not limited to those listed and described in ¶ 77, *supra*.

## COUNT VII
## STRICT LIABILITY-DESIGN DEFECT AND MANUFACTURE DEFECT

84.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

85.    Plaintiff brings this cause of action on behalf of herself and on behalf of the members of the Class against BPG.

86.    BPG designed, manufactured, distributed, marketed, promoted, supplied, sold and otherwise released the defective and unreasonably dangerous PEX Tubing into the stream of commerce and to consumers, and therefore had a duty to warn users of the known risks associated with PEX Tubing.

87.    BPG was the manufacturer of the PEX Tubing which was furnished, delivered and installed in Plaintiff's and the Class' home and other structures in substantially the same condition in which they were designed, manufactured, assembled, distributed, marketed and sold by BPG.

88.    The PEX tubing was defective as it developed pinhole leaks as a result of the defects in the design and manufacture. When BPG was made aware of these

problems by Plaintiff and the Class directly or by their agents, it refused to correct, modify, and/or repair the defective product.

89.    The defects have caused physical harm to Plaintiff and the Class' homes, other structures and personal property.

90.    The PEX tubing installed in Plaintiff's and the Class' homes was being used as intended.

91.    The PEX tubing was unreasonably dangerous and defective and created an unreasonable risk of water damage to expected and anticipated users' homes and personal property.

92.    BPG has a statutory duty and/or common law duty of care in designing and manufacturing the PEX Tubing.

93.    The PEX Tubing was defective for the following reasons:

a.    It was not reasonably safe for the ordinary and intended use;

b.    BPG failed to provide Plaintiff and the Class with adequate and sufficient warnings or any warnings regarding the known and foreseeable risks and dangers inherent in the PEX Tubing, and had sufficient warnings been given Plaintiff and the Class would have read and heeded them; and

c.    The design, manufacture, and testing of the PEX Tubing was inadequate and produced defective products.

24

94.     As a direct and proximate result of BPG's breach, in each of the Class'
respective states, Plaintiff and the Class have suffered damages, including, but not
limited to those listed and described above. *See* ¶ 77, *supra*.

**COUNT VIII**
**SUPPRESSION**

95.     Plaintiff realleges, as if fully set forth, each and every fact and
allegation contained in the preceding paragraphs, and further alleges that:

96.     Plaintiff brings this cause of action on behalf of herself and on behalf
of the Class.

97.     BPG had a duty to inform Plaintiff and the Class of the defects.
Notwithstanding its duty to inform Plaintiff and the Class, BPG has never disclosed
its knowledge of the defects. To the contrary, BPG consistently maintains that its
PEX Tubing has "superior characteristics" and that its PEX Tubing is "of the highest
quality and perform[s] consistently".[7]

98.     BPG had a duty to disclose to Plaintiff and the Class the material facts
described above regarding its PEX Tubing.

99.     BPG had superior knowledge of the facts and had a means of
knowledge and expertise not shared by Plaintiff and the Class and, therefore, BPG
had a duty to disclose to Plaintiff and the Class the material facts set forth above.

---

[7] *See* Ex. A.

100.   BPG suppressed and concealed material facts from Plaintiff and the Class in order to induce Plaintiff and the Class and others to utilize its products. Without knowledge of the foregoing material facts, Plaintiff and the Class acted to its injury.

101.   As a direct and proximate result of BPG's breach, Plaintiff and the Class have suffered damages, including, but not limited to the following:

a.      The difference between the market value of the home and any other structure had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

b.      Incidental damages for the cost of repairs to the home and structure of the home; and

c.      Costs to replace the PEX Products.

### COUNT IX
### DECLARATORY AND INJUNCTIVE RELIEF

102.   Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

103.   Plaintiff, on behalf of herself and the Class, seek a Court declaration of the following:

a.      The BPG PEX Tubing has defects which cause failures and leaks resulting in water damage to the property and the necessity of the removal and replacement of the PEX Tubing;

b.    The BPG PEX Tubing is defective in the workmanship used and material which causes failures;

c.    BPG knew of the defects in its PEX Tubing and that the limitations contained in its purported limited warranties are unenforceable;

d.    BPG shall re-audit and reassess all prior warranty claims on its PEX Tubing, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.    BPG shall establish an inspection program and protocol to be communicated to Class members that will require BPG to inspect, upon request, a Plaintiff's or Class member's structure to determine whether the PEX Tubing failure is manifest, and make any replacements (or take other appropriate measures) as may be necessary.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests, on behalf of herself and members of the Class, that this Court:

a.    determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above and designating Plaintiff's counsel as counsel for the Class;

b.      Award all actual, general, special, incidental, statutory, treble or other

multiple, punitive and consequential damages to which Plaintiff and Class

members are entitled;

c.      Award pre-judgment and post-judgment interest on such monetary

relief;

d.      Grant appropriate injunctive and/or declaratory relief as the Court may

deem reasonable; and

e.      Award reasonable attorneys' fees and costs; and grant such further and

other relief that this Court deems appropriate. This relief may include, without

limitation, any remediation, inspection, notice, and/or other necessary steps to

be undertaken with respect to putative class members with PEX Tubing on

which the defect has not yet manifested.

## JURY DEMAND

Plaintiff, on behalf of herself and the Class, demands a trial by jury on all

issues so triable.

Respectfully submitted,

_/s/_ _____

KIRBY D. FARRIS (ASB-2224-R78K)
Attorney for the Plaintiff and the Class

## PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY

/s/ _____
KIRBY D. FARRIS (ASB-2224-R78K)

**OF COUNSEL:**

**FARRIS, RILEY & PITT, LLP**
1700 Financial Center
505 20th Street North
Birmingham, Alabama 35203
T: (205)324-1212
F: (205)324-1255 (fax)
kfarris@frplegal.com

---

### PLEASE SERVE DEFENDANT BY CERIFIED MAIL

Bow Plumbing Group, Inc.
c/o Giles Cyr
4905 Southridge
Suite 11-14
Memphis, Tennessee 38141

---