# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROSELYN BRASWELL,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **2:21-cv-25-ECM** |
| **v.** | ) | |
| | ) | |
| **BOW PLUMBING GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

_____

Kirby D. Farris (ASB-2224-R78K)
Kenneth E. Riley (ASB-9731-171K)
Calle M. Mendenhall (ASB-7985-W37E)
Malia D. Tartt (ASB-9073-M40J)
**FARRIS, RILEY & PITT, LLP**
1728 Third Avenue North
Fifth Floor
Birmingham, Alabama 35203
T: (205) 324-1212
F: (205) 324-1255
kfarris@frplegal.com
kriley@frplegal.com
cmendenhall@frplegal.com
mtartt@frplegal.com

*Counsel for Plaintiffs and Proposed Class*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................7

II. THE PROPOSED SETTLEMENT ....................................................7

III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................9

   A. PEX Generally ...............................................................................9

   B. Bow's SUPERPEX Tubing.............................................................10

   C. Plaintiffs' Claims and Nature of Alleged Damages ...................10

   D. Bow's Defenses..............................................................................12

   E. Procedural History .......................................................................14

   F. The Benefits of the Proposed Settlement....................................17

IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE
PRELIMINARILY APPROVED. ....................................................18

   A. The proposed Settlement is the product of informed, arm's length
negotiations....................................................................................19

   B. The proposed Settlement is fair, adequate and reasonable. ....................19

     i. The Likelihood of Success at Trial........................................20

     ii. Range of Possible Recovery and the Point on or below the Range of
Recovery at which a Settlement is Fair....................................21

     iii. Complexity, Expense and Duration of Litigation ....................24

     iv. Substance and Amount of Opposition to the Settlement .........25

     v. The Stage of Proceedings at which the Settlement was Achieved ..........26

V. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY
CERTIFIED. ....................................................................................28

   A. Definition of the Settlement Class ..............................................28

   B. Rule 23(a) Requirements..............................................................29

     i. Numerosity ..............................................................................29

     ii. Commonality............................................................................30

     iii. Typicality.................................................................................31

     iv. Adequacy.................................................................................32

    **C. Rule 23(b)(3) Requirements** ........................................................32

       i.    Predominance ........................................................33

      ii.    Superiority ........................................................36

**VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO MEMBERS OF THE CLASS.** ....................................................37

**VII. ATTORNEYS' FEES AND EXPENSES** ........................................40

**VIII. SERVICE AWARDS** ........................................................41

**IX. CONCLUSION** ........................................................42

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................. 28, 33, 36
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013) ................................................................ 26, 33
*Appleyard v. Wallace,*
  754 F. 2d 955 (11th Cir. 1985) ...............................................................31
*Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.,*
  211 F.R.D. 457 (S.D. Fla. 2002) ....................................................... 20, 22
*Bennett v. Behring Corp.,*
  737 F. 2d 982 (11th Cir. 1984) ...................................................... 19, 20, 24
*Brown v. Electrolux Home Prods., Inc.,*
  817 F.3d 1225 (11th Cir. 2016) ...............................................................35
*Cole v. NIBCO, Inc.,*
  13-7871 (D.N.J. November 14, 2018) ........................................ 15, 23, 24, 36, 38
*Coleman v. Cannon Oil Co.,*
  141 F.R.D. 516 (M.D. Ala. 1992) ...........................................................37
*Cox v. Am. Cast Iron Pipe Co.,*
  784 F.2d 1546 (11th Cir. 1986) ...............................................................30
*Faught v. Am. Home Shield Corp.,*
  No 2:07-cv-1928-RDP, 2010 WL 10959223, (N.D. Ala. Apr. 27, 2010) ...... 22, 28
*Griffin v. Carlin,*
  755 F.2d 1516 (11th Cir. 1985) ...............................................................32
*In re Beef Industry Antitrust Litig.,*
  607 F. 2d 167 (5th Cir. 1979) ...............................................................28
*In re Health Ins. Innovations Secs. Litig.,*
2020 U.S. Dist. LEXIS 231055. (M.D. Fla. 2020) ...............................................26
*In re M.D.C. Holdings Sec. Litigation,*
  1990 U.S. Dist. LEXIS 15488, 1990 WL 454747 (S.D. Cal. 1990) ....................26
*In re Shell Oil Refinery,*
  155 F.R.D. 552 (E.D. La. 1993) ...............................................................25
*In re U.S. Oil & Gas Litig.,*
  967 F.2d 489 (11th Cir. 1992) ...............................................................25
*In Re: Kitec Plumbing System Products Liability Litigation,*
  09-MD-2098 (N.D. Tex. April 29, 2011) ...............................................................15

*In Re: Zurn Pex Plumbing Products Liability Litigation*,
  0:07-cv-03652 (D. Minn. October 18, 2012).................................................. 15, 34
*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685, 698 (N.D. Ga. 2001)............................................................. 31, 33
*J.W. Birmingham Bd. Of Educ.*,
  No. 2:10-cv-03314-AKK, 2012 U.S. Dist. LEXIS 124183, (N.D. Ala. Aug. 31,
  2012) ........................................................................................................................32
*Kilgo v. Bowman Transp., Inc.*,
  789 F.2d 859 (11th Cir. 1986).............................................................................30
*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004)...................................................................... 33, 35
*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F. 2d 1332 (11th Cir. 1984).........................................................................31
*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) ..................... 20, 21, 24, 25, 26, 27
*Matson v. NIBCO, Inc.*,
  5:19-cv-00717 (W.D. Tex. February 23, 2021) ......................... 14, 23, 27, 36, 38
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)..............................................................................................37
*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)..........................................................................................34
*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009).........................................................................30
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................... 26, 27, 35
*Williams v. Mohawk Indus.*,
  568 F.3d 1350 (11th Cir. 2009).................................................................. 30, 33

## Statutes

28 U.S.C. § 1715.......................................................................................................38

## Rules

Fed. R. Civ. P. 23.................................................................... 14, 21, 28, 37
Fed. R. Civ. P. 23(a).................................................................... 19, 28, 29
Fed. R. Civ. P. 23(a)(1)...............................................................................29
Fed. R. Civ. P. 23(a)(2)..................................................................... 30, 31
Fed. R. Civ. P. 23(a)(3)...............................................................................31

