## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**ROSELYN BRASWELL,** *et al.,*

     **Plaintiffs,**

v.

    **Civil Action No. 2:21-cv-00025-ECM**

**BOW PLUMBING GROUP, INC.,**

    **Defendant.**

### SETTLEMENT AGREEMENT

Plaintiffs (Roselyn Braswell, Gregory Johnson and Jerri Johnson, collectively the **"Plaintiffs"**) in the above-captioned case, *Roselyn Braswell, Gregory Johnson, and Jerri Johnson v. Bow Plumbing Group Inc.*, No. 2:21-cv-00025-ECM, (M.D. Ala.) (the **"Litigation"**), and Defendant Bow Plumbing Group Inc. (**"Bow"** or **"Defendant"**) (together with Plaintiffs, the **"Parties"**), stipulate and agree, pursuant to the terms and conditions set forth in this Settlement Agreement (the **"Settlement Agreement," "Settlement,"** or **"Agreement"**), to settle, dismiss and compromise the claims asserted against Bow in the Litigation as set forth herein.

WHEREAS, Plaintiffs have or had Bow Tubing (defined below) installed in their homes, buildings, or other structures;

WHEREAS, Plaintiffs have asserted claims in the Litigation seeking to recover damages individually and on behalf of putative classes as a result of the purchase, installation and/or use of Covered Products (defined below), which they claim to be defective, and also have sought injunctive, declaratory and other equitable relief;

WHEREAS, Bow has defended the Litigation, in part, on the grounds that (a) the Covered Products are not defective, and (b) any alleged leaks of the Covered Products were caused by

superseding or intervening individualized factors, such as improper installation methods, other issues related to installation, and issues relating to the operating and environmental conditions at each installation site;

WHEREAS, Plaintiffs and Class Counsel (defined below) have investigated the facts and law relating to the matters alleged in the Litigation. Without conceding any lack of merit of any of their claims, Plaintiffs and Class Counsel have concluded that it is in the best interests of the Settlement Class (defined below) to settle the Litigation on the terms set forth herein, and that the Settlement with Bow set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class;

WHEREAS, Bow has denied and continues to deny the claims and conduct alleged by Plaintiffs; any fault, wrongdoing, illegal conduct, or liability whatsoever on its part; and any alleged defect in the Covered Products. Bow has asserted numerous defenses to the facts and causes of action alleged in the Litigation, and Bow maintains that it has strong factual and legal defenses to all claims alleged in the Litigation. This Settlement shall not be construed as or deemed to be evidence of an admission by Bow of any fault, wrongdoing, or liability whatsoever, of any defect in the Covered Products, or that any of the allegations in the Litigation are true. Without conceding any lack of merit in its defenses, Bow considers it desirable to enter into this Agreement to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding in the Litigation;

WHEREAS, the Parties engaged in extensive, difficult, complex, and arm's-length negotiations regarding the settlement of Plaintiffs' and the Settlement Class Members' (defined below) claims regarding the Covered Products. The Settlement was finally achieved only after three full-day mediation sessions on Wednesday, May 31, 2023 to Friday, June 2, 2023, before

2

Christopher Nolland, Esq. (the **"Mediator"**) and after further numerous communications among counsel for the Parties over the course of several weeks;

WHEREAS, Plaintiffs and Bow agree that this Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by Bow, or of the truth of any of the claims that Plaintiffs or any Settlement Class Members have asserted against Bow;

WHEREAS, the Parties desire and intend by this Agreement to settle finally and completely, and effectuate a final resolution of the Released Claims (defined below) of all Settlement Class Members, and to provide for a complete full and final release of the Released Claims in favor of the Released Parties (defined below), as described below in detail;

NOW, THEREFORE, it is hereby agreed and stipulated by and among Plaintiffs, individually and on behalf of the Settlement Class, and Bow, through its undersigned counsel and intending to be legally bound, that the allegations asserted in the Litigation shall be settled, fully and finally compromised and released, and dismissed on their merits with prejudice, according to the terms and conditions set forth herein.

A.      **DEFINITIONS**

1.      As used in this Settlement Agreement, the following terms have the meanings set forth below.

a.      The term **"Attorneys' Fee, Cost, and Service Award"** means any and all attorneys' fees, costs, and expenses, including any fees and costs for experts and consultants, and Plaintiffs' service awards that may be awarded by the Court for the work performed for the benefit

of the members of the Settlement Class by Class Counsel, or other counsel representing members of the settlement class, and any service payments to Plaintiffs in recognition of their time, cost, and effort in the Litigation.

b.      The term **"Bow"** means Bow Plumbing Group Inc. and its predecessors, parent and sister companies, successors, subsidiaries, affiliates, agents, insurers, and assigns.

c.      The term **"Claim"** means a claim made by a Claimant via the submission of a Claim Form seeking a remedy pursuant to this Settlement Agreement.

d.      The term **"Claimant"** means a Settlement Class Member who submits a Claim Form seeking a remedy pursuant to this Settlement Agreement.

e.      The term **"Claim Form"** shall mean the form approved by the Court for use by Claimants to make Claims pursuant to this Settlement Agreement, which is to be substantially in the form of **Exhibit 1** hereto. The Claim form shall require each Claimant's agreement to be bound by the Release set forth in this Settlement Agreement.

f.      The term **"Claim Period"** means the time period from the date of the Court's Preliminary Approval Order to December 31, 2028.

g.      The term **"Class Counsel"** means all attorneys of record for Plaintiffs in *Roselyn Braswell, et al. v. Bow Plumbing Group Inc.*, No. 2:21-cv-00025-ECM (M.D. Ala.).

h.      The term **"Class Settlement Fund"** means the total settlement payment of up to Eight Million Twenty-Five Thousand Dollars ($8,025,000.00), to be paid by Bow for the benefit of the Settlement Class, to be funded pursuant to the schedule set forth in Paragraph 5 below, and to be used to pay all Claims of Eligible Claimants and Settlement Administration Costs

that are approved by the Court. The Class Settlement Fund is separate from, and will not be depleted at all by, the payment of the Attorneys' Fee, Cost, and Service Award (as set forth in Paragraph 41).

i.      The term **"Class Representatives"** means the named Plaintiffs in the Litigation.

j.      The term **"Counsel for Bow"** means Angel A. Croes, Hannah R. DellaSala, Caroline T. Pryor, and Sarah Cross Ryan of Carr Allison.

k.      The term **"Court"** means the United States District Court for the Middle District of Alabama.

l.      The term **"Covered Products"** means Bow's PEX Tubing, as defined herein.

m.      The term **"Effective Date"** means: (a) the expiration date of the time for filing notice of any appeal from the Final Approval Order by the Court, if no appeal is filed; or (b) if an appeal is filed, the latest of (i) the date of final affirmance of that Final Approval Order, (ii) the expiration of the time for a petition for writ of certiorari, the denial of certiorari, or, if certiorari if granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order that has the effect of confirming the Final Approval Order. For avoidance of doubt, the Effective Date shall not have been reached until the Court enters a Final Approval Order and there has been the successful exhaustion of all appeal periods without appeal or resolution of any appeals or certiorari proceedings in a manner upholding the Final Approval Order.

n.    The term **"Eligible Claimant"** means a Claimant who has submitted a valid and timely Claim Form as determined by the Settlement Administrator subject to all rights of the Parties under the Settlement Agreement.

o.    The term **"Final Approval Hearing"** means the hearing conducted by the Court to determine whether to approve this Settlement, to determine the fairness, adequacy, and reasonableness of this Settlement, and to certify the Settlement Class for purposes of the Settlement.

p.    The term **"Final Approval Order"** means the Final Approval Order of the Court approving the Settlement and certifying the Settlement Class, which is to be agreed upon by the Parties and submitted with Plaintiffs' Motion for Final Approval.

q.    The term **"Final Judgment"** means the Court's final judgment, which is to be agreed upon by the Parties and submitted with Plaintiffs' Motion for Final Approval.

r.    The term **"Lead Class Counsel"** means Kirby D. Farris of Farris, Riley & Pitt, LLP.

s.    The term **"Length of Tubing"** means a single, continuous piece of tubing, as originally installed from end to end, without any divisions or partitions. For Lengths of Tubing connected by fittings or other connectors, the connecting apparatus shall be considered a division in the Tubing which separates into separate Lengths of Tubing any Tubing connected by the apparatus.

t.    The term **"Litigation"** means *Roselyn Braswell, et al. v. Bow Plumbing Group Inc.*, No. 2:21-cv-00025-ECM (M.D. Ala.).

