IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROSELYN BRASWELL, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.  2:21-cv-25-ECM |
| | )                   (WO) |
| BOW PLUMBING GROUP, INC., | ) |
| | ) |
|    Defendant. | ) |

**<u>MEMORANDUM OPINION and ORDER</u>**

**I.  INTRODUCTION and BACKGROUND**

Now pending before the Court are the Plaintiffs' emergency motion to enjoin state court proceedings and for curative notice filed on March 27, 2024, (doc. 101), and Defendant Bow Plumbing Group, Inc.'s ("Bow")'s motion joining the Plaintiffs' motion filed on April 1, 2024, (doc. 103).  The Court carefully examined the filings of the parties and held a telephonic hearing on the motion.  For the reasons stated at the hearing, and those that follow, the motions are due to be GRANTED to the extent that (1) the Court will issue a curative notice and (2) the proceedings in *Earl Baker, et al. v. Bow Plumbing Group Inc. et al.*, Montgomery County Circuit Court, Docket No. 03-CV-2022-901043 ("*Baker*") are ENJOINED until July 17, 2024.

This case concerns alleged defects in Bow's PEX tubing, which was installed in the Plaintiffs' homes.  On February 28, 2024, the Court preliminarily approved the parties' proposed class action settlement, provisionally certified the settlement class, and directed notice to the settlement class. (Doc. 99).  Days later, in early March 2024, Attorneys Jay

Aughtman and Kenneth Mendelsohn—who represent plaintiffs in related state and federal court litigation against Bow concerning the same alleged defects in Bow's PEX tubing (including *Baker*)—sent emails to a "blind-copied" or "bcc'ed" list of their clients, who presumptively are members of the settlement class unless they opt out. (*See* docs. 101-1 & 101-2).[1]  These emails—one sent on March 1, 2024, and another sent on March 4, 2024–contain misleading or inaccurate statements regarding the proposed class action settlement and associated proceedings in this case.

For example, Attorneys Aughtman and Mendelsohn wrote in their March 4 email: "[I]n order to protect your individual claim in this matter, we need to have you sign a letter . . . Please be advised that we have a short window to submit these letters, therefore, we need you to come by our office within the next seven days to sign your letter." (Doc. 101-2 at 1) (emphasis in original).  The letter to which the email refers is a Request for Exclusion (opt-out).  Importantly, notice to the class was not issued until March 12, 2024, meaning Attorneys Aughtman and Mendelsohn gave their clients—presumptive class members—a deadline to exclude themselves from the settlement (March 11, 2024) which would fall before they could have even received notice of the settlement.  Additionally, the actual opt-out deadline is April 12, 2024 (30 days after notice is issued), so the email's statement regarding a March 11, 2024 deadline to opt out of the settlement is also inconsistent with the Settlement Agreement's terms for this reason.

---

[1] Attorneys Aughtman and Mendelsohn are aware of these proceedings as they unsuccessfully sought intervention on behalf of their clients in November 2023. (*See* docs. 89 & 97).

In their March 1 email, Attorneys Aughtman and Mendelsohn wrote: "The class action cannot compensate you for a replumb of your home." (Doc. 101-1 at 1). However, under the Settlement Agreement, a class member with Multiple Qualifying Leaks can request reimbursement for a replumb of their home (the "Replumb Calculation") or a cash payment of $8,500.00 in lieu of the Replumb Calculation. (Doc. 91-1 at 19–22, para. C.10.a). Further compounding any anxiety that presumptive class members may have had regarding compensation, the March 1 email further misleads its readers by stating: "In the class action, a California-based settlement administrator (paid for by class settlement funds) determines who is eligible to receive any compensation and how much, if any, they will receive from the class settlement." (Doc. 101-1 at 1). But the settlement administrator (Angeion) does not determine who is eligible or how much each class member will receive; instead, Angeion simply "administers the Settlement pursuant to these Court-approved requirements and procedures." (Doc. 103 at 11).

