# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

ROSELYN BRASWELL, *et al.*,

      Plaintiffs,

v.

BOW PLUMBING GROUP INC.

      Defendant.

Civil Action No. 2:21-cv-25-ECM

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

---

**COME NOW** the Plaintiffs, by and through their undersigned counsel, and hereby submit this Memorandum in Support of their Motion for Final Approval of the Settlement preliminarily approved by this Court on February 28, 2024. (*See* Doc. 99). Plaintiffs respectfully request that, after conducting the Final Approval Hearing on July 29, 2024, the Court grant final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e) and enter the Proposed Final Approval Order, attached hereto as Exhibit A, that will, among other things, (i) finally approve the Settlement and (ii) certify the Settlement Class.[1]

---

[1] Pursuant to the terms of the Settlement Agreement, the Final Approval Order is to be agreed upon by the Parties and submitted with Plaintiffs' Motion for Final Approval. The Parties have been diligently conferring and working together regarding this requirement, but they have not reached

Additionally, Plaintiffs request this Court approve and grant an award of attorneys' fees and expenses, and service awards for the Class Representatives, payable by Bow Plumbing Group Inc. ("Bow") under the Settlement Agreement, separate from the Class Settlement Fund. (*See* the Third Amended Settlement Agreement, attached hereto as <u>Exhibit B</u>).

## I.    <u>INTRODUCTION</u>

### A.    Overview of the Litigation and Procedural History

There has been substantial litigation involving PEX tubing made by other manufacturers in state and federal courts for at least twenty (20) years now, including at least four other federal class actions. Other courts have consistently certified settlement classes and finally approved the proposed settlements based on similar facts and allegations. *See*, *e.g.*, *Matson v. NIBCO, Inc.*, 5:19-cv-00717 (W.D. Tex. Oct. 20, 2021), Doc. 132 (order finally certifying class); *Cole v. NIBCO, Inc.*, 3:13-cv-7871 (D.N.J. Apr. 11, 2019), Doc. 227 (order granting final approval to class action settlement); *In Re: Zurn Pex Plumbing Products Liability Litigation*, 0:07-cv-03652 (D. Minn. Feb. 27, 2013), Doc. 170 (order finally approving class action

---

an agreement regarding the Final Approval Order. In an effort to comply with the terms of the Settlement Agreement and the Court's Preliminary Approval Order (Doc. 99) to the fullest extent possible, Plaintiffs are submitting their version of the Proposed Final Approval Order as <u>Exhibit A</u>. If the Parties are able to agree upon a modified proposed Final Approval Order, Plaintiffs respectfully request that the Court allow it to supplement this Motion with an amended <u>Exhibit A</u>.

settlement); and *In Re: Kitec Plumbing System Products Liability Litigation*, 09-MD-2098 (N.D. Tex. Nov. 17, 2011), Doc. 155 (order certifying class for settlement and approving class action settlement).

Plaintiff Roselyn Braswell filed her Original Complaint on January 13, 2021. On September 21, 2022, Plaintiffs filed their Fourth Amended Class Action Complaint to add Plaintiffs Gregory and Jerri Johnson. Plaintiffs brought claims against Bow for: (i) Breach of Express Warranty; (ii) Breach of Implied Warranty of Merchantability; (iii) Breach of Implied Warranty of Fitness for a Particular Purpose; (iv) Unjust Enrichment; (v) Negligence/Wantonness: Failure to Warn; (vi) Negligence/Wantonness: Defective Design and Manufacture; (vii) Strict Liability – Design Defect and Manufacture Defect Pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD); (viii) Strict Liability – Design Defect and Manufacture Defect; (ix) Suppression; and (x) Declaratory and Injunctive Relief. (Doc. 63).

This case has been pending before this Court for roughly three and a half years. During that time, the Parties have engaged in extensive written discovery, expert investigations, and conducted depositions of homeowners, a representative of Bow, and a plumber whose company installed Bow's PEX Tubing in numerous homes throughout the Montgomery, Alabama area (including Plaintiff Braswell's home). The Parties engaged experts and likewise spent untold hours working with

those experts on investigations related to the manufacturing of Bow's PEX Tubing; the installation and use of the PEX Tubing; the reported PEX Tubing leaks; and site inspections for observation and retrieval of the PEX Tubing, which included assessing water damage to homes, home structure and installation issues, and assessing personal property damage resulting from the leaks. Specifically, the Parties, and their respective experts, completed site inspections of five (5) homes in the Montgomery County, Alabama area, which averaged twelve-hour days for a rough total of three weeks' time.

