```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE MIDDLE DISTRICT OF ALABAMA

 3                        NORTHERN DIVISION

 4

 5   ROSELYN BRASWELL, et al.,

 6        Plaintiffs,

 7   Vs.                         CASE NO.: 2:21cv25-ECM

 8   BOW PLUMBING GROUP, INC.,

 9        Defendant.

10

11                * * * * * * * * * * * * * *

12           STATUS CONFERENCE - FINAL APPROVAL HEARING

13                * * * * * * * * * * * * * *

14        BEFORE THE HONORABLE EMILY C. MARKS, UNITED STATES DISTRICT

15   JUDGE, at Montgomery, Alabama, on Monday, July 29, 2024,

16   commencing at 1:30 p.m.

17                            APPEARANCES

18   FOR THE PLAINTIFFS:     Ms. Callie M. Mendenhall
                             Ms. Malia D. Tartt
19                           Mr. Kirby D. Farris
                             Attorneys at Law
20                           FARRIS RILEY & PITT
                             505 20th Street North, Suite 1700
21                           Birmingham, Alabama 35203

22   FOR THE DEFENDANT:      Ms. Angel A. Croes
                             Ms. Hanna DellaSala
23                           Attorneys at Law
                             CARR ALLISON
24                           100 Vestavia Parkway
                             Birmingham, Alabama 35216
25
```

```
 1                  Proceedings reported stenographically;

 2                  transcript produced by computer

 3                  * * * * * * * * * * * * *

 4          (The following proceedings were heard before the Honorable

 5          Emily C. Marks, United States District Judge, at

 6          Montgomery, Alabama, on Monday, July 29, 2024, commencing

 7          at 1:30 p.m.:)

 8               THE COURT:  Good afternoon.  We're here for a fairness

 9  hearing in the case of Braswell, et al. versus Bow Plumbing

10  Group, Incorporated, case number 21cv25.

11               Who do we have here for the plaintiffs?

12               MS. MENDENHALL:  Good afternoon, Your Honor.  Callie

13  Mendenhall, Malia Tartt, and Kirby Farris for class counsel.

14               THE COURT:  Good afternoon.  And who do we have here

15  for the defendant?

16               MS. CROES:  Good afternoon, Your Honor.  Angel Croes

17  and Hanna DellaSala on behalf of Bow Plumbing Group, Inc.

18               THE COURT:  All right.  Good afternoon.

19               Let me start by saying, I note we have four pending

20  motions.  We have the plaintiffs' motion for final approval of

21  the class action settlement and to certify the class, which is

22  document 125.  We have the joint motion to amend the proposed

23  final approval order, which is document 127.  We have the joint

24  motion to supplement the plaintiffs' motion for final approval

25  with the supplemental declaration from the settlement
```

1    administrator.  And we have the plaintiffs' motion for approval

2    of class counsels' attorneys' fees and costs, which is

3    document 100.

4         As to the joint motion to amend the proposed final

5    approval order, which is document 127, that's a joint motion by

6    the parties.  I've reviewed it.  I'm granting that motion.

7         And then the joint motion to supplement the plaintiffs'

8    motion with the declaration from the settlement administrator,

9    which is document 128, I'm going to grant that motion as well.

10        So, really, we are going to talk today about document

11   100 and document 125, the motion for attorneys' fees and the

12   motion for final approval of the class action.

13        I had ordered the plaintiffs to be prepared to discuss

14   Rule 23(e)(2).  In your submissions to the Court, you focused on

15   the *Bennett* factors in analyzing the class action, but the

16   circuit has directed district courts to analyze fairness under

17   23(e)(2)(A) through (D), and that was not included in your

18   submissions, so I'd like to hear from you on those four core

19   concerns in Rule 23(e)(2).

20        MS. MENDENHALL:  Yes, Your Honor.  Do you have a

21   preference where I am in responding to you?