Fed. R. Civ. P. 23(b) ................................................................ 18, 32

Fed. R. Civ. P. 23(b)(2)(B) .......................................................38

Fed. R. Civ. P. 23(b)(3) ...................................................... 32, 33, 36

Fed. R. Civ. P. 23(e) ......................................................... 18, 19, 40

Fed. R. Civ. P. 23(h) ...............................................................40

## I.    INTRODUCTION

Roselyn Braswell, Gregory Johnson and Jerri Johnson (the "Plaintiffs") brought this putative class action against Bow Plumbing Group Inc. (the "Defendant" or "Bow") alleging Bow's SUPERPEX tubing ("PEX tubing" or "SUPERPEX") has defects causing it to prematurely fail and resulting in damages to Plaintiffs' homes and personal properties. Bow denied all allegations and that it was liable to Plaintiffs or the putative class.

After contested litigation and hard-fought, arms-length negotiations, including before an experienced and highly regarded national mediator, Plaintiffs have reached a proposed settlement with Bow, which if approved by the Court, will finally and fully resolve the claims against Bow on behalf of the Settlement Class.

Plaintiffs now move this Court for an Order, pursuant to Fed. R. Civ. P. 23(e): (i) preliminarily approving the Settlement, (ii) certifying the Settlement Class, (iii) providing for issuance of notice to the Settlement Class, and (iv) scheduling a final-fairness hearing. Bow does not oppose this Motion. For the reasons set forth below, the Court should grant Plaintiffs' Motion for Preliminary Approval.

## II.    THE PROPOSED SETTLEMENT

Under the proposed settlement, the Settlement Class has agreed to settle its claims against Bow in exchange for Bow creating a common fund of up to Eight Million Twenty-Five Thousand Dollars ($8,025,000.00). In addition to this common

fund amount, Bow has agreed to separately pay Class Counsel's reasonable attorney's fees and expenses, such that the Settlement Class will not bear that expense. Accordingly, the $8,025,000.00 common fund is a net amount, subject only to the costs of notice and administration[1]. Plaintiffs, on behalf of the Settlement Class, submit that the proposed settlement is fair, reasonable, and adequate.

For the Court's review, Plaintiffs attach the following documents:

- **Exhibit A:** fully executed copy of the Settlement Agreement with exhibits 1 through 8, as they appear in the Settlement Agreement;

  - **Exhibit 1:** proposed Claim Form to be utilized by Class Members when submitting a claim;

  - **Exhibit 2:** proposed Long Form Notice of Settlement of Class Action and Final Approval Hearing;

  - **Exhibit 3:** proposed Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement;

  - **Exhibit 4:** proposed Fixture Schedule;

  - **Exhibit 5:** proposed Denial Letter to Settlement Class Members explaining the reason for denial, the process for responding to a denial of claim by the administrator, and the process for an appeal;

---

[1] As discussed in detail below, Plaintiffs and Bow have agreed on a settlement administrator, Angeion Group, who has been approved by other federal courts in at least two other class actions involving domestic plumbing products manufactured by other companies (not Defendant).

- o **Exhibit 6:** proposed Deficiency Letter to Settlement Class Members explaining the reason for deficiency, the process for responding to a claim of deficiency by the administrator, and the process for an appeal;

- o **Exhibit 7:** proposed Cover Letter to accompany the Notice; and

- o **Exhibit 8:** proposed Short Form (Summary) Notice of Proposed Settlement;

Under the Settlement Agreement, members of the Settlement Class who submit a valid and timely Claim Form to the Settlement Administrator are entitled to remedies for past and future property damage claims. Members of the Settlement Class who have had Multiple Qualifying Leaks, as defined under the Settlement Agreement, are entitled to re-plumb costs, or a one-time cash payment of $8,500.00.

## III.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   PEX Generally

PEX is a flexible pipe system used for hot and cold plumbing in both residential and commercial structures. To create PEX tubing, polymer chains are chemically cross-linked. The cross-linking process allows for flexibility so the pipe can expand without cracking or splitting. Manufacturers can change the properties of the PEX material by using various manufacturing processes and different materials and equipment to create their own distinct PEX product.

## B.     Bow's SUPERPEX Tubing

Bow Plumbing Group Inc. is a Canadian company that manufactures PEX Tubing, including SUPERPEX, and fittings.[2] Bow began manufacturing its SUPERPEX tubing in 2003.

Bow's Tubing is manufactured for use in hot and cold potable water distribution systems in residential or commercial structures. It is made in four sizes: 3/8", 1/2", 3/4", and 1". According to Bow's Specifications sheet, the Tubing is meant to perform up to a continuous working pressure of 100 psi at 180°F and 160 psi at 73°F and features a patented multi-layer pipe: 1) an exterior pigmented layer; 2) a middle layer; and 3) an inner CRT (Chlorine Resistant Technology) liner.[3]

Bow's Tubing is easily identifiable, as it is marked with a print line that includes Bow's identification and its product designation, which is "PEX 5306".

## C.     Plaintiffs' Claims and Nature of Alleged Damages

Plaintiffs allege that Bow's Tubing is defective because it is predisposed to premature oxidative failure and creep rupture.   Fourth Amended Class Action Complaint, Doc. 67 at ¶ 3. Plaintiffs allege that these purported defects resulted in

---

[2] Plaintiffs do not make any allegations concerning Bow's PEX fittings. The proposed Settlement pertains to Bow's PEX Tubing only.

[3] Bow's Specifications can be found on its website: https://www.bow-group.com/technical-specs.

repeated leaks which have caused and, in some instances, continue to cause damage to Plaintiffs' and Class Members' real and personal properties. *Id.* at ¶¶ 9, 106.

There are three representative Plaintiffs named in this case: Roselyn Braswell, Gregory Johnson and Jerri Johnson. Plaintiff Roselyn Braswell moved into her newly constructed home in Montgomery County, Alabama around May 2013. The builder chose Bow's SUPERPEX tubing, and it was installed in Ms. Braswell's home before she moved in. Ms. Braswell has experienced leaks in Bow's SUPERPEX tubing on at least four (4) separate occasions. With each leak, she has incurred costs to repair the leak and other property damage to her home. *Id.* at ¶¶ 28-33.