6

u.      The term **"Multiple Qualifying Leaks"** means the occurrence of at least three Qualifying Leaks in the structure, with at least two of the three leaks occurring in two separate Lengths of Tubing at any time.

v.      The term **"Notice of Settlement"** means the long-form Notice of Class Action Settlement substantially in the form attached as **Exhibit 2** hereto, subject to the approval of the Court in its Preliminary Approval Order.

w.      The term **"Net Settlement Fund"** means the Class Settlement Fund minus any Court-approved amounts for Settlement Administration Costs.

x.      The term **"Notice Date"** means no later than thirty (30) days after the Preliminary Approval Date, representing the date on which the Settlement Administrator is to have substantially implemented notice in accordance with the Notice Plan approved by the Court in the Preliminary Approval Order.

y.      The term **"Notice Plan"** shall have the meaning ascribed to it in Paragraphs 25.a. to 25.e. of this Agreement.

z.      The term **"Objection and Opt-Out Deadline"** means the date thirty (30) days after the Notice Date, or as otherwise set forth in the Court's Preliminary Approval Order.

aa.     The term **"Parties"** means Plaintiffs and Bow.

bb.     The term **"Person"** or **"Persons"** means any individual or entity, public or private.

cc.     The term **"Plaintiffs"** means any person listed as a named plaintiff in the operative Complaint in *Roselyn Braswell, et al. v. Bow Plumbing Group Inc.*, No. 2:21-cv-00025-ECM (M.D. Ala.).

dd.     The term **"Preliminary Approval Date"** means the date on which the Court enters the Preliminary Approval Order.

ee.     The term **"Preliminary Approval Order"** means the Preliminary Approval Order of the Court preliminarily approving the Settlement, substantially in the from attached herein as **Exhibit 3**.

ff.     The term **"Qualifying Leak"** means:

i.     With respect to Tubing, a physical escape of water from Tubing causing damage.

ii.     A Qualifying Leak does not occur where, following the invocation and conclusion of any procedures set forth in Paragraphs 15 and 16 below, the Settlement Administrator, Bow, and Class Counsel all agree that based on available evidence, a physical escape of water from a Covered Product causing damage was clearly, solely, and exclusively the result of: (1) a penetration of the Tubing from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing to plumbing components or appliances; (3) improper stress on the Tubing due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by Bow; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any violation of Bow's installation guidelines and/or installation issue unrelated to the design, manufacture, performance, or selection of the Tubing. If it is determined that a Qualifying Leak has not occurred because the physical escape of water causing

damage was clearly, solely, and exclusively the result of one or more of the causes set forth in (1) through (6) above with respect to a particular Claimant, then that Claimant shall have the benefits of the carve-out of the release provisions in Paragraph 35, meaning that Claimant shall not be precluded by the Release from filing claims against its installer or third parties.

gg.     The term **"Reasonably Proven Property Damage"** means the reasonably proven and unreimbursed reasonable costs paid by a Claimant in connection with: (a) the repair or replacement of the pertinent section(s) of Tubing as a direct result of a Qualifying Leak; (b) the repair or replacement of other property damaged as a direct result of a Qualifying Leak; and (c) the material and labor costs reasonably necessary to bring the residential or commercial structure and its contents back to the same finish and quality as existed before the Qualifying Leak, as determined by the Settlement Administrator based on its review of the Claimant's receipts, invoices, expense records, checks, credit card statements, or any other verifiable indicia of such costs incurred. Reasonably Proven Property Damage does not include: (a) any claimed economic losses arising from loss of use and/or loss of value of property; or (b) any amounts paid by a Person other than the Claimant or that were paid by the Claimant and then reimbursed or refunded by another Person, *i.e.*, there shall be no double recovery.

hh.     The term **"Release"** means the release set forth in Paragraph 34.

ii.     The term **"Released Claims"** means the claims released as set forth in Paragraphs 34 and 35.

jj.     The term **"Released Parties"** is defined in Paragraph 34.

kk.     The term **"Releasing Parties"** is defined in Paragraph 34.

ll.     The term **"Settlement Administrator"** means Angeion Group[1], which shall effectuate and administer the Notice Plan, distribute the Settlement Notice, administer the exclusion process for opt-outs, the Claim process, and distribution(s) to Eligible Claimants under the supervision of the Parties and the Court, and which firm is independent of the Plaintiffs, Class Counsel, Bow, and Counsel for Bow. All reasonable fees and costs billed by the Settlement Administrator will be paid from the Class Settlement Fund. Reasonable fees and costs of notice and administration prior to the creation of the settlement fund will be advanced by Bow and paid by Bow. All such amounts advanced and paid by Bow prior to the creation of the Class Settlement Fund will be credited towards Bow's payment of the Class Settlement Fund.

mm.     The term **"Settlement Administration Costs"** means the reasonable fees and expenses of the Settlement Administrator incurred in the administration of this Settlement Agreement and approved by the Court, including the reasonable costs associated with the Notice Plan and Settlement Notice; the administering, calculating, and distributing of the Net Settlement Fund to Eligible Claimants; other fees, expenses, and costs of Claim administration; the fees, expenses, and costs incurred in connection with the taxation of the Settlement Escrow Account (including without limitation expenses of tax attorneys and accountants, if any); and all other reasonable third-party fees, expenses, and costs incurred by the Settlement Administrator or other consultants retained by agreement of the Parties or by authority of the Court to assist with claims administration in connection with prosecuting, handling, and settling the Litigation; as well as administering the terms of this Settlement Agreement.

---

[1] The web address for the Settlement Administrator is: https://www.angeiongroup.com/.

nn.    The term **"Settlement Class"** means the following for settlement purposes only:

> All Persons within the fifty states, the District of Columbia, and all territories of the United States that own or have owned at any time since May 26, 2003, a residential, commercial, or other structure that contains or contained Bow's PEX Tubing, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a plumber, builder, contractor, distributor, seller, subrogated insurance carrier, or other Person that has claims for contribution, indemnity, or otherwise against Bow as a result of leaks of the PEX Tubing in such residential, commercial, or other structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a residential, commercial, or other structure covered by this Settlement without the need of a formal assignment by contract or court order. The Settlement Class includes all Persons within this definition regardless of whether any such Person has an active lawsuit against Bow, or an active claim or potential claim against Bow, whether tolled or otherwise, involving Bow's PEX Tubing. Excluded from the Settlement Class are: (i) Bow, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which Bow has a controlling interest; (ii) judges presiding over the Litigation; (iii) local, municipal, state, and federal governmental entities; and (iv) Persons whose claims against Bow related to Bow's PEX Tubing have been or are dismissed by adjudication.

oo.    The term **"Settlement Class Member"** means a Person that satisfies the requirements to be included in the Settlement Class and who does not timely submit a valid Request for Exclusion from the Settlement.

pp.    The term **"Settlement Escrow Account"** means an interest-bearing escrow account selected by Counsel for Plaintiffs and Counsel for Bow, which shall be treated at all times as a "Qualified Settlement Fund" for federal income tax purposes pursuant to Internal Revenue Code ("Code") Section 468B and the Regulations issued thereto.

qq.    The term **"Settlement Notice"** means the notice or notices required by the Notice Plan approved by the Court for providing notice of this Settlement to the Settlement Class as set forth in Paragraphs 25.a. to 25.e.

rr.    The term **"Settlement Payment"** means a settlement check sent by the Settlement Administrator to an Eligible Claimant.

ss.    The term **"Settlement Website"** means the Settlement Website to be established by the Settlement Administrator pursuant to Paragraph 25.c.

tt.    The term **"Taxes"** for purposes of the Qualified Settlement Fund, means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any jurisdiction, if any, (1) with respect to the income or earnings earned by or in respect of the Settlement Escrow Account, or (2) by way of withholding as required by applicable law on any distribution by the Settlement Administrator of any portion of the Settlement Escrow Account to the Settlement Class Members or other Persons entitled to such distributions pursuant to this Settlement Agreement.

uu.    The Term **"Tubing"** means PEX Tubing manufactured or sold by Bow for use in residential or commercial structures, with (or labeled by Bow as having) a 5306 product designation, including all Bow SuperPEX, during the time period from May 26, 2003 up to and including the date the Court enters the Final Approval Order. For the avoidance of doubt, "Tubing" includes stock and inventory of Tubing that is installed or first used after the date the Court enters the Final Approval Order but on or before the last day of the Claim Period. The term "Tubing" does not include non-PEX Tubing manufactured or sold by Bow for use in industrial applications, irrigation applications, radiant heating applications, or international applications.

B.    **CERTIFICATION OF THE SETTLEMENT CLASS**

2.    **Settlement Class Certification:** Pursuant to the procedure described herein, Plaintiffs will seek the Court's certification of the Settlement Class for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).

3.    **Appointment of Lead Class Counsel:** Plaintiffs will seek the Court's appointment of Lead Class Counsel to represent the Settlement Class.

4.    **Preliminary Approval:**

a.    Lead Class Counsel shall file in the Court a Motion for Preliminary Approval of Class Action Settlement (to which this Settlement Agreement shall be attached as an Exhibit) requesting that the Court certify the Settlement Class for settlement purposes only and enter the Preliminary Approval Order.

b.    The Motion for Preliminary Approval of Class Action Settlement shall seek to appoint Plaintiffs as representatives of the Settlement Class. Plaintiffs, who have executed this Settlement Agreement and agree to be bound by it, believe it is in the best interests of the Settlement Class.

c.    The Preliminary Approval Order shall:

i.    Find that the requirements for certification of the Settlement Class have been satisfied, appoint Plaintiffs as the representatives of the Settlement Class, appoint lead Class Counsel as counsel for the Settlement Class, and preliminarily approve the Settlement as being within the range of reasonableness such that the Settlement Notice should be sent to the members of the Settlement Class;

       ii.        Approve the Notice Plan and Settlement Notice and direct that it be given as set forth in Paragraphs 25.a. to 25.e. of this Settlement Agreement;

       iii.       Schedule the Final Approval Hearing not earlier than one hundred five (105) days following the Preliminary Approval Date;

       iv.       Appoint Angeion Group as the Settlement Administrator;

       v.        Find that the Settlement Escrow Account is to be a "Qualified Settlement Fund" as defined in Section 1.468B-1(c) of the Treasury Regulations;

       vi.       Provide that any objections by any Settlement Class Member to the Settlement Agreement shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection and Opt-Out Deadline specified in the Settlement Notice and Preliminary Approval Order, such Settlement Class Member follows the procedures set forth in this Settlement Agreement and approved by the Court;

       vii.       Establish dates by which the Parties shall file and serve all papers in support of the motion for final approval of the Settlement and/or in response to any valid and timely objections and in support of **Attorneys' Fee, Cost, and Service Award**;

       viii.       Provide that all Settlement Class Members will be bound by the Final Approval Order and the Final Judgment unless such Person timely submits to the Settlement Administrator a valid written Request for Exclusion in accordance with this Settlement Agreement and the Settlement Notice;

ix.     Provide that, pending the Final Approval Hearing and the Effective Date, all proceedings in the Litigation, other than proceedings necessary to carry out or enforce the terms and conditions of this Settlement Agreement, shall be stayed;

x.     Provide that, pending the Final Approval Hearing, Plaintiffs, or any of them, and all Settlement Class Members, are enjoined from commencing or prosecuting, either directly or indirectly, any action asserting any of the Released Claims against any of the Released Parties; and

xi.     Issue other related orders to effectuate the preliminary approval of the Settlement Agreement.

d.     Following the entry of the Preliminary Approval Order, the Notice Plan shall be effectuated in the manner directed and approved by the Court. The Parties agree that the methods of Settlement Notice described in this Settlement Agreement are valid and effective and that they provide reasonable and the best practicable notice to the Settlement Class.

e.     Upon entry of the Preliminary Approval Order, Plaintiffs, Class Counsel, Bow and Counsel for Bow agree to use reasonable and good faith efforts to effectuate the Court's final approval of this Settlement Agreement, including filing the necessary motion papers and scheduling any necessary hearings for a date and time that are convenient for the Court.