Egregiously, Attorneys Aughtman and Mendelsohn also suggested that it could be unethical for Plaintiffs' counsel to communicate with presumptive class members, writing: "If ANY lawyer or law firm representative tries to contact you by mail, phone, or email, that is not from our offices we need to know that immediately because they should not contact you. Do not respond to anyone outside of our office on this BOW matter other than to tell them you are represented by us." (Doc. 101-1 at 2) (emphasis in original) (March 1 email). But as Bow points out, Plaintiffs' counsel is permitted to communicate with class members because each class member is considered a client of class counsel at least as soon as a class is certified. (Doc. 103 at 12–13) (collecting cases).

3

These communications made at least one presumptive class member uneasy. In fact, Plaintiffs' counsel learned about the emails from one of Attorneys Aughtman and Mendelsohn's former clients: Amanda Richardson. Ms. Richardson signed a declaration stating that (1) prior to Attorney Aughtman and Mendelsohn's March 1, 2024 email, she was not aware that there was a pending class action concerning Bow's PEX tubing; (2) the email's advice not to speak to "the Birmingham Class Action Attorneys" about the case and to forward any communications to Mendelsohn's law firm made her "uneasy" and "nervous" to engage in any communication about the Bow PEX tubing in her home; (3) based on her own online research, she discovered the preliminary class action settlement under which she may qualify; and (4) after reviewing the settlement administrator's website, she decided she did not want to opt out of the class action settlement, she fired Attorneys Aughtman's and Mendelsohn's law firms, and she contacted the Plaintiffs' counsel. (Doc. 101-3).

On March 27, 2024, the Plaintiffs filed an emergency motion to enjoin state court proceedings and for curative notice. (Doc. 101). Shortly thereafter, Bow filed a motion joining the Plaintiffs' motion. (Doc. 103).

Bow contends that Attorneys Aughtman and Mendelsohn are "interfering with the Court's jurisdiction over absent Class Members by coercing them to opt out of the Settlement, and they are using the Parallel Proceedings to do so," and that temporarily enjoining the parallel proceedings until July 17, 2024 will help ensure that the other proceedings "are not used as a weapon to coerce" class members to opt out, which in turn will help protect the existence and amount of the settlement by ensuring that class members

4

are opting out based on complete and accurate information. (*Id.* at 16–17, 20). To that end, the parties request the Court to enjoin the proceedings in (1) *Marcus Aaron, et al. v. Bow Plumbing Group Inc. et al.*, Montgomery County Circuit Court, Docket No. 03-CV-2022-900111 ("*Aaron*"); (2) *Baker*; (3) *Keshala Barlow, et al. v. Bow Plumbing Group Inc. et al.*, Montgomery County Circuit Court, Docket No. 03-CV-2023-900136 ("*Barlow*"); (4) *Jason & Beverly Goodson v. Bow Plumbing Group Inc.*, U.S. District Court for the Middle District of Alabama, Civil Action No. 2:23-cv-60-RAH ("*Goodson*"); and (5) *Vikas & Ruchi Gupta v. Bow Plumbing Group Inc.*, U.S. District Court for the Middle District of Alabama, Civil Action No. 2:22-cv-547-RAH ("*Gupta*"). During the hearing on these motions, the parties represented to the Court that the proceedings in *Baker* are of most immediate concern because a bellwether trial in Montgomery County Circuit Court is set for May 20, 2024.

The parties also request leave, as described by Bow, to issue curative notice to the presumptive settlement class members "to correct [the] misleading communications, protect the class, and protect the existence and quantum of the [s]ettlement." (Doc. 103 at 19; *see also* doc. 101 at 10). Bow further asserts that July 17, 2024 is the earliest date upon which the parties will be able to resolve the notice issues caused by the actions of Attorneys Aughtman and Mendelsohn. (Doc. 103 at 20). Thus, according to Bow, enjoinment of proceedings in the five cases previously described working in tandem with a Court-approved curative notice would allow the parties sufficient time to provide corrected information to presumptive settlement class members in a context which minimizes possible coercion.

## II.  LEGAL STANDARD

The All-Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  "In contrast to the broad powers granted to federal courts by the All–Writs Act," *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993), the Anti-Injunction Act *prohibits* federal courts from enjoining *state court proceedings* with three exceptions: (1) "as expressly authorized by Act of Congress," (2) "where necessary in aid of its jurisdiction," or (3) to protect or effectuate its judgments." 28 U.S.C. § 2283.