This litigation has been hard-fought by both Parties. Throughout the discovery process, Class Counsel and Class Representatives extensively developed their case against Bow. Bow, likewise, extensively developed its legal and factual defenses. The proposed Settlement was reached only after evaluating various factors, including the significant risks to both sides associated with continuing litigation. The assessment included an analysis of potential recovery risks for Plaintiffs, potential liability risks for Bow, estimates of potential recovery amounts, if any, the likelihood of success at the certification stage and trial, and potential delay to putative Class Members' recovery based upon appeals of any rulings or verdicts at trial. The Parties finally arrived at the proposed Settlement after three full-day mediation sessions and further numerous communications among counsel for the Parties over the course of several weeks.

As the Court preliminarily held on February 28, 2024, the Settlement satisfies all the requirements of Fed. R. Civ. P. 23(a) and 23(b)(1) and due process. (*See* Doc. 99). Under Fed. R. Civ. P. 23(e), the Settlement merits final approval. It represents a significant achievement for Class Members, especially in light of the real risks faced by Class Members should litigation continue. Tellingly, no objections have been made to any component of the Settlement by Class Members, and all objection deadlines have expired. Finally, the Parties have worked with the Settlement Administrator, Angeion, who has extensive experience in administering class action settlements, including the *Cole* and *Matson* settlements, to provide wide-reaching Notice as directed by the Court, which exceeds applicable requirements and has been designed to achieve the best practicable Notice to Class Members.

### B.    The Settlement Terms

The Settlement is fair, adequate and reasonable. The relief provided by the Settlement is meaningful and designed to pay a minimum and maximum percentage of qualifying damages (rather than a specific dollar amount). Most notably, the Settlement provides the following benefits:

- A Settlement Fund in the amount of up to $8,025,000.00, subject only to the costs of notice and administration.
- Eligible Claimants receive up to 80% of their "Reasonably Proven Property Damage" (with an initial payment of 70% of their claim).

- Eligible Claimants who have suffered Multiple Qualifying Leaks may exercise the option to obtain a re-plumb of their entire residence or structure. The amount of the payment (the "Re-Plumb Calculation") is calculated at a rate of $650.00 per plumbing fixture and $433.00 per half fixture present in the structure (*e.g.*, the Re-Plumb Calculation for a home with 13 fixtures would be $8,450.00). Eligible Claimants shall receive up to 80% of the Re-Plumb Calculation (with an initial payment of 70% of the Re-Plumb Calculation).

- Eligible Claimants who have suffered Multiple Qualifying Leaks also have the option to select a one-time payment of $8,500.00 in lieu of a re-plumb.

- Eligible Claimants who have not suffered Multiple Qualifying Leaks but who have paid for a complete re-plumb of Covered Products after at least one Qualifying Leak can seek consideration as an exception and request payment as set forth above.

- Bow has agreed to pay Class Counsel's reasonable attorneys' fees and costs separately from the Class Settlement Fund.

(*See* <u>Exhibit B</u>).

To finally approve the Settlement, the Court must find that 1) certification of the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23; 2) the Settlement itself is fair, adequate, and reasonable; and 3) adequate notice was provided to the Class. As demonstrated in detail below, each requirement is fully satisfied here.

## II.    <u>THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED.</u>

First, the Class unequivocally meets all of the requirements for certification pursuant to Fed. R. Civ. P. 23. The Court has already conditionally certified the Class

for the purposes of granting Preliminary Approval and providing Notice. (*See* Doc. 99 at p. 3). As demonstrated below, that determination should not be disturbed because all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are plainly satisfied.