22        THE COURT:  I do not, as long as you speak into the

23   microphone and we can hear you.

24        MS. MENDENHALL:  Let me go ahead and just move up here.

25   This is Callie Mendenhall.  Okay.

1          THE COURT:  Go ahead.

2          MS. MENDENHALL:  Judge Marks, after receiving your

3    order last Friday directing us to focus in on Federal Rule of

4    Civil Procedure 23(e)(2) Subsections (A) through (D), including

5    the commentary to that 2018 amendment and also the *Ponzio v.*

6    *Pinon* case that comes out of the Eleventh Circuit from late

7    2023, what this new law requires is really a supplementation of

8    the *Bennett* factors.  It doesn't displace it.

9          So what the rule focuses on, before we get into the

10   substance, are these four core concerns:  (A), the class

11   representatives and class counsel have adequately represented

12   the class; (B), the proposal was negotiated at arm's length;

13   (C), the relief provided for the class is adequate, taking into

14   account -- and then there are four subsections:  (i), the costs,

15   risks, and delay of trial and appeal; the effectiveness of any

16   proposed method of distributing relief to the class, including

17   the method of processing class-member claims; (iii), the terms

18   of any proposed award of attorneys' fees, including timing of

19   payment; and, (iv), any agreement required to be identified

20   under Rule 23(e)(3).  And the last core concern is (D), the

21   proposal treats class members equitably relative to each other.

22          Judge, in reading through the commentary, the

23   commentary denotes -- the commentary really separates (A) and

24   (B) and (C) and (D) into two categories, (A) and (B) being

25   procedural core concerns, and (C) and (D) being substantive

1    concerns.  The central concern in reviewing the class action

2    settlement is that it is fair, reasonable, and adequate.  And

3    the goal of the 2018, reading straight from the commentary, is

4    not to displace any factor, but rather to focus the Court and

5    the lawyers on these core concerns of procedure and substance

6    that should guide the decision of whether to approve the

7    proposal.

8            In light of the *Ponzio* case, that case really focused

9    on some additional issues in addition to the 2018 commentary.

10   But what it did do was it looked at the *Bennett* factors and

11   categorized them -- it took those same factors and categorized

12   them into whether they fall into that procedural subset or that

13   substantive subset.

14           *Bennett* factors (1), (2), (4), and (6), which are the

15   likelihood of success at trial, the range of possible recovery,

16   the complexity, expense, and duration of litigation, and, six,

17   the stage of proceedings at which the settlement was achieved,

18   can inform whether the relief provided to the class is adequate,

19   which goes directly to core concern three.  Additionally,

20   *Bennett* factors (3) and (5) address core concern four.  The

21   *Bennett* factors (3) and (5) are the point on or below the range

22   of possible recovery at which a settlement is fair, adequate,

23   and reasonable, and, (5), the substance and amount of opposition

24   to the settlement.

25           Your Honor, in reviewing all of those guidelines, as to

```
 1   whether the representatives and class counsel have adequately
 2   represented the class, Your Honor should find that we have.  We
 3   filed the class.  This case has been pending for three and a
 4   half years.  We have engaged in discovery, including at least
 5   one motion to compel that was filed and heard before this Court.
 6   We took party depositions of our class representatives.  We also
 7   engaged in a deposition of a corporate representative of Bow.
 8          In addition to that, we did deal with the production of
 9   documents that came in.  We also engaged in very long and
10   lengthy home inspections of Roselyn Braswell, Jerri and Gregory
11   Johnson.  And in addition to those two homes, we did look at
12   three other settlement class members' homes.  At those homesites
13   their homes had sheetrock cut into so that we could all access
14   the pipe.  We had Bow's experts, our experts there to take all
15   of the analysis that they would need of the pipe in the wall
16   that they needed to.  Then we resected different parts of the
17   pipe based on what our experts, both sides, had told us.
18          In the middle of that, there were numerous discovery
19   meet and confers with Bow's counsel to come to agreements on how
20   much of the home could be destroyed to access the pipe; how much
21   of the home pipe actually needed to be removed.  And then after
22   all of those site visits, which took well into the evening hours
23   at each of those homes, the experts then transported the pipe
24   between their two labs to conduct testing and determine whether
25   or not there were issues with the pipe.
```