Plaintiffs Gregory and Jerri Johnson moved into their newly constructed home in Montgomery County, Alabama in 2015. Again, the builder chose Bow's SUPERPEX tubing before the Johnsons moved into the home, and the Johnsons played no role in choosing the product. To date, Mr. and Mrs. Johnson have experienced leaks in Bow's SUPERPEX tubing on eight (8) occasions, including in November 2022 when counsel for both Parties and their retained experts were on site. The Johnsons have suffered monetary damages caused by leaks in Bow's SUPERPEX tubing, including costs to repair the leaks and property damage to their home. *Id.* at ¶¶ 41-49.

There is substantial evidence that Plaintiffs have experienced multiple leaks, incurring construction, lodging and/or storage costs while their homes were

undergoing repair. Plaintiffs claim consequential damages for the cost of repairs to the property and structure of their home; damages to repair or replace their personal property damaged from the leaking PEX Tubing; the cost to replumb the home with alternative pipe; and living expenses during the repair process.

### D.    Bow's Defenses

Bow denies that there is any design or manufacturing defect in its Tubing, and denies that it has any liability to the Plaintiffs or the putative class. Instead, Bow asserts that the leaks in Plaintiffs' homes (and the leaks, if any, in Tubing installed in the homes of putative class members) were caused by, *inter alia*, improper installation, including failure to adhere to Bow's installation guidelines; improper use of the product; and/or environmental conditions peculiar to certain regions. Bow's position is supported by substantial evidence that the vast majority of leaks in the Tubing occurred in areas with the same or very similar conditions.

At the time Plaintiffs and Bow reached their proposed settlement, the Plaintiffs and proposed Class Members faced significant risks which could have resulted in Plaintiffs and the Settlement Class recovering nothing, or at best a modest recovery, which would have been far less than the recovery provided for in the proposed Settlement.  In addition to having to prove that the Tubing was actually defective (which Bow denies), Plaintiffs and the Settlement Class would have to overcome Bow's substantial legal defenses.

For example, with regard to Plaintiffs' claims for breach of warranty, Plaintiffs faced several notable defenses. First, Plaintiffs would have had to demonstrate Bow's warranty was the "basis of the bargain" with Plaintiffs, a difficult proposition given that Plaintiffs purchased fully constructed homes and did not select the plumbing components. To do so, Plaintiffs would be required to demonstrate they had relied upon Bow's warranty at the time they purchased their home (and by extension, knew the Tubing was contained therein). Alternatively, Plaintiffs would have had to demonstrate that Bow and the parties it contracted with for the sale of the Tubing intended the sales contracts to bestow direct—not merely incidental—benefits upon Plaintiffs; a hard sale given that Bow did not even know Plaintiffs' identities at the time of contracting. Additionally, whether Plaintiffs and each Settlement Class member brought their claims in a timely manner would be a significant, fact intensive undertaking. Bow asserted statute of limitations defenses that could have been a complete bar to many Class Members' claims, including class representative Braswell's claims.

Bow also asserted that its warranty applied only to manufacturing defects, and not design defects. Put simply, Bow argued Plaintiffs would have been required to demonstrate through qualified expert testimony that their warranty claim arose from a defect in the manufacturing of the Tubing as opposed to the design of the Tubing itself (since design defects were excluded under the warranty). Bow's retained

experts would have opined that the leaks experienced by Plaintiffs were the result of installation errors and/or environmental conditions peculiar to certain regions.

With regard to Plaintiffs' products liability claims, Bow also raised a number of legal defenses, most notably, the economic loss doctrine. While Plaintiffs maintain they would be able to overcome a challenge on this issue, Plaintiffs still had to face the possibility that if the economic loss doctrine applied, damage claims could be limited to personal property and may not have included the costs of re-plumbing structures or repairing damage to the home or home structures themselves that had resulted from leaks.

Bow also asserted other defenses to Plaintiffs' claims, which are set forth more fully in Answer to Plaintiffs' Fourth Amended Class Action Complaint (Doc. 67).

Of course, overarching the above highlighted risks faced by Plaintiffs and the Settlement Class with regard to liability, are the difficulties Plaintiffs would have also faced in seeking a contested class certification order, which would have required Plaintiffs to satisfy the requirements of Rule 23 through an adversarial process and not a negotiated and agreed upon definition.

### E.    Procedural History

There has been substantial litigation involving PEX tubing made by other manufacturers in state and federal court systems for at least twenty (20) years now, including at least four other federal class actions. In these cases, other courts have

certified settlement classes based on similar facts and allegations. *See e.g., Matson v. NIBCO, Inc.*, 5:19-cv-00717 (W.D. Tex. February 23, 2021), Doc. 68 (order provisionally certifying settlement class); *Cole v. NIBCO, Inc.*, 13-7871 (D.N.J. November 14, 2018), Doc. 177 (order granting preliminary approval to class action settlement, provisionally certifying settlement class, directing notice to the settlement class, and scheduling final approval hearing); *In Re: Zurn Pex Plumbing Products Liability Litigation*, 0:07-cv-03652 (D. Minn. October 18, 2012), Doc. 168 (order granting motion to certify class for settlement purposes and for preliminary approval of class action settlement and form and dissemination of notice to the class); and *In Re: Kitec Plumbing System Products Liability Litigation*, 09-MD-2098 (N.D. Tex. April 29, 2011), Doc. 97 (order granting motion for preliminary approval of class action settlement).

Plaintiff Roselyn Braswell filed her Original Complaint on January 13, 2021. On September 21, 2022, Plaintiffs filed their Fourth Amended Class Action Complaint to add Plaintiffs Gregory and Jerri Johnson. Plaintiffs brought claims against Bow for: (i) Breach of Express Warranty; (ii) Breach of Implied Warranty of Merchantability; (iii) Breach of Implied Warranty of Fitness for a Particular Purpose; (iv) Unjust Enrichment; (v) Negligence/Wantonness: Failure to Warn; (vi) Negligence/Wantonness: Defective Design and Manufacture Pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD); (vii) Strict

Liability-Design Defect and Manufacture Defect Pursuant to the AEMLD; (viii) Strict Liability-Design and Manufacture Defect; (ix) Suppression; and (x) Declaratory and Injunctive Relief.