C.     **CONSIDERATION TO THE SETTLEMENT CLASS**

5.     **Creation of Settlement Fund:**

a.      **Payment Upon Effective Date:** Within ten (10) business days after the Effective Date, Bow will deposit or cause to be deposited into the Settlement Escrow Account the cash sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00).

b.      **Additional Payments:** During the Claim Period, Bow shall make additional payments into the Settlement Escrow Account up to the total of the Class Settlement Fund (less any amounts credited to Bow for reasonable fees and costs of notice and administration advanced prior to the creation of the Class Settlement Fund) sufficient to maintain a balance in the Settlement Escrow Account throughout the entire Claim Period of at least One Million Dollars ($1,000,000.00). The Settlement Administrator shall give Bow twenty-one (21) business days written notice (which notice shall also be given to Lead Class Counsel) of the need to make any such additional payment to maintain that balance in the Settlement Escrow Account.

i.      Interest earned on monies in the Settlement Escrow Account shall accrue to the benefit of the Settlement Class and shall be available to pay Eligible Claimants; shall be credited toward the balance Bow is required to maintain in the Settlement Escrow Account; and shall revert to Bow in the event the settlement fund is not exhausted following the close of the Claim Period, and after all timely Claims have been determined and paid as set forth herein.

ii.     Any and all Taxes on the income of the Settlement Escrow Account shall be timely paid out of the Settlement Escrow Account.

iiii.   The Settlement Escrow Account shall be treated as Qualified Settlement Fund from the earliest date possible, and the Parties agree to any "relation-back election" (as defined in Treas. Reg. § 468B-1(j)(2)) required to treat the Settlement Escrow Account as a Qualified Settlement Fund from the earliest date possible. The Settlement

Administrator shall timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter cause the appropriate filings to occur.

   iv. The Settlement Escrow Account shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it. In computing the Settlement Escrow Account's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Settlement Escrow Account, including, without limitation, state and local taxes, and legal, accounting and actuarial fees relating to the operation of the Settlement Escrow Account. All such computations of the Settlement's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treas. Reg. § 468B-2(b)(1)-(4).

   v. The Settlement Administrator shall be responsible for filing federal, state and local tax returns for the Settlement Escrow Account and paying from the Settlement Escrow Account any Taxes owed with respect to the Qualified Settlement Fund. In accordance with § 468B-2(1)(2) of the Treasury Regulations, the Settlement Administrator shall be responsible for filing all federal, state, and local information returns and ensuring compliance with reporting requirements with regards to any distributions from the Qualified Settlement Fund. The Settlement Administrator shall apply for an employer identification number for the Escrow Account pursuant to Internal Revenue Service Form SS-4, and in accordance with Treas. Reg. § 468B-2(k)(4). In no event shall Plaintiffs, Class Counsel, Counsel for Bow, or any of the Released Parties have any obligation, responsibility, or liability arising from or relating to the administration, maintenance, preservation, investment, use, allocation, adjustment, distribution, disbursement, or disposition of any funds in the Settlement Escrow Account.

vi.    For the purpose of § 468B of the Code, the "transferor" shall be Bow. Bow shall supply to the Settlement Administrator the statement required by Treas. Reg. § 468B-3(e) by February 15 of the calendar year following the calendar year in which a transfer is made to the Settlement Escrow Account under this Settlement.

vii.    The Settlement Administrator shall be empowered to take all such actions as it deems necessary to ensure that the Settlement Escrow Account is treated as a "qualified settlement fund" under § 468B of the Code. Further, the Settlement Administrator may petition the Court to amend, either in whole or in part, any administrative provision of this Settlement Agreement that causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

viii.    In accordance with Treas. Reg. § 468B-2(j), the taxable year of the Settlement Escrow Account shall be the calendar year, and the Settlement Escrow Account shall use an accrual method of accounting, within the meaning of § 446(c) of the Code.

6.    **Uncashed Settlement Payment Checks:** All checks issued by the Settlement Administrator to Eligible Claimants shall remain valid for one hundred eighty (180) days. Any check sent to an Eligible Claimant during the Claim Period that is not cashed within one hundred eighty (180) days shall be void, but a new check shall be reissued to the applicable Eligible Claimant upon request during the Claim Period. After one hundred eighty (180) days following the expiration of the Claim Period, any uncashed check shall be eligible for escheatment to the applicable state governmental body pursuant to state law without the need to wait for the conclusion of any state dormancy period. Any and all escheatment obligations are those of the Settlement Administrator and not the Parties. The Settlement Administrator may send check-

18

cashing reminders to Eligible Claimants who have not yet cashed their check and may call Eligible Claimants to remind them to cash their checks.

7. **No Other Payments:** Other than its contributions to the Class Settlement Fund as set forth above, Bow shall have no obligation to make any additional payment in connection with the Settlement, except as set forth in Paragraphs 15.b. and 17 below.

8. **End of Claim Period:** Following the close of the Claim Period, and after all timely Claims have been determined and paid as set forth herein, including any gross-up for all Eligible Class Members as set forth in Paragraphs 10.a., 10.b., and 10.c., any remaining amounts under the Class Settlement Fund, but not paid into the Settlement Escrow Account, shall remain with Bow, and any funds remaining in the Settlement Escrow Account, but not allocated to an Eligible Claimant (including as set forth in Section 6 above) will be returned to Bow, as all Eligible Claimants will have received their complete remedy under the Agreement.

9. **Bow's Dealings with Settlement Class Members:** If contacted during the Claim Period regarding this Settlement Agreement or a Claim by a member of the Settlement Class or a Claimant regarding this Settlement, then Bow will use reasonable efforts to refer that Person to the Settlement Administrator by providing to them the name of the Settlement Administrator, the domain name of the Settlement Website, and the established toll-free number regarding the Settlement.

10. **Settlement Remedies:** The Settlement shall provide the following remedies to Eligible Claimants from the Settlement Escrow Account:

a. **Past Property Damage Claims are comprised of Past Leak Claims and Past Re-Plumb Claims, defined as follows:**

(1).    **Past Leak Claims:** Past Leak Claims are based upon Qualifying Leaks in Covered Products that occurred between May 26, 2003 and the Effective Date. Such claims must be submitted to the Settlement Administrator within one hundred (100) days after the Effective Date, though the Settlement Administrator may extend the one hundred (100) day period an additional fifty (50) days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. Claimants can recover their reasonable Past Leak Claims (i.e., amounts reasonably incurred to address Qualifying Leaks). Eligible Claimants shall receive an initial payment of 70% of their Past Leak Claims, and at the end of the Claim Period, the Eligible Claimants shall receive a second *pro rata* payment which, depending on the claim rate, shall make the total payment up to 80% of their Past Leak Claims. For the avoidance of doubt, if the Settlement Administrator determines that the Claimant did not take reasonable steps to mitigate (i.e., limit or stop) the effect of the Qualifying Leak, then the Claimant's recovery shall be limited to an amount that would have been reasonable and appropriate if the Claimant had reasonably mitigated the Qualifying Leak.

(2).    **Past Re-Plumb Claims:** Past Re-Plumb Claims are based upon Multiple Qualifying Leaks in Covered Products that occurred between May 26, 2003 and the Effective Date. An Eligible Claimant who demonstrates that their residential structure experienced Multiple Qualifying Leaks in Covered Products between May 26, 2003 and the Effective Date has the option of requesting reimbursement for a re-plumb of relevant PEX Tubing (the "Replumb Calculation"). Such Claims must be submitted to the Settlement Administrator within one hundred (100) days after the Effective Date, though the Settlement Administrator may extend these periods an

additional fifty (50) days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a claim form due to circumstances beyond the Claimant's control shall constitute good cause. The Re-Plumb Calculation shall be based upon either (1) a calculated total re-plumb cost at a rate of $650.00 per plumbing fixture and $433.00 per plumbing half fixture (as defined in **Exhibit 4**) present in the residential structure (e.g., the Re-Plumb Calculation for a home with 13 fixtures would be $9,392.50); provided, however, that the Re-Plumb Calculation shall be limited to a maximum of $16,000.00 per structure, or (2) a bona fide paid invoice for the re-plumb (to be verified as bona fide and paid by the Settlement Administrator). A schedule of qualifying fixtures and half fixtures is attached hereto as **Exhibit 4** and shall be used by the Settlement Administrator in determining the amount of an Eligible Claimant's Re-Plumb Calculation under this Paragraph and sub-parts. Eligible Claimants shall receive an initial payment of 70% of the Re-Plumb Calculation, and at the end of the Claim Period, the Eligible Claimants shall receive a second *pro rata* payment which, depending on the claim rate, shall make the total payment up to 80% of their Re-Plumb Calculation. If an Eligible Claimant is compensated for a re-plumb claim, that Eligible Claimant and their residential or commercial structure are no longer eligible to make any Future Property Damage Claims.

       i.     Alternatively, Eligible Claimants who have experienced Multiple Qualifying Leaks in Covered Products, have the option to select a cash payment of eight thousand five hundred dollars ($8,500.00) in lieu of the Re-Plumb Calculation amount in exchange for the Eligible Claimant's agreement that the Eligible Claimant(s) and their structure are no longer eligible to make any Future Property Damage Claims.