The Eleventh Circuit has recognized that a district court may enjoin, pursuant to the Anti-Injunction Act, "a state court proceeding in aid of its jurisdiction when it has retained jurisdiction over complex, *in personam* lawsuits." *Est. of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 645 F.3d 1267, 1274 (11th Cir. 2011).  Moreover, the Eleventh Circuit has upheld injunctions against state court proceedings which involved similar claims to those adjudicated or settled by an earlier final judgment in a federal case. *See Wesch*, 6 F.3d at 1470 (holding that "the district court did not abuse its discretion by enjoining the proceedings in the Montgomery County Circuit Court" pursuant to the Anti-Injunction Act because "the injunction was necessary both in aid of its jurisdiction and to protect and effectuate its prior [final] judgment"); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989) (upholding a district court's permanent injunction enjoining plaintiffs in three state court proceedings from pursuing claims that were substantially similar to those claims settled by an earlier final judgment in a federal antitrust class action

lawsuit). Further, district courts have discretion in determining whether to enjoin state court proceedings. *Wesch*, 6 F.3d at 1469.

As to curative notices, Federal Rule of Civil Procedure 23(d) provides, in part, that a court may issue orders "to protect class members and fairly conduct the action." FED. R. CIV. P. 23(d). Importantly, "[t]he issuance of a remedial order under Fed. R. Civ. P. 23(d) does not require a finding of *actual* harm." *Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478, 498 (E.D. Pa. 1995) (citing *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988)) (emphasis added).[2] Thus, the discretion of district courts to issue such orders is broad, and "[c]ourts have continually held that misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation proceedings and violate the principle of informed consent, and the Federal Rules allow the courts to protect class members and putative class members from such communications." *Riley v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 4249849, at *2 (W.D.N.C. July 13, 2015) (collecting cases). "A communication is coercive or misleading when [a party] interferes with participation by potential class members in the lawsuit or misinforms them by failing to reveal how some proposed transaction might affect their rights in the litigation." *Id.* Therefore, courts often employ curative notices to remedy misleading communications to class members. *E.g.*, *Georgine*, 160 F.R.D. at 498 (ordering, among other things, that a curative notice be sent to class members who received misleading communications); *Magtoles v. United Staffing Registry, Inc.*, 2022 WL 4096180, at *5

---

[2] The Court here, and elsewhere in the opinion, cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

(E.D.N.Y. Sept. 6, 2022) (same); *Marino v. CACafe, Inc.*, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) (same).

### III. DISCUSSION

The email communications by Attorneys Aughtman and Mendelsohn materially interfere with the Court's order to effectuate a notice plan which fairly, accurately, and reasonably informs the settlement class members of the proposed settlement terms and associated procedures to resolve their claims. (*See* doc. 99 at 6–8). Specifically, the March 1 and March 4 emails gave presumptive class members a deadline to exclude themselves from the settlement prior to their receipt of notice (and prior to the actual opt-out deadline), misinformed presumptive class members about compensation methodology in the proposed settlement, and potentially chilled communication between class counsel and presumptive class members. Moreover, such misinformation puts final resolution of this case in jeopardy as it risks coercion of presumptive class members to opt out without the benefit of complete and accurate information.

Under these circumstances, the Court finds that a curative notice to presumptive settlement class members is necessary "to protect class members and fairly conduct the action," and ensure that class members receive fair and adequate notice of the settlement. *See* FED. R. CIV. P. 23(d). Yet, a curative notice alone will not suffice in this instance.