## A.    Definition of the Settlement Class

The Settlement Class is jointly defined by the Parties as:

All Persons within the fifty states, the District of Columbia, and all territories of the United States that own or have owned at any time since May 26, 2003, a residential, commercial, or other structure that contains or contained Bow's PEX Tubing, including their spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, and assigns ("Occupant Persons"); as well as all Persons who have standing and are entitled to assert a claim on behalf of any such Occupant Persons, such as but not limited to a plumber, builder, contractor, distributor, seller, subrogated insurance carrier, or other Person that has claims for contribution, indemnity, or otherwise against Bow as a result of leaks of the PEX Tubing in such residential, commercial, or other structures. The Settlement Class includes all Persons who subsequently purchase or otherwise obtain an interest in a residential, commercial, or other structure covered by this Settlement without the need of a formal assignment by contract or court order. The Settlement Class includes all Persons within this definition regardless of whether any such Person has an active lawsuit against Bow, or an active claim or potential claim against Bow, whether tolled or otherwise, involving Bow's PEX Tubing. Excluded from the Settlement Class are: (i) Bow, its officers, directors, affiliates, legal representatives, employees, successors, and assigns, and entities in which Bow has a controlling interest; (ii) judges presiding over the Litigation; (iii) local, municipal, state, and federal governmental entities; and (iv) Persons whose claims against Bow

related to Bow's PEX Tubing have been or are dismissed by adjudication.

(*See* <u>Exhibit B</u> at p. 11).

## B.    Rule 23(a) Requirements

Fed. R. Civ. P. 23(a) requires a plaintiff seeking class certification to satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Here, Plaintiffs satisfy all four requirements.

### i.    <u>Numerosity</u>

Numerosity requires that members of a class be "so numerous that the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no hard and fast numerical threshold to warrant class certification, but the Eleventh Circuit has held that "less than twenty-one is inadequate…more than forty is adequate, and numbers falling in between are open to judgment based on other factors…" *See*, *e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"). Here, the Parties are currently aware of at least 201 presumptive class members (or 128 presumptively affected structures) nationwide that did not request exclusion from the Settlement Class.

Given the length of time the Settlement will remain open, it is highly likely more potential Settlement Class Members will submit claims.

      ii.   <u>Commonality</u>

Fed. R. Civ. P. 23(a)(2) requires plaintiffs seeking class certification to show that there are questions of law or fact common to the class. "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Essentially, the threshold issue is whether a class-wide proceeding has the ability to generate common answers to common questions.

Here, the central issue is whether Bow's PEX Tubing is defective. Other common issues include: whether Bow knew about the alleged defects and whether Bow's Limited Warranty applies to downstream users who did not purchase the Tubing. The answers to these questions are common to the Class and can be decided by analyzing uniform class-wide evidence presented by the Parties under similar state laws. Stated differently, Plaintiffs' claims, and the claims of Class Members, raise common questions that have common answers that can be generated through class-wide proof that will resolve all of the claims. Therefore, the commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied.

iii.   Typicality

Typicality requires a "nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Typicality does not require identical claims, rather the necessary nexus is established if the claims of the class representative "arise from the same event or pattern or practice and are based on the same legal theory." *Id*.; *see also Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (typicality depends on "whether named representatives' claims have the same essential characteristics as the claims of the class at large").

Here, the typicality requirement imposed by Fed. R. Civ. P. 23(a)(3) is plainly met because Plaintiffs' and potential Class Member's claims arise from the design, manufacture, and sale of the PEX Tubing that was ultimately installed in their structures). Where "claims arise out of and involve application of the same" company-wide policies and systems, typicality is generally met. *See, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 698 (N.D. Ga. 2001) (typicality met where "claims arise out of and involve application of the same" company-wide policies and systems). Further, Plaintiffs' claims and those of the unnamed Class Members are based on the same legal theories, and Plaintiffs' alleged damages are similar to those of the unnamed Class Members.

iv.    <u>Adequacy</u>

There are two considerations for adequacy: 1) the competency of class counsel to handle the case; and 2) the absence of disabling conflicts of interest between the named plaintiffs and the class members. *J.W. Birmingham Bd. Of Educ.*, No. 2:10-cv-03314-AKK, 2012 U.S. Dist. LEXIS 124183, at *28 (N.D. Ala. Aug. 31, 2012) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1532-33 (11th Cir. 1985). For settlement purposes, there are no conflicts of interest between the class representatives and members of the class. Each has a common interest in repairing or replacing the same alleged defective products installed in their structures. The representative Plaintiffs' active participation is strong evidence that they have vigorously prosecuted this case in the interest of the Class. And again, Plaintiffs' attorneys have demonstrated extensive experience in federal court class action litigation, including experience with a class action involving an alleged defect in a similar product.