1          Moreover, Your Honor, this proposal was negotiated at

2    arm's length.  The counsel for both parties engaged a mediator

3    who did not have any involvement with the case.  He's out of

4    Dallas.  He came in and met with us for three long days.  We

5    came up with an agreement in principle at the end of those three

6    days.  Following the three days, there was then weeks and months

7    in between the time those negotiations finished and the time

8    that we filed for preliminary approval.  That time period was

9    really spent negotiating and hammering out those finer details

10   of the settlement agreement to make sure all parties were on

11   board.

12         The adequacy of the settlement.  Your Honor, while the

13   Bow class litigation is new, there have been some other PEX

14   manufacturers that have had class actions involved with them.

15   In running a very simple comparison between them, our settlement

16   is, in our opinion, even more fair and more adequate than the

17   other settlements that have been approved by other district

18   courts.

19         And we know that that's not binding precedent by any

20   stretch of the imagination on you; however, when you just look

21   at the percentage of recovery that our class members can receive

22   versus what the recovery is for those other class members, such

23   as here in ours somebody that has one or two leaks or -- well,

24   one plus leaks -- is able to recover an initial payment of 70

25   percent of what that reimbursement was.  So that reimbursement

1    includes, you know, if you've got a leak in your slab and

2    somebody has to come in and bust up your floors to access the

3    pipe, that reimbursement of the 70 percent comes in and pays for

4    the cost to access the pipe, the cost to refinish the floors,

5    all of that.  In the other settlements, if you have one or more

6    leaks, you received an initial payment of 25 percent, or in

7    another one it was 40 percent.  So the fact that we're starting

8    off our class members at a 70 percent initial payment is

9    wonderful compared to the types of recovery that they received

10   in the others.

11          In addition, Your Honor, after that initial payment is

12   made for all the class members, to the extent that settlement

13   funds remain, those class members can receive up to an

14   additional 10 percent, so that total recovery is 80 percent.  In

15   the other class actions, they would have received up to 70

16   percent total if class funds remained.

17          In addition, we do offer in our settlement terms the

18   option, if you have three or more leaks, the option for a full

19   house replumb.  That is being provided at a total expense cost

20   per the terms of the settlement.  If somebody is not confident

21   in having a plumber that was not of their own choosing come in

22   and do the replumb themselves, then they can opt for a one-time

23   cash payment of $8,500.

24          Your Honor, we calculated that $8,500 payment based on

25   the average price of a fixture that would have to be accessed

1    and rerouted throughout the home.  And based on some of our

2    conversations with some settlement class members already, they

3    have -- if they have independently received a plumber's

4    estimate, it has been somewhere in the neighborhood of 7,000 to

5    8,000.  So that $8,500 payment in lieu of having the settlement

6    pay for -- or have the replum done for you, that $8,500 payment

7    is well compensating them to be able to go out and get the

8    plumber of their choosing.

9           As far as the costs, risks, and delay of trial and

10   appeal, our firm is kind of in a unique position with regard to

11   this litigation because we were involved in one of the prior

12   class cases.  It was the *Matson v. NIBCO* case.  Kirby Farris was

13   class counsel in that case.  And in addition to being in that

14   class case, we did have some individual cases that we litigated

15   here in Alabama outside of the class.