This case has been pending before this Court for over two (2) years and is in the pre-certification stage. The Parties have engaged in extensive written discovery, expert investigations, and have conducted depositions of the homeowners, representatives of Bow Plumbing Group, and a plumber, whose company installed Bow's Tubing in numerous homes throughout the Montgomery, Alabama area (including Plaintiff Braswell's home).

The Parties engaged experts and likewise spent untold hours working with those experts on issues related to the manufacturing of Bow's Tubing, the installation and use of the Tubing, the Tubing leaks complained of, site inspections for observation and retrieval of the Tubing, assessing water damage to the home, home structure and installation issues, and assessing personal property damage resulting from the leaks. Specifically, the Parties, and their respective experts, completed site inspections of five (5) homes in the Montgomery County, Alabama area, which averaged twelve-hour days for a rough total of three weeks' time.

The Parties finally arrived at the proposed Settlement after three full-day mediation sessions and further numerous communications among counsel for the Parties over the course of several weeks.

### F.	The Benefits of the Proposed Settlement

The proposed Settlement provides substantial benefits to the Settlement Class, especially in light of the risks presented, discussed above. Indeed, even if Plaintiffs succeed at trial on every issue, they and the Settlement Class still run the risk of receiving far less in damages than the proposed Class Settlement Fund.  The notable terms of the proposed Settlement provide for:

- A settlement fund in the amount of up to $8,025,000.00, with additional upside value as explained below.

- Members of the Settlement Class will be eligible to receive up to 80% of their "Reasonably Proven Property Damage" (with an initial payment of 70% of their claim). Reasonably Proven Property Damage is defined to include repair or replacement of the Bow Tubing as a result of a Qualifying Leak, the repair or replacement of other property damaged as a result of a Qualifying Leak, and material and labor costs necessary to restore the affected property or structure to its condition prior to the Qualifying Leak.[4]

- Members of the Settlement Class who have suffered Multiple Qualifying Leaks may exercise the option to obtain a re-plumb of their entire residence or structure. The amount of the payment (the "Re-Plumb Calculation") is to be calculated at a rate of $650.00 per plumbing fixture and $433.00 per half

---

[4] *See* Exhibit A at 20-21.

fixture present in the structure (*e.g.*, the Re-Plumb Calculation for a home with 13 fixtures would be $8,450.00). Eligible Claimants shall receive up to 80% of the Re-Plumb Calculation (with an initial payment of 70% of the Re-Plumb Calculation).[5]

- Members of the Settlement Class eligible for a re-plumb will also have the option to select a one-time payment of $8,500.00 in lieu of a re-plumb.

- In order to access the relief proposed in the Settlement Agreement, the Settlement Class members are only required to provide a valid and timely Claim Form, and the process through which such claims may be submitted also provides for submission of proof electronically through a settlement website designed for such purpose.[6]

- Bow has agreed to pay Class Counsel's reasonable attorneys' fees and expenses separately from the common fund.

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE PRELIMINARILY APPROVED.

Fed. R. Civ. P. 23(e) requires, among other things, court approval to settle a case involving a certified class, or a class proposed to be certified for purposes of settlement, as is the case here. Here, preliminary approval of the proposed Settlement is warranted because it is fair, adequate and reasonable, the product of arm's-length

---

[5] *See* Exhibit A at 21-22.
[6] *See* Exhibit A at 30.

negotiations, and Plaintiffs can satisfy the prerequisites of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b).

**A.     The proposed Settlement is the product of informed, arm's length negotiations.**

The proposed Settlement was reached after extensive arm's length negotiations prior to, during, and after mediation. The proposed Settlement, in principle, was finally achieved after three full-day mediation sessions beginning on Wednesday, May 31, 2023 to Friday, June 2, 2023, before Christopher Nolland, Esq. At mediation and throughout litigation, all sides vigorously represented their respective clients, and presented their positions (always professionally, but also aggressively), and considerable effort was spent over the course of negotiations before the parties reached the proposed Settlement. Accordingly, the proposed Settlement is not the result of collusion, but it is the result of years' long fact and expert discovery and active, robust participation in litigation by all Parties.

**B.     The proposed Settlement is fair, adequate and reasonable.**

While Fed. R. Civ. P. 23(e) requires court approval of any class action settlement, it does not provide any standards for approval, outside of the fact that the district court must find that the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984). The fairness determination is left to the sound discretion of the trial court and is "informed by the strong judicial policy favoring

settlement as well as by the realization that compromise is the essence of settlement."

*Id*. at 987. "[T]here exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.'" *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002)).

While there are no set standards for determining the fairness of a proposed settlement, the Eleventh Circuit has provided guidance, in that a court should examine several factors, including:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F. 2d at 986.

The settlement proposed by the Plaintiffs meets each of the *Bennett* factors. Thus, Plaintiffs' motion should be granted.

### i.    The Likelihood of Success at Trial

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma,* 406 F. Supp. 2d at 1318. As earlier detailed, Plaintiffs face very real risks which could result in Plaintiffs and the Settlement Class recovering nothing, or at best a modest recovery far under the

proposed Settlement. *See supra*, p. 6, ¶ D. Bow has raised, and will likely continue to raise, numerous procedural and substantive defenses if this litigation is not resolved at this stage.

Of course, a discussion of these risks assumes the Court would even certify the Class. The risk that this Court could refuse to certify a contested class, or certify a narrower class if contested, is possible. Plaintiffs have worked diligently during the pendency of this litigation to collect the necessary evidence to support a motion for class certification and believe they would prevail in the event a contested class motion is filed. However, Fed. R. Civ. P. 23 requires additional elements to be satisfied that do not apply to a settlement class, and some of the requirements are applied differently if a class is contested. Bow is not opposing this motion for settlement purposes. However, Bow would oppose a motion to certify a contested class, which could result in the class never becoming certified, yet another risk to be considered.