ii.     Notwithstanding the requirement that Claimant's structure must have experienced Multiple Qualifying Leaks in Covered Products, a Claimant who has paid for a complete re-plumb of Covered Products in the Claimant's structure after at least one (1) Qualifying Leak in a Covered Product can seek consideration as an exception and request payment consistent with the terms and limitations of this Paragraph. The Settlement Administrator may grant the exception only upon a showing of good cause, as determined by the Settlement Administrator and approved by Bow and Class Counsel, that the Claimant's unique circumstances warranted such re-plumb to mitigate future leaks.

b.     **Future Property Damage Claims:**

(1).     **New Leak Claims:** Future Property Damage Claims for New Leaks are those that are based upon Qualifying Leaks in Covered Products that occur after the Effective Date and during the Claim Period. Such claims must be submitted to the Settlement Administrator within one hundred (100) days after the Qualifying Leak occurs, though the Settlement Administrator may extend this one hundred (100) day period up to an additional fifty (50) days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. Claimants can recover their reasonable Future Property Damage Claims (i.e., amounts reasonably incurred to address Qualifying Leaks). Eligible Claimants shall receive an initial payment of 70% of their Future Property Damage Claims, and at the end of the Claim Period, the Eligible Claimants shall receive a second *pro rata* payment which, depending on the claim rate, shall make the total payment up to 80% of their Future Property Damage Claims. For the avoidance of doubt, if the Settlement Administrator determines that the

22

Claimant did not take reasonable steps to mitigate (i.e., limit or stop) the effect of the Qualifying Leak, then the Claimant's recovery shall be limited to an amount that would have been reasonable and appropriate if the Claimant had reasonably mitigated the Qualifying Leak.

      (2).    **Re-Plumb Claims for Claimants with Multiple Qualifying Leaks:** An Eligible Claimant who demonstrates that their residential structure has experienced Multiple Qualifying Leaks in Covered Products has the option of requesting a payment relating to a complete re-plumb of relevant PEX Tubing. Such Claims must be submitted to the Settlement Administrator within one hundred (100) days after the Effective Date if the third Qualifying Leak occurred before the Effective Date, or otherwise must be submitted within one hundred (100) days after the third Qualifying Leak occurs, though the Settlement Administrator may extend these periods an additional fifty (50) days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a claim form due to circumstances beyond the Claimant's control shall constitute good cause. The "Re-Plumb Calculation" shall be based upon either (1) a calculated total re-plumb cost at a rate of $650.00 per plumbing fixture and $433.00 per plumbing half fixture (as defined in **Exhibit 4**) present in the residential structure (e.g., the Re-Plumb Calculation for a home with 13 fixtures would be $9,392.50); provided, however, that the Re-Plumb Calculation shall be limited to a maximum of $16,000.00 per structure, or (2) a bona fide bid for the re-plumb (to be verified as bona fide by the Settlement Administrator). A schedule of qualifying fixtures and half fixtures is attached hereto as **Exhibit 4** and shall be used by the Settlement Administrator in determining the amount of an Eligible Claimant's Re-Plumb Calculation under this Paragraph and sub-parts. Eligible Claimants shall receive an initial payment of 70% of the Re-Plumb Calculation, and at the end of the Claim

Period, the Eligible Claimants shall receive a second *pro rata* payment which, depending on the claim rate, shall make the total payment up to 80% of their Re-Plumb Calculation. If an Eligible Claimant is compensated for a re-plumb claim, that Eligible Claimant and their residential or commercial structure are no longer eligible to make any Future Property Damage Claims. To the extent an Eligible Claimant's residential or commercial structure experienced Multiple Qualifying Leaks in Covered Products and the Eligible Claimant paid for a complete re-plumb of Covered Products in the Eligible Claimant's structure before the Effective Date, the Eligible Claimant may request payment consistent with the terms and limitations of this Paragraph.

       i.     Eligible Claimants who have experienced Multiple Qualifying Leaks in Covered Products, each one have the option to select a cash payment of eight thousand five hundred dollars ($8,500.00) in lieu of a re-plumb remedy in exchange for the Eligible Claimant's agreement that the Eligible Claimant(s) and their structure are no longer eligible to make any Future Property Damage Claims.

       ii.    Notwithstanding the requirement that Claimant's structure must have experienced Multiple Qualifying Leaks in Covered Products, a Claimant who has paid for a complete re-plumb of Covered Products in the Claimant's structure after at least one (1) Qualifying Leak can seek consideration as an exception and request payment consistent with the terms and limitations of this Paragraph. The Settlement Administrator may grant the exception only upon a showing of good cause, as determined by the Settlement Administrator and approved by Bow and Class Counsel, that the Claimant's unique circumstances warranted such re-plumb to mitigate future leaks.

    11.   **Invalid Claims:** If information provided by a Claimant to the Settlement Administrator when submitting a Claim Form establishes (as determined by the Settlement

Administrator) that the Claim is not eligible for a remedy under the Settlement Agreement, then the Settlement Administrator shall deny the Claim, though the Settlement Administrator shall explain the appeal mechanism to the Claimant. A copy of the form denial of claim letter to be used by the Settlement Administrator is attached here to as **Exhibit 5.**

12.    **Allocation for Multiple Claimants:** There shall be no double recoveries for the same Reasonably Proven Property Damage. In the event that there are multiple Eligible Claimants who file a Claim Form relating to the same Qualifying Leak(s), the Settlement Administrator will determine the proportionate share of recovery based on the total amount allowed for such Claim based upon what each Eligible Claimant documented they paid out-of-pocket and for which they were not reimbursed. Once a payment for a particular Qualifying Leak has been made, no further recoveries for that Qualifying Leak will be permitted. The Settlement Administrator will hold all payments on all Qualifying Leaks until thirty (30) days after the deadline (including any applicable grace periods) to file a Claim based on the date of such Qualifying Leak to ensure that no other timely Claim for that Qualifying Leak has been received.

13.    **Claim Review:** If the Settlement Administrator suspects fraud or misleading conduct with respect to any Claim, the Settlement Administrator will immediately bring the Claim to the attention of Lead Class Counsel and Counsel for Bow, who shall meet and confer with the Settlement Administrator concerning the Claim, and who reserve the right to bring the Claim to the attention of the Court.

14.    **Proof of Qualifying Leak(s):** Proof of Qualifying Leak(s) shall be made by Claimants through their submission to the Settlement Administrator of any reasonable proof, including, by way of examples only, the failed product itself, plumber or contractor records, photographs, videos, invoices, receipts, credit card statements, inspection records, insurance

records, or any other document or information that supports the Claimant's position: (a) that the leak is a Qualifying Leak in a Covered Product; (b) the best-known or estimated date of the installation and first in-service date (if different); and (c) the date(s) of the Qualifying Leak(s). In addition to the aforementioned requirements for establishing a valid Claim, for any Future Property Damage Claim, the Claimant shall be required by the Claim Form to submit photographs of the failed component or submit a reason why photographs are not available for submission, and any valid (as determined by the Settlement Administrator) reason the photographs are not available for submission (*e.g.*, because the leak occurred under slab and cannot reasonably be accessed for photographs) shall be acceptable.

15.    **Review of Claims:**

a.    If the Settlement Administrator has a reasonable belief that a submitted Claim Form does not involve a Qualifying Leak(s) or is otherwise improper, disqualified, or fraudulent, then the Settlement Administrator shall conduct a further review of that claim. Additionally, if Bow or Lead Class Counsel have a reasonable belief that a submitted Claim Form does not involve a Qualifying Leak(s) or is otherwise improper, disqualified, or fraudulent, then they may, with prior written notification to all Parties, direct the Settlement Administrator to conduct a further review of that claim.

b.    If Bow and/or Lead Class Counsel, after its/their own good faith review, believes that a particular Claim does not involve a Qualifying Leak(s), then the Settlement Administrator shall review the claim to confirm there exists a reasonable basis to challenge the Claim, and upon such confirmation, the Settlement Administrator shall reject the Claim using the form letter attached hereto as **Exhibit 5**, which shall provide an appeal right to the Claimant. Costs and expenses associated with the challenge shall be deducted from the Settlement Fund, unless the

challenge is ultimately denied on appeal, in which case the challenging party will be responsible for its own costs incurred in asserting the challenge.

16. **Right of Appeal:**

a. If a Claimant wishes to appeal the Settlement Administrator's rejection of a Claim on the basis of whether the Claim presents a Qualifying Leak(s), then the Claim will be submitted to an Independent Engineering Consultant who shall be agreed upon by the Parties, presented to the Court in Plaintiffs' Motion for Final Approval (the **"Independent Engineering Consultant"**), and appointed by the Court in its Final Approval Order. The Claimant, the Settlement Administrator, Bow, and Lead Class Counsel will each have the opportunity to present five-page statements and any supporting documentation or physical evidence to the Independent Engineering Consultant setting forth their position about whether the Claim involves a Qualifying Leak(s) and should therefore be deemed eligible or ineligible for compensation under the terms of the Settlement Agreement. The party initiating the challenge shall have the burden of establishing that a leak was not a Qualifying Leak. The decision of the Independent Engineering Consultant shall be final. If at any time the Independent Engineering Consultant is unable to continue in his or her role, then the Parties shall meet and confer to determine a mutually agreeable replacement.

b. If a Claimant wishes to appeal to the Settlement Administrator the Settlement Administrator's rejection of a Claim on any grounds other than whether the Claim presents a Qualifying Leak, the Claimant may do so, and may also present further evidence to the Settlement Administrator, but the decision of the Settlement Administrator after reviewing the appeal will be final.