To that end, these circumstances also give rise to the enjoinment of parallel proceedings as "[t]he threat to the [Court's] jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions." *In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002); *Faught*

8

*v. Am. Home Shield Corp.*, 2009 WL 10263452, at *1 & n.2, *4 (N.D. Ala. Oct. 30, 2009) (enjoining, pursuant to the All-Writs Act, a state court action pending in California because the continued prosecution of the California action "st[ood] to interfere with the classwide settlement the parties in this case have reached, which settlement this court has preliminarily approved, and of which it has required notice be given to the class members, because, among other things, the [California] action seeks the same type of relief (or at least substantially similar relief) as that encompassed by the settlement"). However, in crafting its remedy, the Court notes that "[b]ecause an injunction must be *necessary* in aid of jurisdiction to fall under this application to the Anti Injunction Act, it is important to carefully tailor such injunctions to meet the needs of the case." *In re Diet Drugs*, 282 F.3d at 238 (emphasis in original).

Here, out of the five cases of concern listed by the parties, the Court finds the *Baker* proceedings—in light of its impending bellwether trial—to represent the greatest risk of frustrating the Court's jurisdiction and in effectuating its orders, and further finds that the *Baker* proceedings "stand to interfere with the classwide settlement the parties in this case have reached, which settlement this [C]ourt has preliminarily approved, and of which it has required notice be given to the class members, because, among other things, the [*Baker*] action seeks the same type of relief (or at least substantially similar relief) as that encompassed by the settlement." *See Faught*, 2009 WL 10263452, at *4. Accordingly, the Court will tailor this order to enjoin *Baker* while leaving the four other cases untouched at this stage. In addition, in the absence of extenuating circumstances, this enjoinment will expire upon the conclusion of the earliest date which the parties represent they can resolve

9

the notice issues caused by the actions of Attorneys Aughtman and Mendelsohn: July 17, 2024.  Therefore, it is

ORDERED that pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the Anti-Injunction Act, 28 U.S.C. § 2283, and Federal Rule of Civil Procedure 23(d), the motions (docs. 101, 103) are GRANTED to the following extent:

1. The proceedings in *Earl Baker, et al. v. Bow Plumbing Group Inc. et al.*, Docket No. 03-CV-2022-901043 in Montgomery County Circuit Court, are ENJOINED until July 17, 2024;

2. The curative notice proposed by the parties is approved, and the parties are authorized to issue that notice, attached to this Order as Exhibit A, to all class members.

The Clerk of the Court is DIRECTED to provide a courtesy copy of this Order to the Circuit Court of Montgomery County, Alabama.

Done this 4th day of April, 2024.

                                                  /s/ Emily C. Marks
                                          EMILY C. MARKS
                                          CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Dear Homeowner,

**This letter is written at the direction of the federal Court in which there is a pending proposed class action settlement regarding BOW PEX plumbing pipe.** The class action is styled, *Braswell, et al. v. Bow Plumbing Group Inc.*, No. 21-cv-00025-ECM. This letter contains important information that affects your legal rights. **This letter and its contents have been reviewed and approved by the Court.**

You and other class members may have received two email communications from attorneys at Aughtman Law Firm, LLC and/or Jemison & Mendelsohn, P.C., who may represent you on an individual basis. After reviewing those communications, the Court has determined those communications are incomplete, misleading, and potentially coercive. The Court has also determined the communications substantially interfere with class members' ability to make informed decision regarding their rights. The Court has a duty to ensure that class members receive accurate, non-misleading information about the litigation and the pending settlement. This letter explains some of the Court's concerns about the email communications you may have received and what the Court is doing in response to those concerns. ***Please read this letter carefully.***

***What were some of the Court's concerns about the Emails?*** The Court determined that the email communications are misleading and contain factually inaccurate information in at least the following respects:

1. The emails misrepresent the status of the settlement and that the settlement agreement was made between court-appointed class counsel, Farris, Riley & Pitt, and counsel for Bow Plumbing Group Inc. Bow entered into this agreement in order to buy peace and resolve these claims without the need for further litigation. Bow does not desire to withdraw from the settlement absent exigent circumstances.

2. The communications do not fully disclose the risks of choosing to proceed with individual litigation.

3. Farris, Riley & Pitt attorneys have been preliminarily appointed by this Court to serve as class counsel, meaning they are acting on your behalf and in your best interest. You are encouraged to reach out to them with any questions or concerns you may have. Their email address is bowclasscounsel@frplegal.com.