## C.    **Rule 23(b)(3) Requirements**

In addition to the Rule 23(a) requirements, plaintiffs seeking certification of a proposed class must also establish at least one of the alternative requirements of Fed. R. Civ. P. 23(b). Fed. R. Civ. P. 23(b)(3) provides that a plaintiff must show "that questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Stated

differently, plaintiffs seeking class certification must demonstrate the requirements of predominance and superiority. *Williams*, 568 F.3d at 1357.

       i.    <u>Predominance</u>

Fed. R. Civ. P. 23(b)(3) requires that the party proposing a class action establish that issues common to the class predominate over the individual issues of particular class members. *Amchem Prods. v. Windsor*, 521 U.S. 591, 622-32 (1997). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *See Williams*, 568 F.3d at 1357 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001) (internal citations omitted)). The threshold determination is whether "after adjudication of the class wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Id*. at 1357 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)). Fed. R. Civ. P. 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). Rather, the plaintiff's burden is to show that "one or more of the central issues in the action are common to the class and can be said to predominate." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Other courts have determined this requirement was met in similar cases. For example, the plaintiffs in a similar class action alleged many of the same causes of action and dealt with many of the same factual considerations as those in the present matter. The *Zurn* court found that common issues predominated noting, like here, the "central issues of liability will pivot around what and when Zurn knew about the [alleged] defects," with respect to the negligence claim, and with respect to the warranty claim, whether the product was merchantable at the time of purchase. Finally, the *Zurn* court noted that evidence of an intrinsic defect at the time of purchase establishes a predominant question for the class, and individual concerns about installation error or other alleged modes of individual failure do not overcome a finding of predominance. *See In Re: Zurn Pex Plumbing Products Liability Litigation*, 0:07-cv-03652 (D. Minn. October 18, 2012), Doc. 168.

Here, just like in *Zurn*, the single dominant question for all Settlement Class Members is whether Bow's PEX Tubing was defectively designed and/or manufactured. This question can be resolved on a class-wide basis. Individualized inquiries, if any, do not predominate over the common central issue. Key factual and legal questions related to Bow's liability can all be resolved through common evidence.

Additionally, individualized issues related to Plaintiffs' and other Class Members' damages do not predominate over common issues. There are two types of

damages Class Members may recover: (1) the cost to remove and replace the PEX tubing and re-plumb, and (2) the cost to repair damage caused by the failure of the PEX Products. Both tie directly into Plaintiffs' theory of liability; namely, that the PEX Products are defective, prematurely fail, and that failure results in damage to Plaintiffs' property. Admittedly, the extent of the property damage to each Claimant's property (and therefore the cost to repair it) will not be uniform across the Class. The Supreme Court has held that this will necessarily be the case in every class action where members of the class have suffered such damages. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 2558 (2011) (deeming it "clear that individualized monetary claims belong in Rule 23(b)(3)"). The determining question is whether individual "damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical method." *Klay*, 382 F.3d at 1259-60; *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized issues of damages "easy to resolve" when "calculations are formulaic").

Under the Settlement Agreement, the Settlement Class will be able to prove the extent of their individual property damage by submitting a valid and timely Claim Form, along with invoices, estimates, and other documents showing each Claimant's repair costs. Therefore, the method of proving individual damages will be uniform across the entire class. Accordingly, calculating individualized damages using a uniform method will not be so complex as to defeat class certification under

Rule 23(b)(3). This method of proof and calculation of damages has been approved in similar PEX settlement classes. *See, e.g., Matson v. NIBCO, Inc.*, 5:19-cv-00717 (W.D. Tex. Feb. 23, 2021), Doc. 68 (order provisionally certifying settlement class) and *Cole v. NIBCO, Inc.*, 13-7871 (D.N.J. Nov. 14, 2018), Doc. 177 (order granting preliminary approval to class action settlement, provisionally certifying settlement class, directing notice to the settlement class, and scheduling final approval hearing).

      ii.   <u>Superiority</u>

The proposed Settlement Class can be managed through a uniform manner of proof and calculation of damages, such that management of the class action for the purposes of settlement, through a centralized claims administrator, will not present any difficulties. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620. Refusal to certify a class due to manageability is not favored. *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992).

Since Plaintiffs satisfy each of the requirements of Fed. R. Civ. P. 23, the proposed Settlement Class should be finally certified.

## III.   <u>THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE.</u>

Fed. R. Civ. P. 23(e) requires that the trial court find the proposed Settlement is "fair, adequate and reasonable and is not the product of collusion between the

parties." *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984). The fairness determination is left to the sound discretion of the trial court and is "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id*. at 987. "[T]here exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.'" *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (quoting *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002)).