16          The way that those cases worked out were such that the

17   expenses of those individual litigations almost outweighed any

18   recovery that those individual plaintiffs had.  We really had to

19   work on those individual settlements to make them work for the

20   plaintiffs that did not want to be part of the class.  And as

21   Your Honor can see from the motion for costs and fees in this

22   case, just our costs alone to get where we've gotten in three

23   and a half years with our experts were over $400,000.  The

24   amount to litigate these individually just does not make

25   economic sense for any plaintiff or any law firm.  So a class

1    settlement such as this where everybody can participate using

2    the joint knowledge and expert use that we've already put

3    together for them is a huge factor in approving this settlement.

4            In addition, Your Honor, even with, you know,

5    proceeding on your own, as Your Honor knows with jury trials,

6    there is no guarantee that a jury is going to find in your

7    favor.  Bow has substantial defenses in this case, whether

8    plaintiffs' counsel likes it or not.  Some of Bow's defenses

9    include installation error, meaning did the plumbers who came in

10   to put the pipe into people's homes, did they bend it too far?

11   Did they put it in certain situations where it was going to get

12   too hot?  Things of that nature that would preclude at trial any

13   jury from finding in favor of a plaintiff.  So there were some

14   risks in moving forward with this.  And, again, they did have

15   their own highly credentialed experts in this case that would

16   have come and said all of those things to a jury.

17           The next point that I'll address is the effectiveness

18   of any proposed method of distributing relief to the class,

19   including the method of processing class members' claims.  And

20   there's another note about them being equitably distributed.

21           And, Your Honor, through the use of Angeion, the class

22   members don't come to Bow and they don't come to class counsel

23   asking for recovery.  The advocacy is really done in the

24   settlement agreement that has shifted over to Angeion.  So

25   Angeion is really a blind claims administrator in the terms of

1    who these people are, the geography of where they come from, the

2    circumstances of the leaks that they have, or any other

3    identifying factor that may or may not have been in play with --

4    you know, if the parties had been litigating the case

5    separately.  So Angeion is reviewing these people purely on a

6    metric that's applied across the board, and the claim form is

7    the same for every submitting class member.  It has the same

8    information, requires the same level of detail, and it will be

9    analyzed equitably.  The settlements will then be apportioned

10   equitably based on those percentages that I delineated earlier.

11        One of the other topics is the terms of any proposed

12   award of attorney's fees, including timing of payment.  Judge,

13   I'm sure when we shift over to the motion for fees, I'll address

14   that in further detail, but just to give you a highlight, when

15   we met and mediated with defense counsel, we at that time did

16   not negotiate class counsel fees.  Those were negotiated and

17   agreed to separately.  Same with the costs.  Same with the

18   service awards.

19        When we look at the total common fund, which would be

20   the 8,025,000, and what we're seeking in class counsel fees,

21   which is 3,900,000, adding those together, you get 11,925,000.

22   And out of that, our fee falls in line with what the Eleventh

23   Circuit dictates is fair and reasonable.  It comes to just shy

24   of 29 percent.  So we do think that our attorneys' fee is within

25   the reasonableness of what Eleventh Circuit dictates as well as

1   the costs and the service awards.

2           Let me make sure I've addressed everything for Your

3   Honor.

4           The fifth *Bennett* factor, which goes to core concern

5   four, which would be Subsection (D), that factor is the

6   substance and amount of opposition to the settlement.  Your

7   Honor, while we do have requests for exclusion, it's important

8   to note that there are no objections that have been filed.

9           THE COURT:  And you're talking about 23(e)(2)(D) here,

10  that the proposal treats class members equitably relative to

11  each other?

12          MS. MENDENHALL:  Let me make absolutely certain.

13          THE COURT:  My review of the *Bennett* factors is

14  substance and amount of opposition to settlement speaks to

15  Subsection (D), 23(e)(2)(D).

16          MS. MENDENHALL:  Yes, Your Honor.

17          THE COURT:  All right.

18          MS. MENDENHALL:  Yes.  There is no objection pending

19  before the Court on the final approval of this settlement, and

20  so we think that that highly signifies the fairness and adequacy

21  and cause for getting this approved in this court.