When weighing the risks Plaintiffs may face if the proposed Settlement is approved against the likelihood of success if this case were to proceed, it is clear that the scales tip in favor of the proposed Settlement.

      ii.    <u>Range of Possible Recovery and the Point on or below the Range of Recovery at which a Settlement is Fair</u>

These two *Bennett* factors are "easily combined." *Lipuma,* 406 F. Supp. 2d at 1322. The range of possible recovery "spans from a finding of non-liability through

21

varying levels of injunctive relief." *Id.* (quoting *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002)).

- The proposed Settlement provides real, valuable, and immediate benefits to Plaintiffs and Class Members that are adequate, fair and reasonable. Immediacy is particularly important, as Plaintiffs assert that the Tubing may continue to fail and cause damage to Plaintiffs and Class Members' homes. To that end, concrete and imminent financial relief is more preferable than some unknown amount of financial relief, *if any*, years later. Though the proposed Settlement does not provide a one hundred percent recovery, "[a]ny settlement typically offers far less than a full recovery. Indeed, settlements, by their nature, do not yield one hundred percent recovery for plaintiffs." *Faught v. Am. Home Shield Corp.*, No 2:07-cv-1928-RDP, 2010 WL 10959223, *14 (N.D. Ala. Apr. 27, 2010), *aff'd*, 668 F.3d 1233 (11th Cir. 2011).

- In truth, this proposed settlement offers a greater recovery than other PEX tubing class actions. In this settlement, class members can recover between 70-80% of their damages. Members of the Settlement Class will be eligible to receive up to 80% of their Reasonably Proven Property Damage or the Re-Plumb Calculation (with an initial payment of 70% of their claim).[7] Members of the Settlement Class eligible for a re-plumb will also have the option to

---

[7] *See* Exhibit A at 20-22.

select a one-time payment of $8,500.00 in lieu of a re-plumb. In *Matson*, class members could recover between 50-75% of their damages. Eligible Claimants received an initial payment of 50% of their Reasonably Proven Property Damage, with the possibility of a second, *pro rata* payment of up to 75% of their Reasonably Proven Property Damage at the end of the Claim Period. Eligible Claimants who qualified for a re-plumb received an initial payment of 50% of their Re-Plumb Calculation, with the possibility of a second, *pro rata* payment of up to 75% of their Re-Plumb Calculation at the end of the Claim Period. Members of the Settlement Class eligible for a re-plumb had the option to select a one-time payment of $3,000.00 in lieu of a re-plumb. Settlement Agreement at 21-26, *Matson et al. v. NIBCO, INC.*, No. 5:19-CV-00717 (W.D. Tex. Dec. 22, 2020), Doc. 50-1. In *Cole*, class members could recover between 25-70% of their damages. Eligible Claimants received an initial payment of 25% of their Reasonably Proven Property Damage, with the possibility of a second, *pro rata* payment of up to 70% of their Reasonably Proven Property Damage at the end of the Claim Period. Eligible Claimants who qualified for a re-plumb received an initial payment of 25% of their Re-Plumb Calculation, with the possibility of a second, *pro rata* payment of up to 70% of their Re-Plumb Calculation at the end of the Claim Period. There was no option for a one-time payment in lieu of a re-plumb. Settlement

Agreement at 21-23, *Cole et al. v. NIBCO, INC.*, No. 3:13-CV-07871 (D. N.J. Oct. 26, 2018), Doc. 173-1. Clearly, the current settlement offers far better recovery to Settlement Class members than the predecessor comparator cases. The recovery consideration focuses on the possible recovery at trial. *Lipuma*, 406 F. Supp. 2d at 1323. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Id.* Strong defenses, such as the ones presented by Bow, render the possibility of a low recovery quite reasonable. *Id.* (citing *Bennett*, 737 F.2d at 986) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery" (internal citation omitted)).

Balancing the very real risk of low recovery, or no recovery at all, faced by Plaintiffs and Class Members against the concrete and immediate relief provided by the proposed Settlement, the proposed Settlement is clearly advantageous for Plaintiffs and the Settlement Class Members.

### iii.  Complexity, Expense and Duration of Litigation

Analyzing the complexity, expense and duration of litigation requires the Court to consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma,* 406 F. Supp. 2d at

1323. In other words, it is appropriate to take "the bird in the hand instead of a prospective flock in the bush.'" *Id.* (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993). Obviously, complex litigation, like the instant matter, takes a substantial amount of time and party and judicial resources. "Thus, 'settlement will alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing.'" *Id.* at 1323. (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (internal citation omitted)).

The instant matter presents several complex issues of fact and law which require multiple experts. Witnesses are located across the United States and Canada. Plaintiffs expect the trial of this case would take at least two (2) weeks, potentially longer, and would be expensive for the Parties and the Court. Finally, this case would likely not be resolved at trial, but would continue through appellate proceedings. Considering the inherent uncertain outcomes that Plaintiffs and the Settlement Class members would face, combined with the natural delays and complexities of this case against the mere possibility of recovery at trial, the proposed Settlement is the proverbial bird in the hand.

iv.    Substance and Amount of Opposition to the Settlement

This factor does not apply at the preliminary approval stage. It becomes relevant after the class members receive notice of the proposed Settlement and have

an opportunity to object. *In re Health Ins. Innovations Secs. Litig.*, 2020 U.S. Dist. LEXIS 231055. *26 (M.D. Fla. 2020).

v.     <u>The Stage of Proceedings at which the Settlement was Achieved</u>

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. For obvious reasons, "[e]arly settlements benefit everyone involved in the process and everything that can be done to encourage such settlements – especially in complex class action cases – should be done." *Id*. (quoting *In re M.D.C. Holdings Sec. Litigation*, 1990 U.S. Dist. LEXIS 15488, 1990 WL 454747 *7 (S.D. Cal. 1990)).