17.     **Payment of Independent Engineering Consultant:** Bow shall pay all fees and costs of the Independent Engineering Consultant outside of the Class Settlement Fund for all challenges initiated by Bow under Paragraphs 15.b. and 16. Fees and costs for other challenges shall be paid from the Class Settlement Fund. If Bow contends that Lead Class Counsel's agreement requested under Paragraph 15.b. was unreasonably withheld, then a Special Master, to be agreed upon by the Parties, presented to the Court in Plaintiffs' Motion for Final Approval, and appointed by the Court in its Final Approval Order (the **"Special Master"**), shall decide whether the Claim should be submitted to the Independent Engineering Consultant. Costs of the Special Master's services invoked under this provision shall be borne by the party whose position is rejected by the Special Master. If at any time the Special Master is unable to continue in his or her role, then the Parties shall meet and confer to determine a mutually agreeable replacement.

18.     **Existing Warranties:** The exclusive remedy for Plaintiffs and Settlement Class Members for Past Property Damage Claims and Future Property Damage Claims with respect to Qualifying Leaks through the duration of the Claim Period shall be a Claim from the Net Settlement Fund. Any claim by a Settlement Class Member under Bow's Limited Warranty after the Claim Period must be valid, timely and in accordance with the requirements of applicable law, and must comply with the express provisions of the Limited Warranty in all respects. Plaintiffs and Settlement Class Members shall be informed in the Settlement Notice and thereby acknowledge that Bow contends that its Limited Warranty does not extend coverage to design defects, imposes conditions precedent such as notice of a leak and submission of the allegedly failed product for inspection, and limits recovery. Any Limited Warranty that has expired or expires during the Claim Period remains expired and provides no further benefit. For the avoidance of doubt, nothing in this Settlement extends or tolls the duration of any Limited Warranty for any period of time before,

during, or after the Claim Period. Any challenge to any adverse determination by Bow of a claim to Bow submitted under the Limited Warranty for a leak that occurs after the close of the Claim Period shall be submitted to the Special Master, who shall retain exclusive jurisdiction over such matters. The Special Master shall have the authority to decide whether the Limited Warranty is applicable to the Settlement Class Member's warranty claim, whether the Settlement Class Member satisfied all conditions in the Limited Warranty, and, if so, whether Bow breached the Limited Warranty, and, if so, the amount of any remedy to the Settlement Class Member in accordance with the terms of the Limited Warranty, but not to exceed any relief provided in the Limited Warranty. Conclusions of law or fact reached by the Special Master may be reviewed by the Court upon request of the Claimant or Bow. Any conclusions of law reached by the Special Master shall be deemed final and binding. For these purposes, the non-prevailing party shall pay the cost of the Special Master outside of and in addition to the Class Settlement Fund.

**D.    SETTLEMENT ADMINISTRATOR AND NOTICE PLAN**

19.    **Appointment of Settlement Administrator:** The Settlement Administrator will be appointed by the Court in the Preliminary Approval Order. The Settlement Administrator shall be responsible for administering the Claim process and taking other actions set forth in this Agreement. The reasonable fees and expenses of the Settlement Administrator shall be paid from the Class Settlement Fund. The Settlement Administrator shall provide Lead Class Counsel and Counsel for Bow with a Declaration that will be filed with Plaintiffs' Motion for Preliminary Approval and that shall set forth a detailed estimate and a "not to exceed" price for performing all tasks and duties regarding this Settlement. The Settlement Administrator's subsequent invoices through the Final Approval Hearing shall be approved by the Court in its Final Approval Order.

20.    **Claim Process:** Any Settlement Class Member who wishes to submit a Claim must timely complete, sign (by hard copy or electronic signature), and submit a Claim Form and provide the Settlement Administrator with all requested information. All Claim Forms shall be submitted to the Settlement Administrator under oath. A Claim Form that does not meet each of these requirements is deficient and shall be responded to by the Settlement Administrator using the form Notice of Deficiency Letter attached hereto as **Exhibit 6**. The Claimant shall have at least one opportunity to cure any deficiency(ies) with their Claim Form. The Settlement Administrator shall receive, process, and make determinations regarding all Claim Forms as promptly as possible and subject to the provisions of Paragraph 12 above. Claim Forms shall be processed in the order that they are received to the extent practicable. Lead Class Counsel and Counsel for Bow shall have the right to review the Claim files of the Settlement Administrator at any time. The Settlement Administrator shall have the right to confer with Lead Class Counsel and Counsel for Bow with respect to any Claim.

21.    **No Liability for Claims Administered Pursuant to Agreement:** No Person shall have any claim against Bow, Counsel for Bow, Plaintiffs, Class Counsel, the Released Parties, and/or the Settlement Administrator based on any determinations, distributions, or awards made with respect to any Claim. This provision does not affect or limit in any way the right of review of any disputed Claim as provided in this Settlement Agreement. The applicable dispute procedures set forth in Paragraphs 15-20 shall be the sole and exclusive means of resolving disputes based on any determinations, distributions, or awards made with respect to any Claim. For the avoidance of doubt, in no event shall Plaintiffs, Class Counsel, Bow, or Counsel for Bow, have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator, the Independent Engineering Consultant, the Special Master, or their agents.

22.    **Settlement Administrator Duties:** The Settlement Administrator shall:

a.    Use personal information acquired as the result of this Agreement solely for purposes of evaluating and paying Claims under this Agreement.

b.    Assign a manager to oversee the protection and appropriate management of personal information and review its internal system to manage the protection of personal information to ensure consistent performance and constant improvement.

c.    Take security countermeasures to prevent unauthorized access to personal information and the loss, destruction, falsification, and leakage of personal information.

d.    If outsourcing the handling of personal information, determine that outsourced companies take steps to ensure appropriate management of the information to prevent leaks of personal or confidential information, and prohibit reuse of information for other purposes.

e.    Respond immediately with appropriate measures when necessary to disclose, correct, stop using, or eliminate contents of information.

f.    Within one hundred and twenty (120) days after the completion of the Claims Period and any check-cashing period following the Claims Period, and in compliance with appliable retention law, destroy all personal information obtained in connection with this Settlement in a manner most likely to guarantee that such information not be obtained by unauthorized Persons.

23.    **Settlement Administrator Accounting:** The Settlement Administrator shall maintain a complete and accurate accounting of all receipts, expenses (including settlement

administration costs), and payments made pursuant to this Agreement. The accounting shall be made available on reasonable notice to Lead Class Counsel and Counsel for Bow.

24.    **Removal of Settlement Administrator:** If the Settlement Administrator fails to perform adequately, the Parties may agree to remove the Settlement Administrator by petitioning the Court to do so.

25.    **Notice Plan:** The Notice Plan utilized to provide notice of this Settlement to the Settlement Class shall be approved in the Court's Preliminary Approval Order. The cost of the Notice Plan shall be paid out of the Class Settlement Fund. The Notice Plan shall be effectuated by the Settlement Administrator and shall include, at a minimum:

a.    **Notice of Settlement:** The Notice of Settlement substantially in the form attached hereto as **Exhibit 2** and a Claim Form substantially in the form attached hereto as **Exhibit 1** shall be issued by mail, first class postage prepaid, to the residential, commercial, or other structures known or believed to be included in the Settlement Class. Bow, Class Counsel, and the Settlement Administrator will discuss the appropriate scope of any remaining notice by mail. The Notice of Settlement shall also be sent by the Settlement Administrator to all homeowners insurance companies that the Settlement Administrator can identify. The Notice of Settlement will be accompanied by a cover letter substantially in the form attached hereto as **Exhibit 7.**

b.    **Publication:** The Settlement Administrator shall design and implement a plan for issuance of notification of the Settlement to members of the Settlement Class through print and digital/internet publication designed to target the communities where the residential, commercial, or other structures in the Settlement Class are located. The short form publication notice will be substantially in the form attached hereto as **Exhibit 8.**

c.     **Settlement Website:** Upon filing the Motion for Preliminary Approval, and with Bow's express approval after an opportunity to review the Settlement Website, the Settlement Administrator shall establish and make live the Settlement Website, which shall be an Internet website concerning the Settlement utilizing the domain name _____. The Settlement Website shall be maintained by the Settlement Administrator until one hundred eighty (180) days after the conclusion of the Claim Period and the time period for cashing all Settlement Payment checks has expired. The domain name of the Settlement Website shall be included in all Settlement Notices. The Settlement Website shall provide, at a minimum: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Lead Class Counsel's Motion for Approval of Attorneys' Fees, Costs, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically using an electronic signature service, such as DocuSign, through the Settlement Website.

d.     **Toll-Free Number:** The Settlement Administrator shall establish a toll-free telephone number and facility that will provide members of the Settlement Class with information and direct them to the Settlement Website upon filing the Motion for Preliminary Approval. The toll-free telephone number shall be included in all notices described in Paragraphs 25.a. to 25.d. The telephone facility shall be capable of: (i) receiving requests for Claims Forms (**Exhibit 1**), the Notice of Settlement (**Exhibit 2**), this Settlement Agreement, or any other materials described in Paragraphs 25.a. to 25.c., and (ii) providing general information concerning the deadlines for filing

a Claim Form, opting out of or objecting to the Settlement, and the dates and locations of relevant Court proceedings, including the Final Approval Hearing. The toll-free number(s) shall be maintained by the Settlement Administrator during the time period that the Settlement Website is active. Any scripts, question and answer forms, or other templates for use by the telephone facility personnel in communicating with members of the Settlement Class must be submitted to Bow for review and express approval before being used.

           e.      **CAFA Notice:** Pursuant to 28 U.S.C. § 1715, Bow, through the Settlement Administrator, shall mail all required notices in accordance with its obligations thereunder.

26.      **Proof of Compliance with Notice Plan:** The Settlement Administrator shall provide Lead Class Counsel and Counsel for Bow with a declaration detailing all of its efforts regarding the Notice Plan and of its timely completion of the Notice Plan and its outreach to the members of the Settlement Class, to be filed as an exhibit to Plaintiffs' Motion for Final Approval of Class Action Settlement.