<u>**Settlement Terms**</u>: Below are the broad details of the Settlement Agreement between class counsel and Bow Plumbing Group, Inc. **<u>If, after reading this, you wish to withdraw your opt-out and re-join the class, you are able to do so</u> and you should contact your**

**individual attorneys and bowclasscounsel@frplegal.com to ensure your intent to remain in the class has been communicated.**

- By remaining in the Settlement class, you will pay nothing for Class Counsel's attorneys' fees. The attorneys representing Settlement Class Members will be paid separately by Bow Plumbing Group, and those attorney fees will not be paid out of or deducted from the cash fund created for the class.

- *Past Property Damage Claims*: Past Property Damage Claims are those that are based upon Qualifying Leaks that occurred between May 26, 2003 and the Effective Date. Such claims must be submitted to the Settlement Administrator within 100 days after the Effective Date, although the Settlement Administrator may extend the 100-day period up to an additional 50 days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. The Claimant must have taken reasonable steps to mitigate (i.e., limit or stop) the effects of the Qualifying Leak.

- *Future Property Damage Claims*: Future Property Damage Claims are those that are based on Qualifying Leaks that occur after the Effective Date and before the end of the Claim Period. Such Claims must be submitted to the Settlement Administrator within 100 days after the Qualifying Leak occurs, although the Settlement Administrator may extend this 100-day period up to an additional 50 days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause. The Claimant must have taken steps to mitigate (i.e., limit or stop) the effects of the Qualifying Leak.

- *Re-Plumb Claims for Claimants with Multiple Leaks*: An Eligible Claimant who demonstrates that their residential structure has experienced, or experiences before the end of the Claim Period, Multiple Qualifying Leaks, each one occurring in such a manner that replumbing all or part of the structure would mitigate future events, has the option of requesting a payment relating to a complete re-plumb of relevant PEX Tubing. Such Claims must be submitted to the Settlement Administrator within 100 days after the Effective Date if the third Qualifying Leak occurred before the Effective Date, or otherwise must be submitted within 100 days after the third Qualifying Leak occurs, though the Settlement Administrator may extend these

periods up to an additional 50 days for a particular Claimant upon a showing of good cause as determined by the Settlement Administrator. An explanation in a Claim Form under oath reasonably demonstrating that the Claimant was precluded from submitting a Claim Form due to circumstances beyond the Claimant's control shall constitute good cause.

      i.   The Re-Plumb Calculation shall be based upon either (1) a calculated total re-plumb cost at a rate of $650.00 per plumbing fixture and $433.00 per plumbing half fixture present in the residential structure; provided, however, that the Re-Plumb Calculation shall be limited to a maximum of **$16,000.00** per structure, or (2) a bona fide bid for the re-plumb (to be verified as bona fide by the Settlement Administrator).

      ii.   Eligible Claimants who have experienced, or experience during the Claim Period, Multiple Qualifying Leaks, each one occurring in such a manner that re-plumbing all or part of the structure would mitigate future events, have the option to select a cash payment of **$8,500.00** in lieu of a re-plumb remedy in exchange for the Eligible Claimant's agreement that the Eligible Claimant(s) and their structure are no longer eligible to make any Future Property Damage Claims.

The preliminarily appointed class counsel believe that this Settlement is in the best interest of the Settlement Class. **Litigating these lawsuits to conclusion, on an individual basis, without a settlement could take years and there is no guarantee of a favorable outcome. In fact, Bow has significant legal defenses in these actions, particularly given the age of the homes and plumbing installations at issue.** Most homes in the Settlement have not experienced a leak, and it would be challenging for homeowners who have not experienced a leak to date to secure a recovery, much less the cost of re-plumbing a home built years ago based on the possibility a leak may occur in the future. The settlement puts a remedy in place in the event of future leaks without the inconvenience, risk, and cost to you of litigation.

If you want more information or have any questions, you may contact the Settlement Administrator via the Settlement Website, www.BowPexSettlement.com, by toll-free telephone at 1-844-600-6681, or by email at info@BowPexSettlement.com. You may also contact class counsel through email at bowclasscounsel@frplegal.com.