First, the Settlement has key indicia of fairness. Settlement was only achieved after years of hard-fought litigation and discovery, and only after the Parties had sufficient time and information to investigate the strengths and weaknesses of the claims involved. The extensive negotiations were contentious, arm's length, and facilitated by a highly experienced and professional mediator, Christopher Nolland, Esq.

While there are no set standards for determining the fairness of a proposed settlement, the Eleventh Circuit has provided guidance, holding a court should examine several factors, including:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition

to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

On February 28, 2024, this Court found that, on a preliminary basis, the Settlement is sufficiently fair, reasonable and adequate, taking into account the factors required by *Bennett*. 737 F.2d at 986. As the proposed Settlement meets each of the *Bennett* factors, the Court's ruling should not be disturbed, and the Plaintiffs' Motion for Final Approval should be granted. Specifically, the Settlement provides immediate and certain relief to Class Members who experience failures in their home or other structure. The risk of litigation outweighs the concrete and imminent financial relief provided by the Settlement. Though the Settlement does not provide a one-hundred percent recovery, "[a]ny settlement typically offers far less than a full recovery. Indeed, settlements, by their nature, do not yield one hundred percent recovery for plaintiffs." *Faught v. Am. Home Shield Corp.*, No 2:07-cv-1928-RDP, 2010 WL 10959223, at *14 (N.D. Ala. Apr. 27, 2010), *aff'd*, 668 F.3d 1233 (11th Cir. 2011). In fact, the Settlement proposed here provides benefits over and beyond those approved in previous similar litigations.[2] Further, all objection periods have

---

[2] In *Matson*, class members could recover between 50-75% of their damages. Eligible Claimants received an initial payment of 50% of their Reasonably Proven Property Damage, with the possibility of a second, *pro rata* payment of up to 75% of their Reasonably Proven Property Damage at the end of the Claim Period. Eligible Claimants who qualified for a re-plumb received an initial payment of 50% of their Re-Plumb Calculation, with the possibility of a second, *pro rata*

been closed for at least four weeks[3], with no objectors having appeared and no objections having been filed either with the settlement administrator or the Court.

Simply put, the Settlement was the result of arm's length negotiations and satisfies each of the six *Bennett* factors. It is fair, adequate and reasonable, and final approval of the Settlement is appropriate.

## IV.    <u>NOTICE OF THE SETTLEMENT WAS PROVIDED IN ACCORDANCE WITH THE NOTICE PLAN AND EXCEEDS THE REQUIREMENTS OF RULE 23.</u>

Fed R. Civ. P. 23(e) requires that absent Class Members be informed of the proposed Settlement. The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. Fed. R. Civ. P. 23(e). Sufficient notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In

---

payment of up to 75% of their Re-Plumb Calculation at the end of the Claim Period. Members of the Settlement Class eligible for a re-plumb had the option to select a one-time payment of $3,000.00 in lieu of a re-plumb. *See Matson et al. v. NIBCO, INC.*, No. 5:19-CV-00717 (W.D. Tex. Dec. 22, 2020), Doc. 50-1. In *Cole*, class members could recover between 25-70% of their damages. Eligible Claimants received an initial payment of 25% of their Reasonably Proven Property Damage, with the possibility of a second, *pro rata* payment of up to 70% of their Reasonably Proven Property Damage at the end of the Claim Period. Eligible Claimants who qualified for a re-plumb received an initial payment of 25% of their Re-Plumb Calculation, with the possibility of a second, *pro rata* payment of up to 70% of their Re-Plumb Calculation at the end of the Claim Period. There was no option for a one-time payment in lieu of a re-plumb. *See Cole et al. v. NIBCO, INC.*, No. 3:13-CV-07871 (D. N.J. Oct. 26, 2018), Doc. 173-1.

[3] The original objection and opt-out deadline expired on April 12, 2024. The extended objection and opt-out deadline for those Class Members that received the Court's approved curative notice expired on June 21, 2024.

the Eleventh Circuit, this has been interpreted "to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt-out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'" *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal citation omitted). "In reviewing the class notice to determine whether it satisfies the requirements [of due process], 'we look solely to the language of the notices and the manner of their distribution.'" *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007) (quoting *Twigg v. Sears & Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998)).