22          And, Your Honor, I believe that's all I have on that

23  subsection that you wanted us to focus on.  I'm happy to answer

24  any other questions that you may have on that subsection.

25          THE COURT:  I don't have any questions.  I just want to

1  make sure we are clear about the requirements that the Court

2  analyze the fairness, reasonableness, and adequacy of the

3  proposed settlement based on those four concerns in 23(e)(2)(A)

4  through (D) as informed by the *Bennett* factors.  I think you've

5  done that now.  You certainly had provided analysis under the

6  *Bennett* factors.  Is there anything else specific to the *Bennett*

7  factors you want to add, or -- you provided that analysis for

8  the Court in your motion, but they do inform the Court's

9  analysis under Rule 23.

10       MS. MENDENHALL:  Yes, Your Honor.  I have nothing in

11 addition to what we have addressed as far as the *Bennett* factors

12 in our pleadings.  In the *Ponzio* case and in relation to the

13 2018 amendment, I believe I have worked through the subsection

14 requirements.  Whether the class representatives and class

15 counsel adequately represented the class, I believe I have

16 provided that.  Whether the proposal was negotiated at arm's

17 length, we discussed that with the mediator.  Whether the relief

18 provided for the class is adequate, we worked through that.  And

19 then whether the proposal treats class members equitably

20 relative to each other.  I do note -- it does mention in the

21 *Ponzio* case the primary procedural considerations and

22 substantive qualities that should always matter to the decision

23 whether to approve the proposal is those four concerns.  And I

24 believe that we have adequately addressed those, Your Honor.

25       THE COURT:  All right.  Does the defendant have

1    anything to add?

2          MS. CROES:  Yes, Your Honor.  Angel Croes on behalf of

3    Bow Plumbing Group, Inc.

4          We agree with class counsel's representation to the

5    Court in discussion of the four core concerns.  I would just

6    like to add for the fourth core concern, (D), whether the

7    proposal treats class members equitably in relation to each

8    other.  And forgive me if class counsel did speak to this, but I

9    would just like to add that apart from the service awards

10   available to class representatives, all class members are

11   treated equally based upon objective criteria and a uniform

12   percentage of damages and a recovery structure that applies

13   equally to every class member.

14          The uniform apportionment of relief takes into account

15   individual differences and individual damages incurred so that

16   someone with 70 percent to 80 percent -- excuse me -- someone

17   with $100,000 in damages under the uniform recovery structure

18   will equitably and fairly recover more than someone with $10,000

19   in damages.  So it is a very clear, very specific formula that

20   is easy for the settlement administrator to apply to every claim

21   that comes in, and there is no room for independent judgment or

22   consideration.  The formula is there, it applies to all class

23   members uniformly, but it does allow for damage recovery based

24   on the individual damages incurred.

25          THE COURT:  All right.  Anything else on Rule 23?

1          MS. MENDENHALL:  Nothing further, Your Honor.

2          THE COURT:  All right.  You brought up the incentive

3    awards.  Let's talk about the incentive awards.  I am not

4    convinced that the incentive awards are permissible.  I've read

5    *Johnson vs. NPAS Solutions, LLC*, 975 F.3d 1244.  That is a

6    published opinion from the Eleventh Circuit from September of

7    2020.  In that case -- and you've mentioned it in your briefing.

8    The Eleventh Circuit held that incentive awards are prohibited.

9    There have been district court opinions in the Eleventh Circuit

10   that have opined that that decision is limited to cases

11   involving a federal question, and that where we are in a

12   diversity situation -- which we are here under diversity

13   jurisdiction -- the Erie doctrine requires that we apply the law

14   of the state, and incentive awards are awardable under Alabama

15   law.