Here, the proposed Settlement was achieved at a somewhat early stage, but not so early that Plaintiffs lacked necessary information to knowledgeably weigh the merits of the case against the benefits of potential settlement. This case has been pending for over two (2) years. Over the course of those years, the Parties have completed a substantial amount of fact discovery and expert investigation. Although the Parties were conducting class certification discovery to prepare for their Motion for Class Certification, the Court's analysis of class certification "may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (quoting *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). Accordingly, the Parties conducted substantial merits discovery, including written discovery, site inspections, depositions, expert testing, and consideration of expert opinions concerning the installation and alleged defective design and/or manufacture of Bow's Tubing. Further, Plaintiffs were able to conduct extensive discovery regarding the nature and extent of Plaintiffs' alleged damages. Thus, Plaintiffs have had a sufficient opportunity to evaluate the likelihood of success and the defenses presented by Bow. Moreover, Plaintiffs are represented by experienced counsel who have engaged in similar PEX class action litigation.[8] Because Counsel has handled similar litigation, they understand the time and expense that continued litigation, trial and a possible appeal present. Due to the foregoing, this Court should find that Plaintiffs had sufficient information to settle this action, and that settlement is appropriate at this juncture.

In summation, the threshold issues for the Court's consideration here are: "a) whether the settlement was procured by collusion among the parties or was the result of arms-length and informed bargaining; and b) whether the proposed final settlement is fair, adequate and reasonable, applying the six *Bennett* factors." *Lipuma*, 406 F. Supp. 2d at 1315. The proposed Settlement was not procured by collusion and was the result of arms-length negotiations. Further, the proposed

---

[8] *See Matson v. NIBCO, Inc.*, 5:19-cv-00717 (W.D. Tex. February 23, 2021).

Settlement satisfies each of the six *Bennett* factors. Accordingly, the proposed Settlement is fair, adequate and reasonable, and preliminary approval of the proposed Settlement is appropriate.

## V. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED.

Given that the proposed Settlement is fair, adequate and reasonable, the Court should conditionally certify the Settlement Class because the proposed Class meets the requirements for certification under Fed. R. Civ. P. 23 for settlement purposes.

When a class action is settled prior to certification, as is the case here, the court may certify a class solely for the purpose of providing notice to putative members of a proposed class of the terms of the anticipated settlement and of their opportunity to object. *Faught v. Am. Home Shield Corp.*, No 2:07-cv-1928-RDP, 2010 U.S. Dist. LEXIS 146382, *20 (N.D. Ala. Apr. 27, 2010) (citing *In re Beef Industry Antitrust Litig.*, 607 F. 2d 167, 173-178 (5th Cir. 1979). The United States Supreme Court has held that the requirements of Fed. R. Civ. P. 23(a) and (b) must not be disregarded when considering the certification of a settlement class. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620-622 (1997).

### A. Definition of the Settlement Class

The Settlement Class is jointly defined by the Parties as:

All Persons within the fifty states, the District of Columbia, and all territories of the United States that own or have owned at any time since May 26, 2003, a residential, commercial, or other structure that contains

or contained Bow's PEX Tubing, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a plumber, builder, contractor, distributor, seller, subrogated insurance carrier, or other Person that has claims for contribution, indemnity, or otherwise against Bow as a result of leaks of the PEX Tubing in such residential, commercial, or other structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a residential, commercial, or other structure covered by this Settlement without the need of a formal assignment by contract or court order. The Settlement Class includes all Persons within this definition regardless of whether any such Person has an active lawsuit against Bow, or an active claim or potential claim against Bow, whether tolled or otherwise, involving Bow's PEX Tubing. Excluded from the Settlement Class are: (i) Bow, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which Bow has a controlling interest; (ii) judges presiding over the Litigation; (iii) local, municipal, state, and federal governmental entities; and (iv) Persons whose claims against Bow related to Bow's PEX Tubing have been or are dismissed by adjudication.

*See* Ex. A at 11.

### B. Rule 23(a) Requirements

Federal R. Civ. P. 23(a) requires a plaintiff seeking class certification to satisfy four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Here, Plaintiffs satisfy all four requirements.

### i. Numerosity

Numerosity requires that members of a class be "so numerous that the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no hard and fast

numerical threshold to warrant class certification, but the Eleventh Circuit has held that "less than twenty-one is inadequate…more than forty is adequate, and numbers falling in between are open to judgment based on other factors…" *See*, *e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"). Here, the Parties are aware of roughly 380 potentially affected structures nationwide.

    ii.   <u>Commonality</u>

Fed. R. Civ. P. 23(a)(2) requires plaintiffs seeking class certification to show that there are questions of law or fact common to the class. "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Essentially, the threshold issue is whether a class-wide proceeding has the ability to generate common answers to common questions.

Here, the central issue is whether Bow's Tubing is defective. The answer to this question is common to the class, and can be proven through uniform class-wide evidence under similar state laws. Stated differently, Plaintiffs' claims and the claims of Class members raise common questions that have common answers that can be

generated through class-wide proof that will resolve all of the claims. Therefore, the commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied.

### iii. Typicality

Typicality requires a "nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F. 2d 1332, 1337 (11th Cir. 1984). Typicality does not require identical claims, rather the necessary nexus is established if the claims of the class representative "arise from the same event or pattern or practice and are based on the same legal theory." *Id. See also Appleyard v. Wallace*, 754 F. 2d 955, 958 (11th Cir. 1985) (typicality depends on "whether named representatives' claims have the same essential characteristics as the claims of the class at large"). Here, the typicality requirement imposed by Fed. R. Civ. P. 23(a)(3) is easily met because the Plaintiffs' and potential Class Member's claims arise from Bow's conduct (*i.e.*, the design, manufacture, and sale of its PEX products that were ultimately installed in their structures). Where "claims arise out of and involve application of the same" company-wide policies and systems, typicality is generally met. *See, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 698 (N.D. Ga. 2001) (typicality met where "claims arise out of and involve application of the same" company-wise policies and systems). Further, Plaintiffs' claims and those of the

unnamed class members are based on the same legal theories, and Plaintiffs' alleged damages are similar to those of the unnamed class members.