27.      **Requests for Notice and Claim Forms:** The Settlement Administrator shall issue through mail and/or email the Notice of Settlement (**Exhibit 2**) and Claim Form (**Exhibit 1**) to any Person requesting them at any time during the Claim Period. The Settlement Administrator shall timely provide all Claim Forms to Bow and Lead Class Counsel so that they can assess and challenge the Claim Forms if desire. Any obligations of Bow and/or Lead Class Counsel related to any challenge of Claim Forms pursuant to paragraphs 15 (Review of Claims) and/or 16 (Right of Appeal) above will not commence until the Settlement Administrator has provided the Claim Form subject to the challenge to Bow and Lead Class Counsel.

28.    **Settlement Administrator Database:** The Settlement Administrator shall maintain and preserve records of all of its activities, including logs of all telephone calls, emails, faxes, mailings, visits to the Settlement Website, and all other contacts with actual and potential members of the Settlement Class, in a computerized database with easily retrievable records. The database shall also include a running tally of the number of and types of materials issued by mail or disseminated by the Settlement Administrator. The Settlement Administrator shall provide the Lead Class Counsel and Counsel for Bow with quarterly written reports, or more frequently upon Bow's request, throughout the Claim Period summarizing all statistics and actions taken by the Settlement Administrator in connection with administering the Settlement.

E.    **OPT-OUTS AND OBJECTIONS**

29.    **Requests for Exclusion:**

a.    Settlement Class Members may submit a Request for Exclusion form (*i.e.,* "opt-out" of) the Settlement pursuant to Federal Rule of Civil Procedure 23(c)(2)(B)(v). A member of the Settlement Class who submits a Request for Exclusion cannot object to the Settlement and is not eligible to receive any Settlement Payment.

b.    To validly request exclusion from the Settlement Class, a Person must (1) submit proof that their structure contains or contained a Covered Product (photographs, contemporaneous installation records, *etc.*), to demonstrate that the Person requesting exclusion is a member of the Settlement Class, and (2) submit a written request to opt out to the Settlement Administrator, so that it is postmarked by the Objection and Opt-Out Deadline stating that "I wish to exclude myself from the Settlement Class in the Bow Litigation Class Action Settlement" (or substantially similar clear and unambiguous language). That written request shall contain the

Settlement Class Member's printed name, address, telephone number, email address, and date of birth. The Request for Exclusion must contain the actual written signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class.

        c.     Requests for Exclusion cannot be made on a group or class basis, except that joint owners of the same residence or structure may opt out by using the same form, so long as it is individually signed by each joint owner. If one or more persons have a claim for the same property damage within the same property, all such persons asserting such claim must properly and timely submit a Request for Exclusion; otherwise, all such persons shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending, or subsequently initiates litigation, against any Released Party relating to the Released Claims.

        d.     Those Persons falling within the definition of the Settlement Class as "Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons" need not file a separate Request for Exclusion for each structure for which they meet this definition so long as they identify each structure for which they are opting out in their Request for Exclusion; provided, however, that any such Persons cannot opt out for purposes of some structures, but remain in the Settlement Class for others.

        e.     The Settlement Administrator will provide copies of all Requests for Exclusion to counsel for the Parties on a weekly basis by email. The Settlement Administrator will also provide copies of all Requests for Exclusion to counsel for any Party upon request.

36

f.      Any Settlement Class Member who does not submit a valid and timely written Request for Exclusion as provided by Paragraphs 29.a. to 29.d. shall be bound by all subsequent proceedings, orders, and judgments in this Litigation, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement Class Member has litigation pending, or subsequently initiates litigation, against any Released Party relating to the Released Claims.

g.      A member of the Settlement Class who opts out can, on or before the Objection and Opt-Out Deadline, withdraw their Request for Exclusion by submitting a written request to the Settlement Administrator stating their desire to revoke their Request for Exclusion, along with their written signature.

h.      Any statement or submissions purporting or appearing to be both an objection and opt-out shall be treated as a Request for Exclusion.

i.      Not later than four (4) days after the Objection and Opt-Out Deadline, the Settlement Administrator shall provide to Lead Class Counsel and Bow a complete list of opt-outs together with copies of the opt-out requests and any other related information. In the sole discretion of Bow, it may void the terms of the Settlement Agreement or renegotiate the quantum of the Class Settlement Fund. Bow must advise Class Counsel and the Court, in writing, of this election within ten (10) business days of receiving the list of Requests for Exclusion from the Settlement Administrator following the Objection and Opt-Out Deadline. If Bow chooses to void the Settlement Agreement in this manner, then the Settlement Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ex ante, as if they had not entered into the Settlement Agreement.

30.    **Objections:** Any Settlement Class Member who does not submit a written Request for Exclusion may present a written objection to the Settlement explaining why he or she believes that the Settlement Agreement should not be approved by the Court as fair, reasonable, and adequate. A Settlement Class Member who wishes to submit an objection must deliver to the Settlement Administrator, so that it is postmarked by the Objection and Opt-Out Deadline, a detailed written statement of the objection(s) and the aspect(s) of the Settlement being challenged, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority that the Settlement Class Member wishes to bring to the Court's attention.

a.    That written statement shall contain (a) the Settlement Class Member's printed name, address, telephone number, and date of birth; (b) evidence showing that the objector is a Settlement Class Member, including the address of the structure that contains or contained a Covered Product and proof that the structure contains or contained a Covered Product (photographs, contemporaneous installation records, *etc.*); (c) any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection; (d) the actual written signature of the Settlement Class Member making the objection; and (e) a statement indicating whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Final Approval Hearing. If a Settlement Class Member or counsel for the Settlement Class Member who submits an objection to this Settlement has objected to a class action settlement on any prior occasion, the objection shall also disclose all cases in which they have filed or otherwise submitted an objection by caption, court and case number, and for each case, the disposition of the objection.

b.    A Settlement Class Member may object on his or her own behalf or through an attorney; however, even if represented, the Settlement Class Member must individually sign the

objection and all attorneys who are involved in any way asserting objections on behalf of the Settlement Class Member must be listed on the objection papers. Counsel for the Parties may take the sworn deposition (which may be recorded by a stenographer and/or by video) of any objector prior to the Final Approval Hearing either virtually or in a location convenient for the objector. Such depositions may not exceed eight (8) hours in length absent permission from the Court. Transcripts and/or videos of any deposition taken pursuant to this paragraph may be admissible as evidence and/or for use by the Parties at the Final Approval Hearing.

c.     The Settlement Administrator shall provide counsel for the Parties with copies of any objections received by it on a weekly basis by email. The Settlement Administrator will also provide copies of all objections to counsel for any Party upon request.

d.     Any objector who files and serves a timely written objection as described above may appear at the Final Approval Hearing, either in person at their own expense or through personal counsel hired at the objector's expense, to object to the fairness, reasonableness, or adequacy of any aspect of the Settlement on the basis set forth in his or her objection, provided that they stated their intention to do so in the written statement described in Paragraph 30(a). For the avoidance of doubt, objectors and/or their counsel shall not have a right to appear at the Final Approval Hearing unless they stated their intention to do so in the written statement described in Paragraph 30(a).

e.     Any Settlement Class Member who fails to comply with the provisions of Paragraphs 30.a.-d. shall waive and forfeit any and all rights that he, she, or it may have to appear separately and/or to object to the Settlement, and shall be bound by all terms of this Settlement Agreement and by all proceedings, orders and judgments in the Litigation, including but not limited to, the Release, the Final Approval Order, and the Final Judgment, even if such Settlement

39

Class Member has litigation pending, or subsequently initiates litigation, against any Released Party relating to the Released Claims.

31.     The exclusive means for any challenge to this Settlement shall be through the provisions of Paragraphs 30.a.-d. Without limiting the foregoing, any challenge to the Settlement, Final Approval Order, the Final Judgment, or any Attorneys' Fee, Cost, and Service Award Order shall be pursuant to appeal under the Federal Rules of Appellate Procedure, and not through a collateral attack.

32.     An objector shall be entitled to all of the benefits of the Settlement if this Settlement Agreement and the terms contained herein are approved, as long as the objector complies with all requirements of this Settlement Agreement applicable to Settlement Class Members, including the timely and complete submission of a Claim Form and other requirements herein. A Settlement Class Member who objects can, on or before the Objection and Opt-Out Deadline, withdraw their objection by submitting a written request to the Settlement Administrator stating their desire to withdraw their objection along with their signature.

F.     **RELEASE OF CLAIMS**

34.     **Release:** Upon the Effective Date, all Settlement Class Members, including but not limited to any Person who receives any payment from the Net Settlement Fund, on behalf of themselves and their agents, heirs, executors and administrators, successors, assigns, insurers, attorneys, representatives, and any and all Persons who seek to claim through or in the name or right of any of them (the **"Releasing Parties"**), release and forever discharge (as by an instrument under seal without further act by any Person, and upon good and sufficient consideration), Bow, its administrators, insurers, reinsurers, agents, firms, parent companies/corporations, sister

companies/corporations, subsidiaries and affiliates, and any sales agents and distributors, wholesalers, retailers, plumbers, homebuilders, developers, contractors, engineers, architects, and any other product or service provider or any other party in the chain of distribution who distributed, specified, recommended, sold, and/or installed the Tubing, and all of the foregoing Persons' respective affiliates, parents, predecessors, successors, assigns and each of their present and former officers, directors, shareholders, employees, agents, attorneys, and representatives (collectively, the **"Released Parties"**), from each and every claim of liability, on any legal or equitable ground whatsoever, including relief under federal law or the laws of any state, regarding or related to Bow's Tubing, including without limitation, their design, manufacture, purchase, use, marketing, promotions, sale, or certification, and including without limitation, all past, present, or future claims, damages, or liability on any legal or equitable ground whatsoever, and regardless of whether such claims might have been or might be brought directly, or through subrogation or assignment or otherwise, on account of or related to the Tubing, which were alleged or could have been alleged in the Complaints filed in the Litigation. The Release is as a result of membership as a Settlement Class Member, status as Releasing Parties, the Court's approval process herein, and the occurrence of the Effective Date, and is not conditional on receipt of payment by any particular member of the Settlement Class or Releasing Party. Without in any way limiting its scope, and, except to the extent otherwise specified in the Settlement Agreement, the Release covers by example and without limitation, any and all claims for reasonable attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by any attorneys, Class Counsel, Plaintiffs, Settlement Class Members, or any Releasing Party who claim to have assisted in conferring the benefits under this Settlement upon the Settlement Class. This Settlement Agreement and the Release provided for herein shall not and are

not intended to release the claims of the Releasing Parties against the suppliers of any equipment, raw materials, components, or ingredients used in the manufacture of the Tubing, which the Releasing Parties hereby fully and forever assign, transfer, and convey to Bow.