To satisfy due process requirements, notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985)). The Eleventh Circuit does not require that every class member receive notice, rather, the relevant question is "whether the notice is reasonable calculated to reach absent members." *Morgan*, 301 F. Supp. 3d at 1261 (internal citations omitted). The fact that some class members may not actually receive timely notice does not render the

notice inadequate so long as the class **as a whole** had adequate notice. *Id.* (citing

MOORE'S FEDERAL PRACTICE: CIVIL ¶ 23.102).

On February 28, 2024, this Court found that the Notice Plan constituted "the best notice practicable under the circumstances," was designed to fairly, accurately and reasonably inform Settlement Class Members of the Settlement, and satisfied the requirements of due process, Fed. R. Civ. P. 23, and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (Doc. 99 at pgs. 6–7). The Notice Plan included issuance of a Notice of Settlement, Cover Letter, and short form publication notice that fairly, accurately and reasonably, in clear and concise language, informed Settlement Class Members of: (1) appropriate information about the nature of this Litigation and the essential terms of the Settlement; (2) appropriate information about how to obtain additional information regarding this matter and the Settlement in particular, through the Settlement Website; and (3) appropriate information about how to object to, or exclude themselves from, the Settlement. Finally, the Notice Plan provided for notification of the appropriate Federal and State officials by Plaintiffs pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

Throughout the approval process, the Parties, along with Angeion, have taken every possible step to ensure the Class received the best notice practicable under the circumstances. The Notice Plan, created and implemented in conjunction with Angeion (the Settlement and Claims Administrator in both *Matson v. NIBCO, Inc.*

and *Cole v. NIBCO, Inc.*, two substantially similar matters involving PEX tubing), was designed and intended to reach the maximum number of Class Members. (*See* the Declaration of Steven Weisbrot Regarding Implementation of The Notice Plan and Settlement Administration, attached hereto as <u>Exhibit C</u>). Additionally, Angeion's experience with the *Cole* and *Matson* matters enabled it to improve upon what was already a successful Notice Plan—and which two federal district courts have already considered to meet the due process requirements of Fed. R. Civ. P. 23.

Specifically, Angeion designed and implemented a Notice Plan intended to reach the maximum number of Class Members. On March 11, 2024, Angeion issued direct notice to all reasonably identifiable potential Settlement Class Members (including anyone known by the Parties who has asserted facts suggesting that they may be a member of the Settlement Class) via U.S. Mail. (*See* <u>Exhibit C</u> at ¶¶ 9-10). It established a toll-free telephone line where potential Settlement Class Members could learn more about their rights and options under the Settlement Agreement. (*Id.* at ¶ 17). Additionally, it created a Settlement Website, www.BowPEXSettlement.com, where Class Members could access important information concerning the Settlement, and which will continue to be updated and managed by Angeion until 180 days *after* the Claim Period closes. (*Id.* at ¶ 16). Angeion implemented a "robust, state-of-the-art internet advertising campaign" which included social media advertising. Further, Notice was published in a number

of widely circulated publications, including *People* magazine and several key plumbing trade magazines. (*Id*. at ¶¶ 11-15).

Further, when it became apparent that efforts to provide Notice were being frustrated by outside forces, this Court authorized Angeion to issue two separate curative letters. (Docs. 105 & 115). In connection with the second curative letter, the Court authorized Angeion to provide affected Class Members with an extended opt-out period and a Court-approved request for exclusion form. (Doc. 115). This request for exclusion contained specific questions that were designed to ensure that each Class Member's election to opt-out was the result of a voluntary and informed decision—not incomplete, inaccurate and coercive communications. (Doc. 115). The Parties have reviewed the final list of requests for exclusion from Angeion per the terms of the Settlement for validity.  In conducting the review and meeting and conferring, the Parties are left with a small number of requests for exclusion to present to the Court at the hearing for a final determination.

The response to the Settlement has been very favorable. The deadline to object to the Settlement was originally April 12, 2024. The objection deadline for Class Members affected by the curative notice was extended to June 21, 2024. As of the date of this filing, sixty (60) Class Members have already submitted Claim Forms in anticipation of approval. No Class Member has objected to the Settlement.

The above-described Notice Plan thus provided Class Members with the "best notice practicable under the circumstances, including individual notice to all members who could be identified through reasonable effort" as required by Fed. R. Civ. P. 23(c)(2). Substantively, the Notice documents apprised Class Members of the "terms of the settlement agreement in a manner that allowed class members to make their own determination regarding whether the settlement services their interests." *United States v. Alabama*, 271 Fed. Appx. 896, 901 (11th Cir. 2008) (citations omitted). In short, the Notice Plan fully comports with due process and the requirements of Fed. R. Civ. P. 23.