16          No party and none of those district court opinions

17   refer at all to a published opinion from the Eleventh Circuit,

18   *In re Equifax, Incorporated*.  That citation is 999 F.3d 1247

19   from June of 2021, where a panel from a published opinion from

20   the Eleventh Circuit held that --

21          Well, there the case started off with a federal

22   question.  There were claims under the Fair Credit Reporting

23   Act.  The Court on a motion to dismiss dismissed the federal

24   claims, certified the class as to only state claims, and the

25   district court awarded incentive awards and was reversed by the

1    Eleventh Circuit.  And there the circuit said that service

2    awards are prohibited as a matter of law in this circuit, and

3    noted the *Johnson* case binds us here.  There was no mention in

4    the Court's analysis of diversity versus federal question

5    jurisdiction, but in that case the class was certified only as

6    to state law claims.  The federal claim had been dismissed,

7    which suggests to the Court that the *Johnson* opinion doesn't

8    hinge on the existence of a federal claim, it just stands for

9    the proposition that class actions under Federal Rule 23 in

10   federal court do not permit the award of incentive fees.

11        Have you read the *In re Equifax* case and, if so, how do

12   you differentiate that case only involving state law claims and

13   our case only involving state law claims and the award of

14   incentive awards?

15        MS. MENDENHALL:  Sure.  So, Your Honor, I, candidly, do

16   not know the interworkings of that case, certainly as well as

17   you do.  If I have looked at that case, I just don't remember

18   it, standing here today, and I apologize.

19        What I will say is the case that we do cite, shifting

20   it into an Erie decision, and with it being state law claims,

21   shifting -- the use of being able to apply the Erie doctrine and

22   allowing for Alabama state law to apply would show that Alabama

23   does allow for these types of service awards.  So, Your Honor,

24   that's how I would say that these plaintiffs are entitled to

25   the --

1          THE COURT:  I understand that argument, except the

2    Eleventh Circuit has said very broadly, there are no incentive

3    awards allowed in the circuit.  That has been read by other

4    district courts to only apply in cases where there is a federal

5    question, except we have *In re Equifax* where the Court applied

6    that same rule when the federal claim had been dismissed,

7    saying, we're bound by the *Johnson* opinion.  There are no

8    incentive awards in this circuit.  Nobody has analyzed this to

9    only apply in cases involving a federal cause of action.  In

10   fact, it has been applied very basically and very clearly,

11   without much elaboration by the circuit, citing to *Johnson*, this

12   is not permitted.

13         So I've got cases that are saying different things.  We

14   actually have an intracircuit split because at least one

15   district court has said *Johnson* doesn't permit this.  It wasn't

16   a holding, it was more of an aside, because there the party

17   withdrew the request for incentive fees after the *Johnson*

18   opinion came out and said these fees are not permitted in the

19   Eleventh Circuit, and the Court agreed.

20         My reading is I don't have any case law from the

21   Eleventh Circuit that says anything other than incentive fees

22   are not permitted.  I don't see there's been any specificity

23   that it's only not permitted in cases where there's a federal

24   question.

25         MS. MENDENHALL:  Yes, Your Honor.  Can I ask for two

1   minutes to talk with my cocounsel?

2        THE COURT:  Sure.

3     (Brief pause in the proceedings.)

4        MS. MENDENHALL:  Thank you.

5        MR. FARRIS:  Your Honor, I'm not familiar with this

6   case.  Was this case pending more than a year before the --

7   diversity destroyed?

8        THE COURT:  *In re Equifax* is from 2021.  It came out

9   after *Johnson*.  This one came back, I believe, in an MDL.

10       MR. FARRIS:  I apologize.

11       THE COURT:  It had been an MDL, if I remember

12  correctly.  Let me see.  In that case, over 300 class actions

13  against Equifax were filed across the nation, all of which came

14  to be consolidated and transferred by the Judicial Panel on

15  Multidistrict Litigation to then Chief Judge Thomas W. Thrash in

16  the Northern District of Georgia.