### iv. <u>Adequacy</u>

There are two considerations for adequacy: 1) the competency of class counsel to handle the case; and 2) the absence of disabling conflicts of interest between the named plaintiffs and the class members. *J.W. Birmingham Bd. Of Educ.*, No. 2:10-cv-03314-AKK, 2012 U.S. Dist. LEXIS 124183, at *28 (N.D. Ala. Aug. 31, 2012) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1532-33 (11th Cir. 1985)). For settlement purposes, there are no conflicts of interest between the class representatives and members of the class. Each has a common interest in repairing or replacing the same alleged defective products installed in their structures. To date, the representative Plaintiffs' active participation is strong evidence that they will continue to vigorously prosecute this case in the interest of the class. And again, Plaintiffs' attorneys have extensive experience as litigators in federal court class action litigation, including experience with a class action involving an alleged defect in a similar product.

### C.  **Rule 23(b)(3) Requirements**

In addition to the Rule 23(a) requirements, plaintiffs seeking certification of a proposed class must also establish at least one of the alternative requirements of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(b)(3) provides that a plaintiff must show "that questions of law or fact common to class members predominate over questions

affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Stated differently, plaintiffs seeking class certification must demonstrate the requirements of predominance and superiority. *Williams v. Mohawk Industries, Inc.*, 568 F. 3d 1350, 1357 (11th Cir. 2009).

i.    Predominance

Fed. R. Civ. P. 23(b)(3) requires that the party proposing a class action establish that issues common to the class predominate over the individual issues of particular class members. *Amchem Prods. V. Windsor*, 521 U.S. 591, 622-632 (1997). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *See Williams*, 568 F. 3d at 1357 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001) (internal citations omitted)). The threshold determination is whether "after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Id*. at 1357 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). Fed. R. Civ. P. 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196

(2013). Rather, the plaintiff's burden is to show that "one or more of the central issues in the action are common to the class and can be said to predominate." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Other courts have determined this requirement was met in similar cases. For example, the Plaintiffs in a similar class action alleged many of the same causes of action and dealt with many of the same factual considerations as those in the present matter. In considering a motion to certify a settlement class, the *Zurn* court found that common issues predominated noting, like here, the "central issues of liability will pivot around what and when Zurn knew about the [alleged] defects," with respect to the negligence claim, and with respect to the warranty claim, whether the product was merchantable at the time of purchase. Finally, the *Zurn* court noted that evidence of an intrinsic defect at the time of purchase establishes a predominant question for the class, and individual concerns about installation error or other alleged modes of individual failure do not overcome a finding of predominance. *See In Re: Zurn Pex Plumbing Products Liability Litigation*, 0:07-cv-03652 (D. Minn. October 18, 2012), Doc. 168.

Here, just like in *Zurn*, the single dominant question for all Settlement Class members is whether Bow's Tubing was defectively designed. This question can be resolved on a class-wide basis. Individualized inquiry, if any, would not predominate

over the common central issue. Key factual and legal questions related to Bow's liability can all be resolved through common evidence.

Additionally, individualized issues related to Plaintiffs and class members' damages do not predominate over common issues. There are two types of damages: (1) the cost to remove and replace the PEX tubing and re-plumb; and (2) the cost to repair damage caused by the failure of the PEX Products, both of which tie directly into Plaintiffs' theory of liability; namely, that the PEX Products are defective, prematurely fail, and that failure results in damage to Plaintiffs' property. Admittedly, the extent of the property damage to each individual's property (and therefore the cost to repair it) will not be uniform across the class. The Supreme Court has held that this will necessarily be the case in every class action where members of the class have suffered such damages. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 2558 (2011) (deeming it "clear that individualized monetary claims belong in Rule 23(b)(3)"). The determining question is whether individual "damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical method." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004); *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized issues of damages "easy to resolve" when "calculations are formulaic").

Under the Settlement Agreement, the Settlement Class will be able to prove the extent of their individual property damage by submitting a valid and timely Claim Form, along with invoices, estimates, and other documents showing each individual's repair costs. Therefore, the method of proving individual damages will be uniform across the entire class. Accordingly, calculating individualized damages using a uniform method will not be so complex as to defeat class certification under Rule 23(b)(3). This method of proof and calculation of damages has been approved for other similar PEX settlement classes. *See, e.g., Matson v. NIBCO, Inc.*, 5:19-cv-00717 (W.D. Tex. February 23, 2021), Doc. 68 (order provisionally certifying settlement class) and *Cole v. NIBCO, Inc.*, 13-7871 (D.N.J. November 14, 2018), Doc. 177 (order granting preliminary approval to class action settlement, provisionally certifying settlement class, directing notice to the settlement class, and scheduling final approval hearing).

 ii. <u>Superiority</u>

The proposed Settlement Class can be managed through a uniform manner of proof and calculation of damages, such that management of the class action for the purposes of settlement through a centralized claims administrator will not present difficulties. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. V.*

*Windsor*, 521 U.S. 591, 620 (1997). Refusal to certify a class due to manageability is not favored. *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992).

Since Plaintiffs satisfy each of the requirements of Fed. R. Civ. P. 23, the proposed Settlement Class should be certified.

## VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO MEMBERS OF THE CLASS.

If this Court finds that the proposed Settlement is fair, adequate and reasonable, Fed. R. Civ. P. 23(e) requires that absent class members be informed. Sufficient notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Settlement Agreement provides for a Notice Plan, which includes a long form Notice of Settlement, a Cover Letter summarizing and highlighting the benefits of the Settlement, the Claim Form, the Summary Notice for publication, provisions for providing notice of the Settlement through digital media, a Settlement Website, www.BowPEXSettlement.com, and a toll-free telephone line with live operators. The Parties have engaged a nationally-known class action administrator, Angeion Group, to serve as Class Action Administrator. Angeion Group will implement the Notice Plan and manage claims administration for the Claim Period. Notably, Angeion Group was approved and serves as the administrator in two other PEX

litigation settlements, *Matson v. NIBCO, Inc.* and *Cole v. NIBCO, Inc.*, and is fully familiar with the notice and claims process utilized, which closely resembles the proposed Notice and Claims processes used in those cases.