35.    **Exclusions from Release:** All personal physical injury claims are expressly excluded from the Release; for the avoidance of doubt, however, claims for emotional distress and/or mental anguish are subject to the Release in Paragraph 34 and not part of this personal injury exclusion. In addition, subject to the terms of Paragraph 34, the Parties further agree that certain limited claims, as specified below, which a Releasing Party has brought or may in the future bring against an installer, plumber, homebuilder, contractor, or other product or service provider, or any other party in the chain of distribution who purchased, specified, recommended, sold, and/or installed the Tubing, related solely and exclusively to the alleged faulty installation of the Tubing, are expressly not released as to such Persons. This limited exception shall include only claims alleging that a party or parties other than Bow are wholly responsible for a leak of the Tubing, including, without limitation, as a result of (1) a penetration of the Tubing from a foreign object such as a nail or other physical abuse; (2) improper attachment of the Tubing to plumbing components or appliances; (3) improper stress on the Tubing due to improper installation; (4) leaks due to an improperly set or malfunctioning pressure-reducing valve not manufactured or sold by Bow; (5) leaks due to age of fixture sealant components supplied or provided by a plumber; or (6) any violation of Bow's installation guidelines and/or installation issue unrelated to the design, manufacture, performance, or selection of the Tubing. However, if a court finds, via dispositive motion or otherwise, that Bow is at least partially responsible, then this limited exception shall not apply and the claim is released under Paragraph 34. Nothing in this Paragraph shall permit any Releasing Party to bring any other claims released herein, including without limitation, claims for

improper, insufficient, or negligent advice, recommendation, solicitation, purchase, selection, or sale of the Tubing, and in no event shall any claim whose prosecution is permitted by this Paragraph allege, purport to allege, or depend on any wrongful act, error or omission, loss or liability, whether strict, or due to fault or otherwise, by Bow. The Releasing Parties and Bow do not intend to create and do not believe that the reservation provided in this Paragraph creates any basis for a claim of indemnification, contribution, or any other claim, however denominated, by a nonparty against the Released Parties, with the exception that, as described in Paragraph 34, Persons who opted out of the Settlement do not release their ability to assert indemnification, contribution, and any other claim however denominated against Released Parties. This provision is intended solely to preserve a Releasing Party's ability to seek relief against the non-released individuals or entities for liability unrelated to Bow as expressly specified in this Paragraph. In addition, the Releasing Parties agree that in any action brought by a Releasing Party alleging that a party or parties other than Bow are wholly responsible for a leak of the Tubing, including, but not limited to, based on a leak that is not a Qualifying Leak, should any such third party sued by a Releasing Party file a claim or cause of action against any Released Party for contribution, indemnification, or any other claim, however denominated, arising out of or related to the Tubing, the Releasing Parties shall hold Bow and the Released Parties harmless, agree to a judgment in Bow's and the Released Parties' favor dismissing all claims asserted by the Releasing Party or anyone claiming by, through, or under the Releasing Party, and to the extent that the claims against Bow or the Released Parties are not released, then reduce or remit any judgment against such third party by the percentage, amount, or share necessary under applicable law to fully discharge and relieve Bow and the Released Parties of liability to such third party for claims for contribution, indemnification, or any other claim, however denominated, including attorneys' fees and costs

such Person may seek against Bow and the Released Parties. If a Releasing Party files a claim or cause of action against any third party alleging that a party or parties other than Bow are wholly responsible for a leak of the Tubing, including, but not limited to, based on a leak that is not a Qualifying Leak, the Releasing Party must not include any claim or allegation for design defects, manufacturing defects, marketing defects, or any other claim that is (1) a "products liability action," as contemplated by Section 6-5-521 of the Alabama Code, and/or (2) a products liability action or claim as contemplated by any other state's laws or codes. The Releasing Party also must include the following language in the complaint, petition, or other document asserting the claim: "This is not a 'products liability action' as defined in Section 6-5-521 of the Alabama Code. The plaintiff does not allege design, manufacturing, or marketing defects in the plumbing system or any of its component parts. The plaintiff expressly waives any products liability action it may have associated with Bow's Tubing. The plaintiff's claims are not product-based, but instead are based on services provided by the defendants. The plaintiff solely seeks damages resulting from the negligent installation of the plumbing system into the home." In any event, however, the Releasing Parties' obligation is limited to releasing, reducing, or remitting in an amount no more than the amount of the judgment against Bow or the Released Parties. If any third party sued by a Releasing Party obtains a judgment against Bow or any Released Party for contribution, indemnification, or any other claim, however denominated, the Releasing Party agrees that the Releasing Party shall reduce or remit its judgment against such third party by the amount of such third party's judgment against Bow and the Released Party not to exceed the amount of that portion of the judgment for which such third party obtains contribution, indemnification, or other relief, however denominated, so as to fully satisfy such third party's judgment against Bow and the Released Party including attorneys' fees and costs such third party may seek against Bow and the Released Party. In any

settlement between any of the Releasing Parties and any Person arising out of or related to Bow's Tubing, the Releasing Parties shall be deemed to have obtained a release in favor of all Released Parties.

36.    **Good Faith Settlement:** The Releasing Parties agree that the provisions of this Agreement and any claim thereunder constitute a good faith settlement. Plaintiffs, Class Counsel, and the Releasing Parties agree that they will not oppose a motion by Bow in a subsequent action contending this is a good faith settlement.

37.    **Assumption of Risk:** Each of the Releasing Parties hereby does, and shall be deemed to, assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may not exist or may be discovered after this Agreement becomes effective. Each of the Releasing Parties agrees that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing Release, which shall remain in full force and effect.

39.    **No Assignment of Claims:** Plaintiffs represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under the Settlement Agreement. Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Litigation, including without limitation any claim for benefits, proceeds, or value under the Litigation, and that Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Litigation, or in any benefits, proceeds, or values under the Litigation.

40.    **Dismissal with Prejudice:** Upon the Effective Date, the Released Claims of the Settlement Class Members and Releasing Parties will be dismissed with prejudice.

G.    ATTORNEYS' FEES, COSTS AND SERVICE AWWARDS

41.    **Payment of Attorneys' Fees and Costs:** Only after agreeing to the material terms set forth in this Settlement Agreement and the structure of relief for the Settlement Class, the Parties negotiated the maximum amount of Attorneys' Fees, Cost, and Service Award that Class Counsel and Plaintiffs would seek, to be paid separately by Bow, and subject to the approval of the Court.

a.    Within the time period established by the Court, and no later than thirty (30) days prior to the Objection and Opt Out Deadline, Class Counsel will file a Motion for Approval of Attorneys' Fees, Costs and Service Awards, which shall be included on the Settlement Website. The Attorneys' Fees, Costs and Service Awards, shall be paid separately from, and in addition to, the Class Settlement Fund.

b.    Class Counsel in the Litigation shall apply for an award of attorneys' fees and reimbursement of costs not to exceed Three Million Nine Hundred Sixty Thousand Dollars ($3,960,000.00). The Parties agree that Bow shall not pay, or be obligated to pay, any amounts in excess of those stated in this Paragraph for attorneys' fees and costs. Class Counsel shall provide W-9 Forms prior to such payment.

c.    Plaintiffs certify and agree that they had no expectation of a service award when agreeing to this Settlement, and that the decision of whether or not to award a service award will be left to the discretion of the Court. With that understanding, Bow agrees that it will not oppose a request for a service award of up to $10,000.00 for Plaintiff Roselyn Braswell and up to $5,000.00 for Plaintiffs Gregory and Jerri Johnson combined (which represents a per-household limitation) in recognition of their time, costs, and effort in the Litigation. The Parties agree that

Bow shall not pay, or be obligated to pay, any amounts in excess of those stated in this Paragraph for service awards. Plaintiffs shall provide W-9 Forms prior to such payment.

d.      Any Attorneys' Fee, Cost and Service Award shall be set forth in an order separate from the Final Approval Order and the Final Judgment so that any appeal of the Attorneys' Fee, Cost and Service Award shall not constitute an appeal of the Final Approval Order or the Final Judgment. Any order or proceedings relating solely to the application for an Attorneys' Fee, Cost, and Service Award, or any appeal solely from any Attorneys' Fee, Cost, and Service Award, or reversal or modification of any such Attorneys' Fee, Cost, and Service Award, will not operate to terminate or cancel this Settlement Agreement, or affect or delay the Effective Date.

e.      The Attorneys' Fee, Cost and Service Awards approved by the Court shall be paid within ten (10) business days after the Effective Date and shall be paid to Lead Class Counsel who shall distribute attorneys' fees and costs to the Class Counsel as Lead Class Counsel deems appropriate. Under no circumstances will Bow be liable to Class Counsel, or any other attorney or law firm, for, because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees made in accordance with this Settlement Agreement; and Class Counsel, and each of them, release Bow, and its agents, officers, directors, and employees, from any and all disputes or claims because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees and costs made in accordance with this Settlement Agreement.

f.      Class Counsel shall not be entitled to any compensation from any Released Party for fees or expenses beyond that provided in this Paragraph 41 and its sub-parts, including without limitation, any fees or expenses incurred in their cooperation in the administration of this settlement agreement.