## V.   **THE TERMS OF PLAINTIFFS' PROPOSED AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS ARE APPROPRIATE.**

Class Counsel has applied for reasonable expenses in the amount of $443,733.78, a service award of up to $10,000.00 for Plaintiff Roselyn Braswell, a service award of up to $5,000.00 for Plaintiffs Jerri and Gregory Johnson combined (which represents a per-household limitation), and a fee in the amount of $3,436,266.22. (Doc. 100-1 at p. 4). Importantly, the expenses, awards, and fees requested do not reduce what the Settlement Class is entitled to recover because the fees are paid on top of the Class Settlement Fund. The requested fee comports with the Eleventh Circuit's guidelines and is appropriate, fair and reasonable under the

unique circumstances presented here. Accordingly, Class Counsel's requested fees, expenses and service awards should be approved.

## VI.    THE COURT SHOULD RETAIN JURISDICTION TO OVERSEE THE CLAIMS PROCESS.

As explained in Plaintiffs' Motion for Preliminary Approval and the Notice, the claims process contemplated is more involved than often is the case because, *inter alia*, it contemplates multiple distributions (an initial payment of 70% of damages to Eligible Claimants, and a subsequent payment to Eligible Claimants of up to 80% of such damages depending on the volume of claims received); a Claim Period that remains open until December 31, 2028; and a fair and efficient claims adjudication process. As such, and as set forth in the proposed Final Approval Order, the undersigned counsel request the Court retain jurisdiction over this matter, the Settlement, and the Settlement process to entertain any appropriate motion practice as may be necessary in the routine effectuation of the Settlement.

## VII.    DESIGNATION OF THE INDEPENDENT ENGINEERING CONSULTANT AND SPECIAL MASTER

In addition, the terms of the Settlement require the Parties to select an Independent Engineering Consultant and Special Master. (Ex. B, at pp. 27-28). The Parties have tentatively agreed to the Todd J. Menna, Ph.D. as the Independent Engineering Consultant. Dr. Menna is experienced in the field of materials science and engineering focusing on testing and analysis of polymeric, rubber, metallic,

ceramic, and composite materials and devices. Dr. Menna currently serves as the Independent Engineering Consultant in the *Matson v. NIBCO* and *Cole v. NIBCO* class settlements.

The Parties have further tentatively agreed upon Ross Hart to serve as Special Master over the claims administration process. In the event Mr. Hart's schedule does not permit timely availability, Mr. Hart's colleague, David Schleuter, will serve as Special Master. Ross Hart currently serves as the Special Master in the *Matson v. NIBCO* and *Cole v. NIBCO* class settlements.

The Parties will complete their final vetting of these individuals in advance of the hearing.

## VIII.  <u>CONCLUSION</u>

In conclusion, certification of the Class is warranted under the requirements of Fed. R. Civ. P. 23. The Settlement is fair, adequate and reasonable; not the product of collusion; and thus comports with the requirements of Fed. R. Civ. P. 23. Additionally, Notice was provided to the Class that comports with Fed. R. Civ. P. 23 and due process. As such, the Plaintiffs' Motion for Final Approval of the Class Action Settlement should be granted.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs' respectfully request that the Court enter (i) an Order granting the Plaintiffs' Motion for Final Approval; (ii) an Order certifying the Settlement Class; and (iii) a separate Order granting Plaintiffs' separately filed Motion for Approval of Class Counsel's Attorneys' Fees and Costs (Docs. 100 & 100-1).

Respectfully submitted this the 19th day of July, 2024.

*/s/ Kirby D. Farris*
KIRBY D. FARRIS (ASB-2224-R78K)
CALLE M. MENDENHALL (ASB-7985-W37E)
MALIA D. TARTT (ASB-9073-M40J)
Attorneys for the Plaintiffs

**OF COUNSEL:**

**FARRIS, RILEY & PITT, LLP**
The Gray Building
1728 Third Avenue North
Suite 500
Birmingham, Alabama 35203
T: (205) 324-1212
F: (205) 324-1255
kfarris@frplegal.com
cmedenhall@frplegal.com
mtartt@frplegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of July, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the court's electronic system.

*/s/ Kirby D. Farris*   
OF COUNSEL