17       Move forward.  Equifax filed a motion to dismiss the

18  complaint in its entirety which the District Court granted in

19  part and denied in part.  The District Court dismissed the Fair

20  Credit Reporting Act claims, the Georgia Fair Business Practices

21  Act claims, as well as some state statutory claims.  However, it

22  allowed the negligence and negligence per se claims under

23  Georgia law as well as other state statutory claims to go

24  forward.

25       MR. FARRIS:  Strictly state law claims.

```
1              THE COURT:  Only state law claims.
2              MR. FARRIS:  Your Honor, I apologize for me not knowing
3     that case today.  And in light of what the Court is telling us,
4     I think we probably will withdraw the service award claims.
5              THE COURT:  All right.
6              MR. FARRIS:  Thank you, Your Honor.
7              THE COURT:  Thank you.
8              Let's move to the attorney fee and cost issue.  I've
9     read your submissions on attorneys' fees.  Do you have anything
10    you would like or need to add to that?
11             MS. MENDENHALL:  No, Your Honor.  In fact, the one
12    thing I was going to draw your attention to is now a moot issue.
13    I had made a calculation error as to the service awards, but now
14    that those are withdrawn, then, no, there is nothing in addition
15    to what we have stated out in our motion.  I'm happy to make the
16    record, but it will be in large part duplicative of what we do
17    have in that filing.
18             THE COURT:  I just have a question, really, of
19    interest.  I looked at your account quick report of your fees.
20             MS. MENDENHALL:  Yes, Your Honor.  Yes.
21             THE COURT:  The largest amount is -- it looks like it's
22    a consulting fee, and it reads -- and just for the record, it's
23    document 100-3, page 2 of 3 at the bottom.  It's an amount paid
24    to Paragon Polymer Consulting, and it reads, Bow PEX statement
25    payoff, in excess of $240,000.  Is that consulting fees?
```

```
 1            MS. MENDENHALL:  Yes, Your Honor.  That relates to one

 2    of our experts.

 3            THE COURT:  Okay.  So when it says statement payoff,

 4    it means you received a statement for consulting fees, and you

 5    paid that amount?

 6            MS. MENDENHALL:  Correct.

 7            THE COURT:  All right.

 8            MS. MENDENHALL:  Your Honor, if I may.

 9            THE COURT:  Go ahead.

10            MS. MENDENHALL:  I did also note that I had not

11    submitted a Word version of a proposed order for the motion for

12    fees, and we are happy to submit that at your request.

13            THE COURT:  All right.  If you would like to submit

14    one, you certainly can.  You can send it to my proposed order

15    box in the same manner that you have probably provided other

16    proposed orders, and we will certainly use that as a reference

17    for my written order -- my ultimate written order.

18            MS. MENDENHALL:  Yes, Your Honor.

19            THE COURT:  All right.  Again, your briefing on the

20    attorney's fees was comprehensive and is unopposed.  Is that

21    still the case?

22            MS. CROES:  Yes, Your Honor.  That remains the case.

23            THE COURT:  All right.  So do you have anything else to

24    speak to on the attorneys' fees and costs?

25            MS. MENDENHALL:  No, Your Honor.
```

1       THE COURT:  How long would you anticipate the Court

2   would retain jurisdiction over this case?  It appears as though

3   the claim period would remain open until December 31st, 2028.

4   What happens if the fund is depleted before that?

5       MS. MENDENHALL:  Well, Your Honor, we certainly do not

6   anticipate the fund being depleted before the close of the claim

7   period.  As far as your jurisdiction, we would like you to

8   retain jurisdiction through the expiration of the claim period,

9   just to ensure that there are no lingering issues.  I'm sure

10  that you saw in our motion that we do have a special master and,

11  in fact, a backup special master, just given Mr. Hart's time and

12  time constraints.  We also have an independent engineering

13  consultant.  So while we request that you retain jurisdiction,

14  we anticipate and are certainly hopeful that there would be

15  little for Your Honor to deal with throughout the time that the

16  order on this class is entered through the expiration of that

17  period.