The Notice, Cover Letter, and Summary Notice each fairly, accurately, and reasonably, in clear and concise language, inform Settlement Class members of: (1) appropriate information about the nature of this Litigation and the essential terms of the Settlement Agreement; (2) appropriate information about how to obtain additional information regarding this matter and the Settlement in particular, through the Settlement Website; and (3) appropriate information about how to object to, or exclude themselves from, the Settlement. The proposed Notice incorporates the "plain language" guidelines of Fed. R. Civ. P. 23(b)(2)(B). The Notice also fairly and adequately informs the Settlement Class members that if they do not comply with the specified procedures and the deadline for objections, they will lose any opportunity to opt out or to have any objection considered at the Final Approval Hearing or to otherwise contest approval of the proposed Settlement or appeal from any order or judgment entered by the Court. Additionally, the Notice Plan provides for notification of the appropriate Federal and State officials by Bow pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

In short, the Notice Plan as described above is the best notice practicable under the circumstances and therefore, fully comports with due process and the requirements of Fed. R. Civ. P. 23.

The proposed Order Granting Plaintiffs' Motion for Preliminary Approval (the "Preliminary Approval Order") grants preliminary approval of the Settlement Agreement and approves the form and content of the proposed Notice. *See* Exhibits 2, 7-8.

- Provision of Notice: Notice shall be issued via first class mail, digital media, a Settlement Website, www.BowPEXSettlement.com, and a toll-free telephone line with live operators to all members of the Class within thirty (30) days of the date of the Preliminary Approval Order.

- Scheduling of a Final Approval Hearing: The Court shall schedule a Final Approval Hearing not less than one hundred and five (105) days from the Notice Date.

- Deadline for Objections: Class members who wish to exclude themselves from the Settlement must file a written request for exclusion with the Court and serve it upon Plaintiffs' counsel no later than thirty (30) days after the Notice Date.

- <u>Deadline to File Motion for Final Approval:</u> Plaintiffs shall file their Motion for Final Approval no later than ten (10) days prior to the date of the Final Approval Hearing.

The proposed timetable provides an orderly process for giving notice to the Settlement Class members, and allows Settlement Class to respond to the Notice, and for the Court to determine the fairness, reasonableness, and adequacy of the Settlement. Moreover, the proposed timetable meets the due process requirements intended by the process set forth in Fed. R. Civ. P. 23(e).

Plaintiffs' proposed Notice Plan provides an easy-to-understand overview of the proposed Settlement and reasonably advises the Settlement Class of their duties and rights under the proposed Settlement, and where they can obtain additional information. Further, the proposed timetable is reasonable and comports with due process. Therefore, the Court should approve the proposed Notice and Notice Plan and direct that Notice be distributed in accordance with the Settlement Agreement.

## VII.     <u>ATTORNEYS' FEES AND EXPENSES</u>

Bow has agreed to pay Class Counsel's reasonable attorneys' fees and expenses separate from the $8,025,000.00 common fund. If the Court preliminarily approves the Settlement, Class Counsel will file a petition pursuant to Fed. R. Civ. P. 23(h) seeking approval of reasonable attorneys' fees and expenses. Class counsel will seek approximately $3.9 million dollars, separate from and in addition to the

common fund, for reasonable fees and reimbursement of litigation costs, including the retention and work-up of experts. Class counsel will support the petition with a detailed explanation of the reasonableness of the fees and expenses sought in the context of this litigation, which will be available for all Settlement Class members to review and respond to sufficiently in advance of subsequent events, specifically including deadlines to opt out or to object, and well ahead of the final Fairness Hearing.

## VIII.    <u>SERVICE AWARDS</u>

The Parties have agreed that service awards of $10,000.00 should be paid to Roselyn Braswell, and $5,000.00 to Gregory and Jerri Johnson combined, for ably representing the Class and bearing the burdens of full and effective participation in litigation. The Service Awards will be paid out of the attorneys' fees and cost provision and will not affect the net class settlement fund.

If such awards are not granted, this request for the Representative Plaintiffs shall be withdrawn and not renewed. In other words, this provision is severable from the remainder of this Motion for Preliminary Approval of the Class Settlement and any event which disallows the service awards shall not affect the Class Settlement or other provisions of this Motion. **The Representatives Plaintiffs' decision to agree to the proposed Settlement and to seek its approval are not influenced by the possibility of receiving service awards.**

# IX. **CONCLUSION**

Due to the foregoing, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, as it is fair, adequate and reasonable. Plaintiffs further request the Court conditionally certify the proposed class as the requirements of Fed. R. Civ. P. 23 are satisfied. Plaintiffs also request the Court direct distribution of the proposed Notice, as it is reasonably calculated to apprise the Settlement Class of the terms of the proposed Settlement and comports with due process. Finally, Plaintiffs ask the Court to set dates for a final fairness hearing, and for objection, opt-out and other deadlines outlined in the Settlement Agreement.

**WHEREFORE**, premises considered, Plaintiffs request that this Court set an expedited preliminary approval hearing and enter the proposed Preliminary Approval Order:

(1)     preliminarily approving the parties' Settlement;

(2)     conditionally certifying the Settlement Class for purposes for the Settlement;

(3)     Approving the form of Notice provided to the Court and directing the Plaintiffs to serve such Notice on Class members;

(4)     Scheduling a Final Approval Hearing;

(5)     Setting for a schedule for:

- Settlement Class members to opt-out of the Settlement;

- Settlement Class members to object to the Settlement;

- Plaintiffs to file their Motion for Final Approval;

- Class Counsel to submit an application for approval of attorneys' fees, costs, expenses, and service awards payable to Plaintiffs; and

- Granting such other and further relief as this Court deems necessary.

Dated: October 31, 2023                  Respectfully submitted,

*/s/ Kirby D. Farris*
Kirby D. Farris (ASB-2224-R78K)
Kenneth E. Riley (ASB-)
Calle Mendenhall (ASB-7985-W37E)
Malia D. Tartt (ASB-9073-M40J)
**FARRIS, RILEY & PITT, LLP**
1728 3rd Avenue North
Fifth Floor
Birmingham, Alabama 35203
T: (205) 324-1212
F: (205) 324-1255
kfarris@frplegal.com
kriley@frplegal.com
cmendenhall@frplegal.com
mtartt@frplegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the court's electronic system.

*/s/ Kirby D. Farris*
OF COUNSEL