H.    **FINAL APPROVAL**

42.    **Motion for Final Approval of Settlement:** Pursuant to the schedule set by the Court in its Preliminary Approval Order and at least ten (10) days prior to the Final Approval Hearing, Lead Class Counsel shall file a motion and supporting papers requesting that the Court grant final approval of this Settlement Agreement, to include all enumerated subparagraphs below, and for entry of a Final Approval Order and Final Judgment to be agreed upon the Parties and filed with the Motion for Final Approval.

a.    Determining that the Court has personal jurisdiction over all Plaintiffs and Settlement Class Members, that the Court has subject matter jurisdiction over the claims asserted in this Litigation, and that venue is proper;

b.    Finally approving the Settlement Agreement and settlement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23;

c.    Finally approving and certifying the Settlement Class for settlement purposes only;

d.    Finding that the Notice Plan, Settlement Notice, and dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United State Constitution, and was fair, adequate, and sufficient, was the best practicable notice under the circumstances, and was reasonably calculated to apprise members of the Settlement Class of the Litigation, the Settlement Agreement, their objection rights, and their exclusion rights;

48

e.     Dismissing the Litigation with prejudice and without costs (except as provided for in this Settlement Agreement as to costs);

f.     Expressly including the Release set forth in the Settlement Agreement and making the Release effective as of the Effective Date;

g.     Listing all opt-outs;

h.     Certifying that the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met;

i.     Authorizing the Parties to implement the terms of the Settlement Agreement;

j.     Permanently enjoining Plaintiffs and all other Settlement Class Members, and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any Released Claims against the Released Parties;

k.     Retaining jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Approval Order, and the Final Judgment, and for any other necessary purpose, subject to the provisions above regarding the Independent Engineering Consultant and the Special Master; and

l.     Issuing related Orders to effectuate the final approval of the Settlement Agreement and its implementation.

43.     **Exclusive Remedy, Dismissal of Action and Jurisdiction of Court:** All members of the Settlement Class who do not properly file a timely and valid written Request for Exclusion from the Settlement Class submit to the jurisdiction of the Court and will be bound by the terms of this Agreement, including, without limitation, the Release set forth herein. This Agreement sets forth the sole and exclusive remedy for any and all pending or future claims of Settlement Class Members or other Claimants against Bow and the Released Parties arising from any alleged failure of the Covered Products as set forth above. Upon entry of the Final Approval Order, each Settlement Class Member who has not validly and timely opted out of the Settlement Class and any Person that has made or can or is entitled to make a claim through or in the name or right of a Settlement Class Member shall be barred from initiating, asserting, continuing, or prosecuting any such claims against Bow and any Released Party. Upon the Effective Date, the case comprising the Litigation will be dismissed with prejudice.

**I.     OTHER TERMS AND CONDITIONS**

44.     **No Admission of Liability:** This Agreement is made for the sole purpose of attempting to consummate a settlement of the Litigation on a class-wide basis. This Agreement is made in compromise of disputed claims and shall not be construed as an admission of liability by Bow or any Released Party. For the avoidance of doubt, Bow expressly denies that there is any defect in the Covered Products and further expressly denies any liability whatsoever to Plaintiffs and the Class.  Because this is a class action settlement, this Agreement must receive preliminary and final approval by the Court. It is an express condition of this Agreement that the Court shall enter the Final Approval Order and Final Judgment and that the Agreement reach the Effective Date. In the event that the Effective Date does not occur, this Agreement shall be terminated and only those provisions necessary to effectuate such termination and to restore fully the Parties to

their respective positions before entry of this Agreement shall be given effect and enforced. In such event, the Parties shall bear their own costs (except the costs of the Notice Plan and of the Settlement Administrator up to the date that the Agreement is terminated, which shall be borne solely by the Class Settlement Fund) and attorneys' fees in all respects, including without limitation with regard to the efforts to obtain any Court approval under this Agreement.

45.    **Exclusive and Continuing Jurisdiction:** The Court shall retain exclusive and continuing jurisdiction to interpret and enforce the terms, conditions, and obligations of this Agreement and its own orders and judgments, subject to the provisions above regarding the Independent Engineering Consultant and the Special Master.

a.    In the event of a breach by Plaintiffs, Bow, or a Settlement Class Member, of this Agreement, the Court may exercise all of its equitable powers to enforce this Agreement and the Final Approval Order and Final Judgment irrespective of the availability or adequacy of any remedy at law. Such powers include, among others, the power of specific performance and injunctive relief.

b.    Bow, Class Counsel, and Plaintiffs agree, and Settlement Class Members and Claimants will be deemed to have agreed, to submit irrevocably to the exclusive jurisdiction of the Court for the resolution of any matter covered by this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment, or the applicability of this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment, subject to the provisions above regarding the Independent Engineering Consultant and the Special Master.

c.      All applications to the Court with respect to any aspect of this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment shall be presented to and be determined by the Court for resolution.

d.      In the event that the provisions of this Settlement Agreement, the Release, the Final Approval Order, or the Final Judgment are asserted by any Released Party as ground for a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection in any other suit, action, or proceeding by any Releasing Party or any other Person covered by the Release, it is hereby agreed that the Released Party shall be entitled to seek an immediate stay of that suit, action, or proceeding until after the Court has entered an order or judgment determining any issues relating to the defense or objections based on such provisions. Plaintiffs and Class Counsel will not oppose such relief.

46.      **Stay of Proceedings:** The proposed Preliminary Approval Order shall request that all further proceedings in the Litigation be stayed except as necessary to approve and effectuate the Settlement.

47.      **Defendant's Attorneys' Fees and Costs:** Bow shall bear its own attorneys' fees and costs in the Litigation.

48.      **Representation by Counsel:** The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Agreement. Each Party represents that it understands the terms and consequences of executing this Agreement, and executes it and agrees to be bound by the terms set forth herein knowingly, intelligently, and voluntarily.

49.  **Mutual Full Cooperation:** The Parties agree to cooperate with each other in good faith to accomplish the terms of this Agreement, including the execution of such documents and such other action as may reasonably be necessary to implement the terms of this Agreement and obtain the Court's final approval of the Agreement including the entry of an order dismissing the Litigation with prejudice.

50.  **No Tax Advice:** Neither the Parties nor their counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, and no Person shall rely on anything contained in this Agreement to provide tax advice, and shall obtain his, her, or its own independent tax advice with respect to any payment under this Agreement.

51.  **Notices:** Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing by mail or email and addressed as follows:

To Plaintiffs and the Settlement Class:

Kirby D. Farris
Calle Mendenhall
Malia D. Tartt
**FARRIS, RILEY & PITT, LLP**
The Gray Building
1728 3rd Avenue North
Suite 500
Birmingham, Alabama 35203
Email: bowclasscounsel@frplegal.com

To Bow:

Angel A. Croes
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
acroes@carrallison.com
cc: hdellasala@carrallison.com

52.     **Drafting of Agreement:** The language of all parts of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of this Agreement are contractual and are the product of negotiations between the Parties and their counsel. Each Party and its counsel cooperated in the drafting and preparation of this Agreement, and this Agreement shall not be construed against any Party because of their role in drafting it.

53.     **Governing Law:** This Agreement shall be governed by the laws of the State of Alabama, without regard to its conflict of laws rules, precedent, or case law.

54.     **Modification:** This Agreement may not be changed, altered, or modified, except in writing and signed by all Parties hereto. The Agreement may not be discharged except (1) by performance in accordance with its terms; (2) by a writing signed by the Parties hereto; or (3) in accordance with Paragraph 29.i. herein.

55.     **Integration:** This Agreement and its Exhibits contain the entire agreement between the Parties relating to the Settlement and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or its counsel, are merged herein. Each Party represents and warrants that it is not relying on any representation not expressly included in this Agreement. No rights hereunder may be waived except in writing.

56.     **Extensions:** The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

57.     **Use in Other Proceedings:** The Parties expressly acknowledge and agree that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a

compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this Settlement Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Litigation, in any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Settlement Agreement or the rights of the Parties, their counsel, or the Released Parties. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Released Parties, Plaintiffs, or the Settlement Class or as a waiver by the Released Parties, Plaintiffs, or the Settlement Class of any applicable privileges, claims or defenses.

58.    **Subheadings:** Sub-headings in this Agreement are for purposes of clarity only and are not intended to modify the terms of this Agreement's text, which are controlling.

59.    **Waiver:** The waiver by any Party to this Agreement, of any breach of its terms, shall not be deemed or construed to be a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

60.    **Signatures:** Each Person executing this Agreement on behalf of any Party warrants that such Person has the authority to do so. This Agreement shall be binding upon, and inure to the benefit of the agents, heirs, executors, administrators, successors, and assigns of the Parties.

61.    **Counterparts:** This Agreement may be executed in any number of counterparts, including by electronic signature, each of which shall be deemed to be an original. All counterparts shall constitute one Agreement, binding on all Parties hereto, regardless of whether all Parties are

signatories to the same counterpart, but the Agreement will be without effect until and unless all Parties to this Agreement have executed a counterpart.

[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK.]

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE**

**COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: October 31, 2023

_____

Calle M. Mendenhall
FARRIS, RILEY & PITT, LLP
The Gray Building
1728 3rd Avenue North
Suite 500
Birmingham, Alabama 35203

Dated: 10/31/23

_____

Roselyn Braswell
Plaintiff

Dated: 10/31/23

_____

Gregory Johnson
Plaintiff

Dated: 10/31/23

_____

Jerri Johnson
Plaintiff

Dated: October 31, 2023            *Sheldon Hirt*
_____

Sheldon V. Hirt
Authorized Signatory
On behalf of Bow Plumbing Group Inc.


Dated: *October 31, 2023*       *Angel A. Croes*
_____

Angel A. Croes
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama 35216
Attorney for Bow Plumbing Group Inc.

58