18      THE COURT:  All right.  You represent that there were

19  multiple invalid opt outs that were submitted.  Have those

20  individuals been told that their opt outs were not effective?

21      MS. MENDENHALL:  We have notified their counsel, is my

22  understanding.  In fact, their counsel had reached out, I

23  believe last week, to Bow's counsel to get a final list.  That

24  has been now filed and available on PACER, and we have not had a

25  response to date based on that.  As far as have we contacted --

1    either party have contacted them directly, no, we have not done

2    that.  And if Your Honor -- if that would be your preference,

3    for us as class counsel to reach out and let them know, then

4    that is something that we will certainly do.

5         THE COURT:  Well, it appears we have eight exclusion

6    forms for 13 individuals and seven structures that were

7    determined to be invalid.

8         MS. MENDENHALL:  Yes, Your Honor.

9         THE COURT:  I guess my thought was there have been no

10   objections, but I wanted to know if those individuals had been

11   told that their opt outs were not accepted.

12        MS. MENDENHALL:  Again, we have not informed them

13   directly.  Our office has not reached out to them directly.

14   They are represented by alternate counsel, and those alternate

15   counsel have not reached out to us to object to us making that

16   determination in conjunction with Bow's counsel and with Angeion

17   that those opt outs are invalid.  But we're happy to --

18        THE COURT:  I guess I'm asking, do they know that

19   they've been deemed invalid?

20        MS. MENDENHALL:  Their counsel should.

21        MS. CROES:  Your Honor, I can speak to that as well.

22   The lawyers that we believe represent the individuals whose

23   requests for exclusion have been deemed invalid did contact me

24   several days ago, sometime last week, and asked if we were going

25   to present the Court with a final tally of the opt outs that

1   Angeion had deemed valid versus invalid.  We responded saying

2   that we were working through a number of them that were

3   referenced in class counsel's motion for final approval.  We did

4   continue to do that.  We reviewed the forms and all of the

5   submissions together with class counsel and with Angeion as

6   well.  Angeion gave us its final determination as to the list of

7   opt outs it had deemed invalid, and those were provided in the

8   supplemental declaration to Your Honor.  Class counsel agrees

9   with Angeion's determination.  We agree with Angeion's

10  determination after an extensive review.

11          After the filing, I'm fairly confident that the lawyers

12  who reached out to me and who do represent those individuals

13  have received a copy of the filing.  They have given every

14  indication throughout this case that they are monitoring this

15  case, but they have not given me formal affirmation.  If Your

16  Honor would like, we can send a copy of the declaration to them

17  so that they will have notice to that.  Outside of that, I think

18  we were all hesitant to reach out directly to those individuals

19  because they are independently represented.

20          THE COURT:  All right.  Knowing that their attorneys

21  are aware is satisfactory.

22          MS. MENDENHALL:  Yes.

23          THE COURT:  All right.  Anything else?

24          MS. MENDENHALL:  I don't think so, Your Honor.

25          MR. FARRIS:  No, Your Honor.

1          THE COURT:  All right.  Anything from the defendants?

2          MS. CROES:  No, Your Honor.

3          THE COURT:  All right.  I have reviewed all of your

4    submissions, and I am inclined to grant the motion to certify

5    the class and to approve the settlement and to approve the

6    request for attorneys' fees.  I'll get an order out as quickly

7    as possible.  I appreciate your time.  Thank you very much.

8    We're adjourned.

9        (Proceedings concluded at 2:12 p.m.)

10                    * * * * * * * * * * * *

11                    COURT REPORTER'S CERTIFICATE

12          I certify that the foregoing is a correct transcript

13   from the record of the proceedings in the above-entitled matter.

14          This 6th day of August, 2024.

15

16                              /s/ Patricia G. Starkie
                                Registered Diplomate Reporter
17                              Certified Realtime Reporter
                                Official Court Reporter
18

19

20

21

22

23

24

25